NO. 13-3801

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

LIGHTSPEED MEDIA CORPORATION,
Plaintiff,

v.

ANTHONY SMITH, et al.,
Defendants-Appellees,

Appeal of:
PAUL DUFFY, JOHN STEELE, & PAUL HANSMEIER,
Appellants.

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-GPM-SCW

**Separate Appendix of Appellants
Paul Duffy, John Steele & Paul Hansmeier**

Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

# APPENDIX

## Table of Contents

| Document description | Location in Record | Page No. |
|---|---|---|
| Circuit Rule 30(d) Statement | N/A | ii |
| Notice of Appeal | Dkt. 102 | AA-1 |
| Transcript of November 13, 2013 Motion Hearing | Dkt. 101 | AA-3 |
| Declaration of John Steele in Support of Motion to Vacate or Reconsider October 30, 2013 Sanctions Order | Dkt. 68-1 | AA-29 |
| Declaration of Paul Hansmeier in Support of Motion to Vacate or Reconsider October 20, 2013 Sanctions Order | Dkt. 67-1 | AA-30 |
| Declaration of Anthony Smith in Support of Motion for Sanctions | Dkt. 61-1 | AA-31 |
| Plaintiff's Notice of Voluntary Dismissal Without Prejudice | Dkt. 59 | AA-32 |
| Motion of John Steele to Withdraw as Counsel | Dkt. 57 | AA-34 |
| Motion of Paul Hansmeier to Withdraw as Counsel | Dkt. 55 | AA-36 |
| Transcript of August 20, 2012 Hearing on Motion for Discovery | Dkt. 29 | AA-38 |
| Motion for Pro Hac Vice Admission by Paul Hansmeier | Dkt. 21 | AA-57 |
| Entry of Appearance by John Steele | Dkt. 20 | AA-58 |
| Proposed Cease-And-Desist Letter (Exhibit L to Plaintiff's Emergency Motion for Discovery Prior to the Rule 26(f) Conference) | Dkt. 09-12 | AA-59 |
| Declaration of Steve Jones (Exhibit A to Plaintiff's Emergency Motion for Discovery Prior to the Rule 26(f) Conference) | Dkt. 09-1 | AA-61 |
| Plaintiff's Emergency Motion to Order Defendants, AT&T and Comcast, to Produce Limited Discovery Prior to the Rule 26(f) Conference | Dkt. 09 | AA-65 |
| Plaintiff's First Amended Complaint | Dkt. 02-2 | AA-80 |
| Declaration of Steve Jones | Dkt. 02-9 | AA-103 |
| Plaintiff's Original Complaint | Dkt. 02-3 | AA-108 |
| Order on Motion for Expedited Discovery, *VPR Internationale v. Does 1–1017*, No. 2:11-cv-02068-HAB-DGB (C.D. Ill. Mar. 9, 2011) (Baker, J.) (Dkt. 9) | N/A | AA-117 |

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), the undersigned certifies that the material required by Circuit Rule 30(a) is included in the required short appendix. All other material required by Circuit Rule 30(b) is included in the separately-bound appendix.


DATED: January 27, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LIGHTSPEED MEDIA CORP.,**

*Plaintiff,*

*v.*

**ANTHONY SMITH, et al.,**

*Defendants.*

Civil No. 12-889 GPM

**NOTICE OF APPEAL**

Notice is hereby given that Paul Duffy, Paul Hansmeier, and John Steele, non-party attorneys sanctioned in the above-named case, hereby jointly appeal to the United States Court of Appeals for the Seventh Circuit from a final order finding them jointly and severally liable for attorney fees and costs under 28 U.S.C. § 1927, entered in this action on the 27th day of November, 2013 at docket number 100, and from a previous interlocutory order on the same subject entered in this action on the 30th day of October, 2013 at docket number 65.

Paul Duffy
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

AA-1

## Certificate of Service

I hereby certify that on this 12th day of December 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Paul Hansmeier

AA-2

```
1              IN THE DISTRICT OF THE UNITED STATES OF AMERICA
                   FOR THE SOUTHERN DISTRICT OF ILLINOIS
2      _____
                                       )
3      LIGHTSPEED MEDIA CORPORATION,    )
                                       )
4                     Plaintiff(s),     )
                                       )
5         vs.                           )   Case No. 12-889-GPM
                                       )
6      ANTHONY SMITH, et al.,           )
                                       )
7                     Defendant(s).     )
       _____)
8

9                         ALL PENDING MOTIONS

10     BE IT REMEMBERED AND CERTIFIED that heretofore on  11/13/2013,
       the same being one of the regular judicial days in and for the
11       United States District Court for the Southern District of
       Illinois, Honorable G. Patrick Murphy, United States District
12      Judge, presiding, the following proceedings were recorded by
          mechanical stenography; transcript produced by computer.
13

14                            APPEARANCES:
       FOR PLAINTIFF:
15            John L. Steele of Steele Hansmeier PLLC, 161 North
       Clark Street, Suite 4700, Chicago, IL 60601
16            And Paul A. Duffy, Prenda Law, Inc.,
       161 N. Clark Street, Suite 3200, Chicago, IL 60601
17            And (by phone) Paul Hansmeier of Alpha Law Firm, 80,
       South 8th Street, Suite 900, Minneapolis, MN 55402
18
       FOR DEFENDANTS:
19            Troy A. Bozarth of HeplerBroom LLC - Edwardsville, 130
       North Main Street, P.O. Box 510, Edwardsville, IL 62025.
20            And Andrew G. Toennies of Lashly & Baer PC, 714 Locust
       Street, St. Louis, MO 63101
21            And (by phone) Daniel G. Booth of Booth Sweet LLP, 32R
       Essex Street, Cambridge, MA  02139(by phone)
22            And (by phone) Bart Westcott Huffman of Locke Lord LLP
       - Austin, 100 Congress Avenue, Suite 300, Austin, TX 78701
23
       REPORTED BY:  Molly N. Clayton, RPR, FCRR, Official Reporter
24     for United States District Court, SDIL, 750 Missouri Ave., East
       St. Louis, Illinois 62201, (618)482-9226,
25                   molly_clayton@ilsd.uscourts.gov
```

1       **INDEX OF WITNESS EXAMINATION**

2                                    <u>DX</u>        <u>CX</u>       <u>R-DX</u>      <u>R-CX</u>

3   No witness testimony.

4

5                   **INDEX OF EXHIBITS**

6   <u>EXHIBIT</u>                <u>DESCRIPTION</u>           <u>Id'D</u>        <u>Rcv'd</u>

7   No exhibits identified or received.

8

9                   **MISCELLANEOUS INDEX**

10                                       <u>PAGE</u>

11  No miscellaneous index entries.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              COURTROOM DEPUTY:  Lightspeed Media versus Smith, et

2   al., Case Number 12-889-GPM, is called for a hearing on all

3   pending motions.

4              Will the parties identify themselves for the record?

5              MR. STEELE:  John Steele, former counsel for

6   Lightspeed Media.

7              THE COURT:  All right.  Mr. Steele, good morning.

8              MR. STEELE:  Good morning.

9              MR. DUFFY:  Good morning, your Honor, Paul Duffy,

10  former counsel for Lightspeed.

11             THE COURT:  All right.  Mr. Duffy, good morning to

12  you.

13             MR. TOENNIES:  Good morning.  Andy Toennies for

14  ComCast.

15             THE COURT:  Mr. Toennies.

16             MR. BOZARTH:  Good morning.  Troy Bozarth for AT&T,

17  your Honor.

18             THE COURT:  Mr. Bozarth.

19             Now, the Court is going to have to be particularly

20  cherry with its use of language.  Unfortunately, with my

21  extensive singing engagements, my throat is giving out, and I

22  have got just enough left to take care of this -- or some of

23  it.  Now, the matter before the Court is -- I guess it is

24  Mr. Hansmeier's motion requesting fees under the statute.

25             MR. STEELE:  Your Honor, if I may, there are people on
```

1   the phone as well.

2       *THE COURT:* Right.

3       *MR. STEELE:* Okay.

4       *THE COURT:* Linda has already checked them in, haven't

5   you, Linda?

6       *COURTROOM DEPUTY:* Yes, sir. It is Mr. Hansmeier,

7   Mr. Booth, and Mr. Huffman.

8       *THE COURT:* Right.

9       Now, the Court's understanding that it's only

10  Mr. Hansmeier's motion. I just looked at the other

11  applications for attorneys' fees fairly recently. Those will

12  be dealt with in due course. Now, this is part of a certain

13  piece of litigation that's now become infamous over the federal

14  court system, so to speak. Ours didn't get too far, so there's

15  not all that much to do. I'm familiar with the procedural

16  history of it.

17      Now, the application that's before the Court today for

18  representing one of the defendants is, in total, a little over

19  $75,000. They're requesting $400 an hour for the fees. I

20  don't need to hear too much argument on that. That's actually

21  a fairly modest request around this place. We used to see fees

22  for removal petitions that would run twice that. So...

23      The Court's understanding of where we are at in

24  this -- of course, Prenda law firm takes exception to the idea

25  that their litigation was pointless, vexatious, and aborted

1    from the start, put that aside.

2        Mr. Hansmeier has filed an objection in the case, and

3    he says:  Now, wait a minute.  Don't include me in this.  I'm

4    not a part of this.  I didn't get notice of it.

5        Now, there is some problem with that point of view.

6    Because I've looked at all the papers and papers from other

7    cases and we've got testimony in the case and it looks like

8    this Prenda law firm is made up of Mr. Duffy and Mr. Hansmeier

9    and others; at least they come together on certain occasions.

10   And it would seem that notice to Prenda would be notice enough

11   to all.  But the reason I've set this is, in the 16 years I've

12   been up here, I've not been too quick to nail people with

13   attorneys' fees.  We generally let people come in here and have

14   their say and then send them home.  But there's something -- we

15   may have something here.

16        Now, who is going to speak for the plaintiff's motion

17   that's up?  Somebody on the phone?  Not the plaintiff's motion,

18   the defendants' motion that's up, the defendant that's asking.

19   You represented an individual.  You got a couple people working

20   on the case.  You are asking a little over $70,000.  You are

21   talking about $400 an hour.  I'll let them argue that if they

22   want, but that seems like a pretty modest amount to me in this

23   case.  I'm not worried about that.  I've read your papers.

24        Why don't you meet -- first address the problem.

25   Mr. Hansmeier says:  Don't include me.  I'm not a part of this

1    thing, so I didn't get notice.  He would have me re-set this

2    and send it back to the next judge that gets to finish this up

3    along with all the other matters.  We don't know who that is

4    yet.

5              Go.

6              *MR. BOOTH:*  Your Honor, this is Dan Booth on behalf of

7    Anthony Smith.

8              *THE COURT:*  All right.  Dan, if you would, speak up so

9    I can hear you.

10             *MR. BOOTH:*  Yes, your Honor.

11             Well, so as you said, this is on our motion for

12   attorneys' fees, which the Court has granted, and as you say we

13   are billing at a lower rate than others have seen.  And I

14   believed we billed a reasonable number of hours, and it does

15   sound like you are not particularly interested in arguments on

16   those issues.  The issue you are raising, though, is whether

17   service on attorney Duffy of Prenda Law is sufficient to

18   provide notice of the motion for sanctions on attorneys

19   Hansmeier and also attorney Steele, both of Prenda Law.

20             And I think its common sense that it must be, in

21   addition to them being in the same firm, and there being case

22   after case saying that service on the firm gives notice to all

23   attorneys in the firm.  This is a particularly close

24   collaboration in the partnership between these three attorneys

25   that we've seen in this case and in many other cases.  But even

1   just focusing on this case, this is where we've got

2   attorneys -- Duffy filing the notice of appearance for Steele,

3   and the motion for pro hac admission of Hansmeier.  This is

4   Steele filing Hansmeier's motion to do the hearing.

5           THE COURT:  If you would refresh my memory, Counsel.

6   With electronic filing here, we have a particular -- some say

7   peculiar way of entering your appearance in this case.  How was

8   Mr. Hansmeier's entry of appearance entered?

9           MR. BOOTH:  My recollection is that attorney Duffy

10   initially filed the motion for pro hac admission on behalf

11   attorney Hansmeier, and then the Court struck that because it

12   needed to be filed by Hansmeier personally and attorney

13   Duffy --

14           MR. HANSMEIER:  Judge, this is attorney Hansmeier.  I

15   would --

16           THE COURT:  Just a minute.  I'm not ready to hear from

17   you yet.  I'm going to have my clerk look up and check this.

18   She is pretty good at that, so we can kind of put this matter

19   behind us without too much chatter.

20           Linda, have you had a chance to look at that?

21           COURTROOM DEPUTY:  Judge, there are quite a few

22   motions, your Honor.

23           MR. HANSMEIER:  Now, the entry in the docket is not --

24           THE COURT:  Now, wait just a minute.  Just a minute.

25   I don't have much voice left, but I've got some.  Now,

1    ordinarily around this place -- for the next week -- when I

2    talk, everybody just listens.  I'm still talking.  Listen.

3          *MR. HANSMEIER:*  Yes, your Honor.

4          *THE COURT:*  All right.  Now, Linda, see what you find.

5          *COURTROOM DEPUTY:*  Which two attorneys are we worried

6    about here?

7          *THE COURT:*  Mr. Hansmeier.  When did he first make his

8    entry of appearance?

9          *COURTROOM DEPUTY:*  I'm looking for that now, Judge.

10         *THE COURT:*  It may take us a few minutes.

11         *COURTROOM DEPUTY:*  There's quite a few motions so...

12         *MR. BOOTH:*  If I may, your Honor, if it will assist

13   matters, I believe that attorney Hansmeier.  The initial

14   appearance was on Docket Number 19, was the attempted entry,

15   and then that was stricken at Docket Number 21.

16         *THE COURT:*  All right.  Docket Number 21 first.

17         *MR. HANSMEIER:*  And I appeared through Alpha Law Firm,

18   not through Prenda Law, Inc., if you review --

19         *THE COURT:*  Counsel, now, I'm not -- Counsel, I'm

20   going to tell you, and I'm going to -- I'll ask people when I

21   want them to speak.  I'm not big on this telephone appearance

22   bit, but I'll go along with it on certain occasions.

23         Now, Linda, first of all, take me to 21.  What's it

24   show?

25         *COURTROOM DEPUTY:*  Twenty-one is a motion to appear

AA-10

1    pro hac vice by attorney Hansmeier, filed by attorney

2    Hansmeier.  Number 19, the first docket he referred to was

3    stricken.  I'm opening that document now.  It was stricken

4    because the document needed to be filed by Mr. Hansmeier, and

5    it was filed by Mr. Duffy.

6         THE COURT:  Okay.  Mr. Duffy was trying to file for

7    Mr. Hansmeier, but we have this -- we have this rule you have

8    to file your own things.  It is stricken.  Then we come back to

9    21, and then what's Mr. Hansmeier doing then?

10        COURTROOM DEPUTY:  Twenty-one, Mr. Hansmeier filed his

11   own pro hac vice motion.

12        THE COURT:  And what does it say?  Read it to me.

13        COURTROOM DEPUTY:  It is a form probably provided by

14   us.

15        THE COURT:  Yes.

16        COURTROOM DEPUTY:  "Pursuant to local 83.1(b), the

17   undersigned attorney moves for admission pro hac vice to the

18   U.S. District Court for the Southern District of Illinois in

19   order to appear as counsel of record on behalf of the

20   plaintiff, Lightspeed Media."

21        THE COURT:  All right.  He is in for Lightspeed Media.

22        COURTROOM DEPUTY:  Correct.

23        THE COURT:  Good enough.  All right.  Now, let's fast

24   forward.  And we are here on the defendant, I think on

25   Mr. Steele's motion or whoever it is today.  Let's just see how

AA-11

1  they were given notice.

2      *COURTROOM DEPUTY:* For the hearing today?

3      *THE COURT:* For the hearing -- no, not on the hearing,

4  on the motion itself when he comes in and asks for attorneys'

5  fees. On that motion, I granted it.

6      *COURTROOM DEPUTY:* Okay.

7      *THE COURT:* So the defendant would have filed this

8  motion, and on his motion the record will reflect how it was

9  served.

10     *COURTROOM DEPUTY:* There are a lot of motions.

11     *THE COURT:* Well, I think this would be the first one.

12     *LAW CLERK:* I think it is 61.

13     *COURTROOM DEPUTY:* Document 61 is a motion for

14  attorneys' fees by Anthony Smith, who is the defendant, filed

15  by Mr. Daniel Booth.

16     *THE COURT:* Mmm hmm.

17     *COURTROOM DEPUTY:* That motion, there was a response

18  filed at Document 63. There was a reply at Document 64.

19     *THE COURT:* I know that but on the -- yeah. Keep

20  going.

21     *COURTROOM DEPUTY:* On the order on 65 granting the

22  motion for fees.

23     *THE COURT:* But on the initial motion there would be a

24  record of how it was served on the other counsel. Show that to

25  me or read it to me.

1          COURTROOM DEPUTY:  There is a certificate of service

2    on that motion, signed by Dan Booth, that says, "I certify that

3    on the 5th day of April 2003 I electronically filed the

4    foregoing documents with the clerk of the court using the

5    CM/ECF system, which will send notification of such files to

6    all attorneys of record and provide service upon each."

7          THE COURT:  All right.  So --

8          COURTROOM DEPUTY:  I can go back out to that document

9    and tell you where it went.

10          THE COURT:  All right.  Let's go back out to that

11   document, and it will tell us where it went.

12          COURTROOM DEPUTY:  That receipt shows the motion

13   electronically went to Mr. Toennies, Mr. Huffman, Mr. Booth,

14   Jason Sweet, John Seiver, Kevin Hoerner, Paul Duffy, Troy

15   Bozarth, all electronically.

16          THE COURT:  All right.  Now, it doesn't show

17   individual service on Mr. Hansmeier in this case, even though

18   he had entered his appearance, correct?

19          COURTROOM DEPUTY:  It does not show one for him, but

20   I'm not sure when his appearance was entered.  Was that the

21   first document we looked at?

22          THE COURT:  Yes.  He had been there, so it was not

23   made electronically.

24          COURTROOM DEPUTY:  Correct.

25          THE COURT:  Now, the issue is whether the service on

1  Mr. Duffy is enough to get our other lawyer in that is arguing

2  today.

3      All right.  Counsel, now before you go any further,

4  let me tell you this.  There is going to be numerous arguments

5  here over fees.  Everyone that's been involved in the case is

6  going to want fees.  There is almost certainly going to be an

7  appeal to the Court of Appeals on this matter, whoever handles

8  it.  Do you wish to proceed on the record you have, or do you

9  want to just back up and make notice now? -- or you are going

10  to have actual notice.  You have got the respondent on the

11  phone.  How do you wish to proceed?

12      Do you hear me?

13      *MR. BOOTH:*  Yes, your Honor.  And we would at this

14  point proceed on the basis of both the notice through Prenda

15  Law initially when we filed the motion.

16      *THE COURT:*  I understand that.  I'm just asking you

17  this question -- and now identify yourself on the record.  My

18  court reporter is trying to get it down who you are.

19      *MR. BOOTH:*  Dan Booth.

20      *THE COURT:*  All right.  Now, do you wish to proceed

21  today on the basis of the record that you have, or do you wish

22  to have this thing pushed back a couple of weeks and some judge

23  is going to have to hear all these?

24      *MR. BOOTH:*  Our preference is to proceed on the basis

25  of the record we currently have.

1    THE COURT:  That's it.  I generally let people do what

2    they think.  It is your case.  And you are the one that's going

3    to have to defend it on appeal, and you may well be right.

4    So go ahead.  Why is the notice on Prenda law firm and

5    the other lawyer sufficient in this case?

6    MR. BOOTH:  Well, your Honor, attorney Hansmeier

7    identified himself to this Court as of counsel to Prenda Law.

8    If you look at the motion to stay discovery that he filed on

9    behalf of Lightspeed, he signed that and his signature block

10   says he is of counsel to Prenda Law, Inc.  And so when you

11   serve a document on a law firm, you are providing notice to the

12   entire law firm of the document, and so there is no basis for

13   him to object at this point that there was not notice.  That

14   notice already happened six months ago.

15   THE COURT:  All right.  Your idea is that in this

16   case, even being of counsel, in light of the ongoing

17   relationship and what's been filed before, that's enough.

18   MR. BOOTH:  Yes, your Honor.

19   THE COURT:  All right.  Now, next question.  In just a

20   very few paragraphs.  Don't read from your papers.  I've read

21   your papers.  Why do you think that attorneys' fees are proper

22   under the statute in this case.  These are not Rule 11 fees.

23   These are -- you are referring to the statute itself.  Go

24   ahead.

25   MR. BOOTH:  Well, briefly, your Honor, this is a case

1   where sanctions were properly granted.  This is exactly the

2   sort of case to which the statute applies.  The purpose of this

3   case was to get discovery from certain Internet service

4   providers who over time had become reluctant to give such

5   service once they, I think, became aware that Prenda Law was

6   using this not for a legitimate end but as a shakedown racket,

7   in effect.

8        And so they were not looking to impose actual

9   liability on my client, Smith, who was fully innocent.  They

10  had simply picked an individual defendant so that it looked

11  like a more substantive case.  They wanted it -- not just a

12  mass of anonymous hackers, they wanted a scapegoat, but they

13  got the wrong scapegoat.  Their hunch was wrong.  And so he was

14  in the case on -- brought in for an ulterior purpose wrongly,

15  and, in addition, none of the claims amounted to anything.

16       In our motion to dismiss, we walked through why they

17  had not stated a claim under the Computer Fraud and Abuse Act

18  or any of the other claims that they brought.  And they failed

19  to properly refute those issues.  I think they were aware of

20  that, and that's one of the reasons that our client was

21  dismissed; the other being, of course, eventually, once the

22  Court granted our -- granted the defendants' motion to stay

23  discovery, they knew they weren't going to get what they were

24  after, which was names and contact information for thousands of

25  Internet service providers as an opportunity to shake more of

1    them down.  So when they didn't have that, they were done with

2    the case.

3         *THE COURT:*  Well, your point is your fellow just

4    happened to be in the line of fire and --

5         *MR. BOOTH:*  Absolutely.

6         *THE COURT:*  And he got hit.

7         *MR. BOOTH:*  Absolutely.

8         *THE COURT:*  And he wasn't a part of it.

9         *MR. BOOTH:*  There's tens of thousands of alleged

10    illegal downloaders, but they've only named a handful of the

11    individual defendants who got caught in the line of fire.

12         *THE COURT:*  Right.

13         *MR. BOOTH:*  And even those cases don't move past

14    preliminary discovery unless they happen to get a default.

15         *THE COURT:*  Well, as I say, I'm fairly confident I

16    know where all this is going.

17         All right.  I'll let my respondent here very quickly

18    state your case why you don't think the notice is sufficient,

19    and you might tell the Court here in a moment of candor when

20    you first found out this motion had been filed and how you

21    found it out and then why this -- these attorneys' fees

22    shouldn't be entered against you.  Know that I have read your

23    papers.

24         *MR. HANSMEIER:*  Thank you, your Honor.  As an initial

25    matter --

AA-17

1          *THE COURT:*  Now, who is speaking?  Who is speaking?
2     We have to do this on the record.

3          Did you get that, Molly?

4          She did not get it.  Identify yourself again.

5          *MR. HANSMEIER:*  This is attorney Paul Hansmeier.

6          *THE COURT:*  All right.  Mr. Hansmeier, now make your
7     first point, what you call the initial matter.

8          *MR. HANSMEIER:*  The initial matter is notice.  And if
9     the Court reviews its docket, it will see that when my
10    appearance was entered in this case, it was not entered on
11    behalf of Prenda Law, Inc.  Instead, it was entered on behalf
12    of Alpha Law Firm, LLC.  And that's the law firm that I own,
13    and that's the law firm that I've been practicing through
14    during this case, and that's the law firm that would have to be
15    served if I was to receive notice of something.

16         *THE COURT:*  Well, we are not -- we are talking
17    about -- let me stop you there.  I'm aware of that.  I've read
18    the record in this case.  My question to you, though, was, When
19    did you first learn of this motion, and how did you learn of
20    it?

21         *MR. HANSMEIER:*  I first learned of the motion when I
22    got a phone call from Paul Duffy telling me that the Court had
23    granted the motion for attorneys' fees against not only him
24    but --

25         *THE COURT:*  Right.  You didn't get notice of it until

AA-18

1    after the order had been entered.

2          MR. HANSMEIER:  That's correct.

3          THE COURT:  All right.  Now, we can -- that's -- the

4    sufficiency of the notice is a legal question.

5          I understand the argument.

6          Now, tell me why you shouldn't be jointly and several

7    for actually what are pretty modest fees in this case.

8          MR. HANSMEIER:  Well, with respect, your Honor,

9    they're not modest for me.  That $70,000 is an extremely large

10   amount of money.

11         THE COURT:  You have not seen anything yet.  The other

12   defendants have not filed there's yet.  That's what you call

13   bargain rates around here.  You are going to see what rates are

14   shortly.  As I said, ordinarily we look for six figures on

15   notices of removal around this place.  So I don't know what

16   your financial situation is, but in the larger picture I can

17   just tell you that's just kind of a foreshadowing of about what

18   you are going to see here shortly here, I think.

19         But go ahead.  Set aside the amount.  Why is it that

20   you are not responsible for these?

21         MR. HANSMEIER:  Well, your Honor, in our papers, we

22   had cited to a case, *FM Industries*, and in *FM Industries*, the

23   Seventh Circuit has made very clear over both that case and

24   prior cases that 1927 liability cannot be imposed on a joint

25   and several basis.  In other words, they held the cornerstone

1    of 1927 liability is personal responsibility.  So in other

2    words, if there is something I did in this case where I

3    personally unreasonably and vexatiously multiplied the

4    proceedings and by doing so imposed excess costs on the

5    defendants --

6            THE COURT:  Well, do you say -- wait.  Let me stop

7    you.  Let me stop you there.  That's an important point.  Do

8    you think that personally excludes jointly and severally?

9            MR. HANSMEIER:  Absolutely.

10           THE COURT:  Really?

11           MR. HANSMEIER:  The -- absolutely.  In a case -- in

12   the *FM Industries*, for example, there were two attorneys of

13   record.  One of the attorneys was held to have done some pretty

14   crazy things, including, for example, asking for $15 billion in

15   damages.  The other attorney was not held to have done any of

16   the things that the district court found objectionable.

17           THE COURT:  Were they from the same firm?

18           MR. HANSMEIER:  They were from different firms.

19           THE COURT:  All right.  I mean, that's what we have

20   here, is we have concerted action.  Everyone here is trying to

21   do the same thing.  We're operating under the Prenda law firm.

22           MR. HANSMEIER:  Again, your Honor, my law firm that I

23   appeared through in this case was Alpha Law Firm.  The other

24   side likes to say that I'm involved with Prenda law firm and

25   make these blanket statements, but the record is very clear on

1   the point that my entry of appearance was through Alpha Law

2   Firm, not through Prenda law firm.

3           *THE COURT:*  Answer my question.  Not for who?

4           *MR. HANSMEIER:*  Can you repeat the question, your

5   Honor?

6           *THE COURT:*  Yes.  Just repeat what you just said.  I'm

7   having great difficulty hearing you.  You said it was not for

8   someone but instead was for someone else.  Say that again.

9           *MR. HANSMEIER:*  My entry of appearance was for Alpha

10  Law Firm, not for Prenda law firm.

11          *THE COURT:*  Well, it's odd that in the first paper

12  you're trying to have the Prenda law firm admitted pro hac

13  vice.

14          *MR. HANSMEIER:*  I believe my papers that were filed in

15  this case were on behalf of Alpha Law Firm.

16          *THE COURT:*  Good enough.  I understand what you are

17  saying.  All right.  Let's wrap this up.  What else do you want

18  to say?

19          *MR. HANSMEIER:*  So because 1927 liability cannot be

20  joint and several, there is no vicarious 1927 liability.  It's

21  burden on the person moving for fees to show what, if anything,

22  that I personally did that was unreasonable or vexatious or

23  multiplied the proceedings.  For example, I attended the

24  emergency hearing via telephone and listened in, just like I'm

25  listening -- well, except I didn't participate, but I just

1    listened in.  I participated in the Rule 26(f) conference and

2    then filed one paper in this case.

3        THE COURT:  Well, let me ask you this:  What about the

4    history of this?  I've looked at all the papers in previous

5    cases, and it has always been you and Mr. Duffy and -- I don't

6    know -- someone else that have been operating under the Prenda

7    law firm moniker.  I mean, this isn't the -- this isn't the

8    first time out of the block.

9        MR. HANSMEIER:  Your Honor, I don't -- I'm not aware

10   of what cases you are referring to.  I appeared on behalf of

11   the law firm Steele Hansmeier.

12       THE COURT:  No.  I'm talking about previous and other

13   litigation.  I mean, judges have even commented on that, I

14   believe.  Am I reading the record wrong?  Is this your first

15   time associating with the Prenda law firm?

16       MR. HANSMEIER:  I think in this -- well, I have

17   appeared as a counsel of record in this case through Alpha Law

18   Firm.  I believe there was a signature block in this case

19   with --

20       THE COURT:  I didn't ask you that question I'm talking

21   about other cases in other venues at other times.

22       MR. HANSMEIER:  I'm trying to wrack my memory.  I

23   don't know of another appearance I have had for Prenda law firm

24   I can't think of one.

25       THE COURT:  All right.  Maybe I read the record wrong.

AA-22

1    I understand your position.  Now I'm going to let the

2    defendants' lawyer sum up.

3        What do you have to say about the record in other

4    cases, Counsel?

5        MR. BOOTH:  Your Honor, in other cases --

6        THE COURT:  I can't hear you.  Speak up.  Put the mic

7    in front of you.  I'll tell you what, the next time there will

8    not be any more of this telephone business.  You will all be

9    here.  I'm not sure which judge it will be but -- who is

10   speaking?

11       MR. BOOTH:  Yes, your Honor.

12       THE COURT:  Who?

13       MR. BOOTH:  Dan Booth again, your Honor.

14       THE COURT:  All right.  Yeah.  Now tell me about the

15   record.  Did I read that wrong?  Hasn't our respondent been in

16   other cases with the Prenda law firm?

17       MR. BOOTH:  There are other cases in which --

18   specifically in the *AF Holdings* cases in California, where it

19   has been found that as a matter of fact that attorney Hansmeier

20   and attorney Steele and attorney Duffy collectively are Prenda

21   Law.

22       THE COURT:  Well, that's what I read.

23       MR. BOOTH:  They are the --

24       THE COURT:  All right.  The Court's -- the Court's

25   heard enough on this.  Now, there are other matters -- there

1    are other matters pending.

2         I don't think the other two defendants have submitted

3    their application for fees.  They want fees, but I haven't seen

4    the itemization; is that correct?

5         *MR. TOENNIES:*  Yes, your Honor.

6         *MR. BOZARTH:*  That's correct, your Honor.

7         *THE COURT:*  All right.  Here's what the Court's going

8    to do.  I'll take a short -- I'll take a short look at this and

9    enter a short order.  But this is just -- this is just the

10   beginning of this.  I'm going to recommend to my colleagues

11   that all -- the next hearings be in person so they can better

12   examine and hear.  This just didn't work out as well.  We will

13   give you a little more -- a little more notice, and then

14   everything can be wrapped up at one time.

15        And then it will go up to the Court of Appeals then.

16   There is not much else I can do with this this morning.

17        *MR. STEELE:*  Your Honor, may I -- this is John Steele.

18        *THE COURT:*  Yes, Mr. Steele.

19        *MR. STEELE:*  I feel like there's been a lot of

20   assertions made as if it is just a fact about me, and I flew

21   all the way out here because I wanted to -- people are saying

22   things as if they are facts without any basis, and they're

23   pointing out to cherry-pick cases that went their way in other

24   states and with -- regarding completely different people.  And

25   we have here today the owner of Prenda Law, you know, who can

1    tell -- these allegations that are just casually dropped --

2    that people own a company that there is no evidence that they

3    own of.  Despite what another judge may have ruled, there are

4    other ones that have disagreed.  So as far as here, I'd like to

5    address my culpability or my involvement in this case, if I

6    could.

7        *THE COURT:*  Well, why don't you just tell me what you

8    say your participation in the case was.  You were in the case,

9    but go ahead.

10       *MR. STEELE:*  Yes, your Honor.  I appeared at the

11   emergency hearing, which, obviously, your Honor is well aware

12   of.  I was on the phone with a scheduling conference, and

13   that's essentially it.  I had withdrawn from this case.  I

14   thought I had withdrawn months ago.  I thought it was already

15   done, and I found out in March 2013, it had not.

16       So I filed my notice of withdrawal, which is prior to

17   any motion for fees being filed, so, clearly, I could not have

18   learned through ECF.  I learned about this fee issue when Paul

19   Hansmeier called me -- I don't know if it was a few days ago, a

20   week ago, whatever -- and told me what he had just learned from

21   Paul Duffy.  So I don't -- one of the last things -- I maybe

22   appeared a couple more times.

23       But this is the one of the last things I did as an

24   attorney.  I don't even practice anymore.  And I'm trying to

25   understand -- you know, just simply saying that I have an

1  ownership interest in Prenda Law is not sufficient, I don't

2  believe, by various counsels because I don't.  And so if there

3  is going to be some liability placed on me, I believe that the

4  other side has some duty to show, to prove wild accusations,

5  such as Anthony Smith is innocent, John Steele owns Prenda Law.

6  All these different items just aren't true.

7        THE COURT:  Well, it is actually not that complicated.

8  You entered your appearance in the lawsuit.  If you didn't know

9  better or if you hadn't heard anything, it would seem to be a

10  real or serious lawsuit like any others that we get.  You don't

11  enter a lawsuit on a limited basis.  You represent people.

12  Here, we've got a defendant in this case who gets -- who is put

13  through the grinder.

14        Now, I agree with everything that I've read and seen.

15  This was abusive litigation.  This is simply filing a lawsuit

16  to do discovery to find out if you can sue somebody.  That's

17  just utter nonsense.  Now, you don't have to agree with it.  I

18  don't -- as I say, I know where this lawsuit's going to end,

19  and you might make a -- you might make a convincing argument in

20  the Court of Appeals, but I think you are going to get a chance

21  to.

22        The issue of who owns what is only pertinent to me as

23  to the sufficiency of the notice in this case, and I'm going

24  to -- I'm going to sit and think about that.  And what you are

25  telling me is you didn't get notice.  I'm going to tell you

1  just what I told the other lawyer that we just discussed with.

2  This is a very modest fee request.

3       I'm anticipating the next fee request you are going to

4  get are going to be, you know, several -- a couple of hundred

5  thousand bucks each, because I do this every day.  I know what

6  these -- I know what these firms charge.  I'm kind of wondering

7  what -- why someone would, in light of the record, would want

8  to -- would want to resist this.  But you want to resist this,

9  and I'll take a look at, and I'll write it up.

10      *MR. STEELE:*  And, your Honor, I think it is important

11 because we are assuming a lot of things.  For instance, prior

12 to this case even being filed, I personally spoke with Anthony

13 Smith twice.  I personally spoke with him and came away

14 saying --

15      *THE COURT:*  Who left him with a card that said call

16 this person.  They're a very important lawyer from --

17      *MR. STEELE:*  It wasn't --

18      *THE COURT:*  Obviously, somebody did.

19      *MR. STEELE:*  The person that did that, I've never met

20 never heard of, never spoke to.

21      *THE COURT:*  But it is your case, you are responsible

22 for it.  It is your case, you filed it.  There seems to be --

23      *MR. STEELE:*  I didn't file it.

24      *THE COURT:*  There seems to be -- what do you mean you

25 didn't file it?  You entered your appearance in it.

1          *MR. STEELE:*  Right.  But I did not file this case.

2          *THE COURT:*  Do you think that makes a difference --

3          *MR. STEELE:*  I do.

4          *THE COURT:*  -- if you enter your appearance in a case

5     that's pointless, worthless, a sham?

6          *MR. STEELE:*  Well, Judge, this same type of cases have

7     been ruled in our favor in many other jurisdictions, including

8     the state action that preceded proceeded this, the judge sided

9     with our arguments.  So in one case --

10          *THE COURT:*  Mr. Steele, you are in the United States

11     court of -- in Southern District of Illinois.  You are part of

12     the Court of Appeals for the Seventh Circuit.  Now, I could be

13     dead wrong.  Occasionally, I am; not too often.  But I would

14     say that this litigation the chances of being successful on

15     appeal are somewhere between slim and below zero.  This matter

16     is under advisement.  The Court's in recess.

17                              -oOo-

18                     REPORTER'S CERTIFICATE

19          I, Molly N. Clayton, RPR, FCRR, Official Court Reporter
      for the U.S. District Court, Southern District of Illinois, do
20     hereby certify that I reported with mechanical stenography the
      proceedings contained in pages 1 - 27; and that the same is a
21     full, true, correct and complete transcript from the record of
      proceedings in the above-entitled matter.

22
           DATED this 5th day of December, 2013.
23

24
                              *s/Molly Clayton, RPR, FCRR*
25                     _____

                                                            AA-28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | CASE No. 3:12-CV-00889-GPM-SCW |
| Plaintiff, | |
| | Judge: Hon. G. Patrick Murphy |
| v. | |
| | Magistrate: Hon. Stephen C. Williams |
| ANTHONY SMITH, et al, | |
| Defendants. | |

## DECLARATION OF JOHN STEELE

I, John Steele, declare as follows:

1. I was never served or otherwise notified of Defendant Anthony Smith's motion for attorney's fees. I first became aware of the Court's order granting Defendant Smith's motion for attorney's fees via attorney Paul Duffy.

This Declaration is submitted pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 4, 2013

s/ John Steele
_____
John Steele

AA-29

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

---

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | CASE No. 3:12-CV-00889-GPM-SCW |
| Plaintiff, | |
| | Judge: Hon. G. Patrick Murphy |
| v. | |
| | Magistrate: Hon. Stephen C. Williams |
| ANTHONY SMITH, et al, | |
| Defendants. | |

---

### DECLARATION OF PAUL HANSMEIER

I, Paul Hansmeier, declare as follows:

1. I was never served or otherwise notified of Defendant Anthony Smith's motion for attorney's fees. I first became aware of the Court's order granting Defendant Smith's motion for attorney's fees via attorney Paul Duffy.

This Declaration is submitted pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2013

       s/ Paul Hansmeier
       Paul Hansmeier

AA-30

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-00889-WDS-SCW |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY SMITH, SBC INTERNET SERVICES, | ) | |
| INC., d/b/a AT&T INTERNET SERVICES; AT&T | ) | |
| CORPORATE REPRESENTATIVE #1; COMCAST | ) | |
| CABLE COMMUNICATIONS, LLC, and | ) | |
| COMCAST CORPORATE REPRESENTATIVE #1, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DECLARATION OF ANTHONY SMITH

1. On August 20, 2012, around 9 p.m. I answered a knock at my door.

2. A man with a flashlight greeted me and handed me paperwork saying it was a subpoena for me to appear in court because "I was in a lot of trouble."

3. He asked me if I knew what the subpoena was for and I told him that I truthfully had no idea.

4. He proceeded to explain to me that the lawsuit had to do with computers and hacking—at that point I thought they had the wrong person until I saw my name on the paperwork.

5. He continued to tell me that I was in a lot of trouble and that I should get an attorney immediately.

6. At that point he handed me his business card. On the back was written John Steele's name and phone number.

7. He said that John Steele was a big deal attorney from Washington, D.C who had no interest in the case but wanted to help me negotiate a settlement, and that I should call him.

8. Instead of contacting Atty. Steele, I contacted my friend who is an attorney.

9. My friend looked over the paperwork and put me in touch with my counsel in this matter, Jason Sweet.

10. After speaking with Atty. Sweet, I learned for the first time that John Steele, in fact, represented the Plaintiff's law firm.

11. The Plaintiff claims that I accessed their websites without authorization to download and distribute its content to others. I am, and always have been, innocent of these allegations.

Dated: April 5, 2013

Tony Smith

AA-31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ANTHONY SMITH, | ) | No. 3:12-cv-00889-GPM-SCW |
| SBC INTERNET SERVICES, INC., d/b/a | ) | |
| AT&T INTERNET SERVICES; | ) | |
| AT&T CORPORATE REPRESENTATIVE #1; | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | |
| LLC., and COMCAST CORPORATE | ) | |
| REPRESENTATIVE #1 | ) | Judge: Hon. G. Patrick Murphy |
| | ) | |
| | ) | Magistrate: Hon. Stephen C. Williams |
| Defendants. | ) | |
| | ) | |
| | ) | |

### PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE

**NOTICE IS HEREBY GIVEN** that, pursuant to Federal Rule of Civil Procedure 41(a)(1), Plaintiff voluntarily dismisses, without prejudice, all claims brought in this action. Defendant has filed neither an answer to the complaint nor a motion for summary judgment with respect to the same. Dismissal under Rule 41(a)(1) is therefore appropriate.

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

**DATED:** March 21, 2013

By:      /s/ Paul Duffy
         Paul Duffy (Bar No. 6210496)
         Prenda Law Inc.
         161 N. Clark Street, Suite 3200
         Chicago, IL 60601
         Phone: 312-880-9160
         Fax: 312-893-5677
         E-mail:paduffy@wefightpiracy.com
         *Attorney for Plaintiff*

AA-32

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 21, 2013, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, in compliance with Local Rule 5.2(a).


<u>/s/ Paul Duffy</u>
Paul Duffy

AA-33

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ANTHONY SMITH, | ) | No. 3:12-cv-00889-GPM-SCW |
| SBC INTERNET SERVICES, INC., d/b/a | ) | |
| AT&T INTERNET SERVICES; | ) | |
| AT&T CORPORATE REPRESENTATIVE #1; | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | |
| LLC., and COMCAST CORPORATE | ) | |
| REPRESENTATIVE #1 | ) | Judge: Hon. G. Patrick Murphy |
| | ) | |
| | ) | Magistrate: Hon. Stephen C. Williams |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MOTION OF JOHN STEELE TO WITHDRAW AS COUNSEL

Pursuant to Southern District of Illinois Local Rule 83.1(g), attorney John Steele of 161 N. Clark St., Suite 3200, Chicago, IL 60601, bar number 6292158, requests to be allowed to withdraw as counsel for Plaintiff Lightspeed Media Corporation. Plaintiff Lightspeed Media Corporation is in agreement with this request, and will not be prejudiced by the withdrawal as another attorney already represents Plaintiff: lead counsel, Paul Duffy. The Court should, therefore, grant attorney John Steele leave to withdraw as counsel for Plaintiff.

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

DATED: March 6, 2013

By:    /s/ John Steele_____
       John Steele (Bar No. 6292158)
       161 N. Clark St., Suite 3200
       Chicago, IL 60601
       *Attorney for Plaintiff*

1

AA-34

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 6, 2013, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

<u>/s/ John Steele</u>
John Steele

AA-35

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ANTHONY SMITH, | ) | No. 3:12-cv-00889-GPM-SCW |
| SBC INTERNET SERVICES, INC., d/b/a | ) | |
| AT&T INTERNET SERVICES; | ) | |
| AT&T CORPORATE REPRESENTATIVE #1; | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | |
| LLC., and COMCAST CORPORATE | ) | |
| REPRESENTATIVE #1 | ) | Judge: Hon. G. Patrick Murphy |
| | ) | |
| | ) | Magistrate: Hon. Stephen C. Williams |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

### MOTION OF PAUL R. HANSMEIER TO WITHDRAW AS COUNSEL

Pursuant to Southern District of Illinois Local Rule 83.1(g), attorney Paul R. Hansmeier of 40 South 7th Street, Minneapolis, MN 55402, bar number 0387795, requests to be allowed to withdraw as counsel for Plaintiff Lightspeed Media Corporation. Plaintiff Lightspeed Media Corporation is in agreement with this request, and will not be prejudiced by the withdrawal as several other attorneys already represent Plaintiff, including lead counsel, Paul Duffy. The Court should, therefore, grant attorney Paul R. Hansmeier leave to withdraw as counsel for Plaintiff.

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

DATED: November 14, 2012

By:   /s/ Paul R. Hansmeier_____
Paul R. Hansmeier (Bar No. 0387795)
40 South 7th Street
Minneapolis, MN 55402
*Attorney for Plaintiff*

AA-36

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on November 14, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

/s/ Paul R. Hansmeier
Paul R. Hansmeier

AA-37

IN THE DISTRICT OF THE UNITED STATES OF AMERICA
FOR THE SOUTHERN DISTRICT OF ILLINOIS

```
_____
                                )
LIGHTSPEED MEDIA CORPORATION,    )
                                )
            Plaintiff(s),        )
                                )
    vs.                          )   Case No. 12-00889-GPM
                                )
ANTHONY SMITH, et al.,           )
                                )
            Defendant(s).        )
_____)
```

### MOTION FOR DISCOVERY

BE IT REMEMBERED AND CERTIFIED that heretofore on **08/20/2012**, the same being one of the regular judicial days in and for the United States District Court for the Southern District of Illinois, **Honorable G. Patrick Murphy**, United States District Judge, presiding, the following proceedings were recorded by mechanical stenography; transcript produced by computer.

### APPEARANCES:

*FOR PLAINTIFF:*
  **John L. Steele** of Steele Hansmeier PLLC, 161 North Clark Street, Suite 4700, Chicago, IL 60601
  And **Kevin T. Hoerner** of Becker, Paulson *et al.*, 5111 West Main Street, Belleville, IL 62226.
  And **Paul A. Duffy**, Prenda Law, Inc., 161 N. Clark Street, Suite 3200, Chicago, IL 60601
  And **(by phone) Paul Hansmeier** of alpha Law Firm, 80 South 8th Street, Suite 900, Minneapolis, MN 55402

*FOR DEFENDANT:*
  **Bart Westcott Huffman** of Locke Lord LLP - Austin, 100 Congress Avenue, Suite 300, Austin, TX 78701
  And **Troy A. Bozarth** of HeplerBroom LLC - Edwardsville, 130 North Main Street, P.O. Box 510, Edwardsville, IL 62025.
  And **Andrew G. Toennies** of Lashly & Baer PC, 714 Locust Street, St. Louis, MO 63101.
  And **John D. Seiver** of Davis Wright Tremaine LLP, 1919 Pennsylvania Avenue, NW, Suite 800, Washington, DC 20006

*REPORTED BY*: **Molly N. Clayton, RPR, FCRR**, Official Reporter for United States District Court, SDIL, 750 Missouri Ave., East St. Louis, Illinois 62201, (618)482-9226,
    *molly_clayton@ilsd.uscourts.gov*

1                    **INDEX OF WITNESS EXAMINATION**

2                                      **DX**      **CX**      **R-DX**      **R-CX**

3    No witness testimony.

4

5                         **INDEX OF EXHIBITS**

6    **EXHIBIT**              **DESCRIPTION**           **Id'D**        **Rcv'd**

7    No exhibits identified or received.

8

9                       **MISCELLANEOUS INDEX**

10                                            **PAGE**

11   No miscellaneous index entries.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AA-39

1          *COURTROOM DEPUTY:  Lightspeed Media Corporation versus*

2    *Anthony Smith et al.*, Case Number 12-889-GPM, is called for

3    hearing on the motion for discovery.

4          Will the parties identify themselves for the record?

5          *MR. STEELE:*  John Steele on behalf of Plaintiff

6    Lightspeed.

7          *THE COURT:*  Mr. Steele.

8          *MR. HOERNER:*  Kevin Hoerner for the plaintiff.

9          *THE COURT:*  Mr. Hoerner, good afternoon.

10          *MR. DUFFY:*  Paul Duffy for the plaintiff.

11          *THE COURT:*  Mr. Duffy.

12          *MR. JONES:*  I'm Steve Jones.  I'm the owner of

13    Lightspeed.

14          *THE COURT:*  All right.  Mr. Jones.

15          *MR. BOZARTH:*  Troy Bozarth for SPC Internet Services.

16          *THE COURT:*  Mr. Bozarth, good afternoon.

17          *MR. BOZARTH:*  Good afternoon.

18          *MR. HUFFMAN:*  Bart Huffman, also for SPC Internet

19    Services, Inc.

20          *THE COURT:*  Is it Huffman?

21          *MR. HUFFMAN:*  Huffman, yes, your Honor.

22          *THE COURT:*  Okay.  Good afternoon.

23          *MR. TOENNIES:*  Andy Toennies for ComCast Cable.

24          *THE COURT:*  All right.  Good afternoon.

25          *MR. SEIVER:*  John Seiver, also for ComCast Cable, your

1    Honor.

2            *THE COURT:*  Is it Seivers?

3            *MR. SEIVER:*  Seiver.

4            *THE COURT:*  Thank you.  Good afternoon.

5            All right.  Who do we have on the line?

6            *MR.  HANSMEIER:*  On the phone is Paul Hansmeier for

7    the plaintiff.

8            *THE COURT:*  All right, Mr. Hansmeier, good afternoon

9    to you.

10           Now, what we are doing here today is, I received calls

11   to my chambers.  I did not talk to -- I think it was someone

12   named Dunn.  Mr. Dunn had called and requested an emergency

13   hearing.  Instead, I had my clerk contact everyone that we

14   could contact and try to set it up.  Here we are.

15           Now, the Court understands what's requested here is

16   what's cast as an emergency motion to engage in out of the

17   ordinary discovery.  In other words, ordinarily we have a

18   scheduling conference and the parties work out their

19   limitations and who's to do what and when and we get started

20   that way.  But what I was told in the emergency motion was that

21   this was a life or death matter for the plaintiff's business.

22   But then I've read I think it is AT&T's papers today, and they

23   say it's not life or death at all and that, in fact, the

24   plaintiff has met with no success at all, including the

25   Illinois Supreme Court on these kind of cases.

AA-41

1              Who's going to speak for the plaintiff?

2         *MR. STEELE:*  I am, your Honor.

3         *THE COURT:*  All right.  Identify yourself and tell me

4    what, exactly what relief you are wanting and why you think you

5    are entitled to it.

6         *MR. STEELE:*  Would the Court like me to approach?

7         *THE COURT:*  As long as I can hear you, I don't care,

8    and the court reporter can get your -- can get your name.

9         *COURTROOM DEPUTY:*  He needs to be at a mic so the

10   person on the phone can hear.

11        *THE COURT:*  All right.

12             You need to be at a mic so the court counsel can hear

13   you.

14        *MR. STEELE:*  All right.  Can everyone hear me?  Okay.

15             Your Honor, I represent Lightspeed.  John Steele,

16   S-T-E-E-L-E.  And to get to the crux of the main question, your

17   Honor, about whether it's an emergency motion, it is.  We

18   actually -- to help illustrate the matter, we've actually

19   conducted quite a bit of forensic work over the last three

20   days.  That's one of the reasons that my client flew up here.

21             And since Friday, at 11:00 a.m., when we were going to

22   initially have this hearing, until now, there's been 1495

23   hackers that have reentered despite my client's best efforts

24   and hacked into the system, including six hackers that are

25   actually ComCast and AT&T subscribers.  One of them downloaded

AA-42

1  almost 2 gigabytes worth of data before he was caught and shut

2  out.

3         My client literally no longer even operates his core

4  business.  His entire waking moment is trying to keep out these

5  hackers.  And they are repetitive hackers, these are the same

6  people over and over again.  It's not like there's new hackers

7  every day.  We need to get -- find out who these people are so

8  that we may proceed against them.

9         What we are asking for, although it is an emergency

10 basis and although it may be outside to some extent normal

11 channels, we are asking for very limited discovery.  We are

12 asking for people's identifying information as to who had a

13 certain IP address at a certain time, just their contact

14 information, so that we may proceed against them.  We are not

15 asking for their social security numbers or their financial

16 records or anything along normal discovery.

17        But quite simply, how can we go after people, we don't

18 know who they are.  They know that.  They know that we don't

19 know who they are.  They brag about it on the blogs, and they

20 send messages to me and my co-counselors and my client and so

21 on that we will never get them because they are hiding under

22 AT&T and ComCast.  So this has been an emergency since the day

23 we filed this action.

24        We have used the utmost urgency in all of our

25 pleadings.  We have won the five or six hearings that were held

1    at the state court level in Illinois, in this case.  It is true

2    that Justice Karmeier, over -- under the certain aspects of

3    Judge LaChien's discovery orders.  However, I want to make it

4    clear that Judge Karmeier did not dismiss the case.  He did not

5    do nearly what is alleged in the respondent brief, and I would

6    encourage your Honor to look at the -- I think it is three

7    sentences -- the order.  It merely stops certain things such as

8    requiring ISPs to provide a map and certain minor functionary

9    things.  Many of the initial directives of Judge LaChien

10   remained in force.

11            THE COURT:  Let me just stop you there, though.  You

12   told me your client is no longer in the business?

13            MR. STEELE:  No, I didn't say that.

14            THE COURT:  That's what you said.  You said your

15   client has been spending all his time protecting his equipment

16   from these assaults that he is out of business.

17            MR. STEELE:  Well, no.  What he has, obviously, people

18   working with him.  But what I'm saying is, he spends a grossly

19   disproportionate amount of his time.  Instead of worrying about

20   his core business, what he does all the time now is work to

21   hire people and to bring in people and himself, because he is a

22   computer engineer, to try to stop the water from breaking over

23   the dam with these hacking attempts and so on.  He has to make

24   sure that his site is maintained.

25            For instance, one of the hackers, I believe it is a

1    ComCast subscriber, that was a denied services attack on his

2    network and he was down for almost an entire day.  So,

3    obviously, he can't focus on his business, and besides the

4    obvious fact that revenues -- and I think we mentioned this in

5    the preview.  Revenues are down over 60 percent since we've

6    just started this litigation, and he's obviously here to

7    proffer such statements and such testimony.

8         But the key here is, I'm very familiar with opposing

9    counsel's pleadings and, obviously, I've been in court with

10   opposing counsel in many different cases, but I think it is

11   unfair to characterize our type of litigation as not being

12   successful.  Right now, at the Illinois state level, we have

13   several cases that are large cases going on without even a

14   remotest sort of delay or the judge does not disagree with us

15   in any of our matters.

16        As far as the federal court, which I think is much

17   more relevant dealing with discovery because, obviously, we are

18   in federal court now.  The important thing to remember is that

19   we have well over, the last time I checked -- please don't hold

20   me to the exact number -- but well over 80 cases right now

21   going on in the Northern District of Illinois, and I don't

22   believe any currently in the Southern District.  But all these

23   cases are proceeding fine.  I think there is some inference in

24   here about some of the cherry-picking.

25             *THE COURT:*  I don't think the problem -- we're not

1    talking about a disposition of the lawsuit here today.  What we

2    are talking about today is whether the Court sets aside the

3    general, orderly progression of the federal discovery practice.

4            Certainly, as the case goes forward, judges are going

5    to have to very carefully analyze what is being asked and weigh

6    that against the interest of some of the parties involved.

7            Now, we're not a complete stranger to these cases.

8    You can get IP addresses, but what you might find is you might

9    have some 14-year-old kid that wants to get on mom's computer

10   and download porn.  I mean, that's what your client is selling.

11   And you know the courts not -- most courts wouldn't be of

12   any -- at least not any court that has ever had a 14-year-old

13   boy.  I don't know about girls.  But it wouldn't be too much of

14   a mind to fine mom and dad because the 14-year-old kid got on

15   the computer and got titillated watching some private porn

16   club.  So it is a very, very careful balance that has to be

17   reached here before we proceed.

18           Mr. Bozarth, are you going to speak for the other

19   side?

20           MR. BOZARTH:  Yes, your Honor.

21           THE COURT:  Tell me what you think about this.

22           MR. BOZARTH:  Yes, your Honor.  I don't want to get

23   too much into the merits because, frankly, we're working on a

24   12(b)(6) motion right now.  And, if anything, I think that's

25   the plaintiff's emergency because this case doesn't survive a

1    12(b)(6) motion.  There is no emergency here that meets the

2    requirements that your Honor has to look at to throw out all of

3    the structure and form of the civil procedure rules in order to

4    allow this extreme measure of extraordinary discovery.

5        What we have is clearly improper discovery that

6    they're seeking, and I can address that in a little bit.  But

7    when you look at the standards that your Honor has to look at,

8    there has to be a need for the expedited discovery; not a need

9    for the discovery, but for it to be expedited.  And that has to

10   be shown through good cause, and it has to be balanced against

11   the detriment to the other litigants involved, namely, the

12   defendants who would be providing it here.

13       The rules are put in place for a reason so that the

14   orderly process can take effect.  And if the case has no merit,

15   which we want to challenge, then we aren't spending the money

16   to go ahead and divulge this information.

17       We believe that the discovery sought of these 6600 or

18   so IP addresses that are not named in this complaint, that we

19   believe there is no intention to bring them in the complaint,

20   that this is to harvest information so that they can then go

21   and try to obtain settlements from that mother or father of the

22   14-year-old boy that your Honor spoke of earlier.

23       The problem is that these are IP addresses from all

24   over the country.  So when they receive a letter that says pay

25   us $3,000 to make this case go away, you have to decide whether

1   you are going to hire yourself a lawyer and fly to the Southern

2   District of Illinois and sit in front of Judge Murphy and

3   defend yourself and which one is more economically feasible.

4          So we want to get to that, your Honor, but the

5   important thing is, it wasn't Justice Karmeier who threw this

6   case out.  It was the Illinois Supreme Court.  It was -- the

7   order is clear.  It was the entire Illinois Supreme Court.  It

8   was not a one-judge order, and there was no dissent to that.

9   So they may not like it, but to turn around and serve the exact

10  same discovery or request from this Court the exact same

11  discovery, we believe is improper.

12          *THE COURT:*  Well, in short, what you are saying to me

13  is that there's no emergency here.

14          *MR. BOZARTH:*  There is no emergency.

15          *THE COURT:*  That's -- we argue about -- so what is the

16  emergency?

17          *MR. STEELE:*  Well, the emergency is that my client is

18  literally under attack on a minute-by-minute basis.  As we sit

19  here today, this very minute, hundreds or thousands of hackers

20  are literally targeting our client, including many, as we are

21  prepared to prove today, that are clients or subscribers of

22  AT&T and ComCast.

23          Now, unlike almost all of the other ISPs, these two

24  large ISPs have decided for their own reasons not to comply and

25  to raise these roadblocks, and never-ending in every case.  And

1    I understand we are not getting to the cases yet.  But what's

2    important to understand is, while the ISP are making lots of

3    monies from the subscriber payments and while the subscribers

4    are doing what they want to do, my client is -- literally, it's

5    like he is hiding behind a wall.  There's strangers throwing

6    bombs at him, and says, I want to know who those people are.  I

7    want to identify them so I can go after them.

8          And to be able to say, No, no, you don't get their

9    identity.  You can just survive for another month or two,

10   hopefully.  The problem is, is that my client spends more money

11   on a net basis each month now fighting these people than he is

12   making, at least for the last month or two, so there is --

13   there is an emergency.  And what we are asking for is not some

14   injunctive relief ordering AT&T to change its business

15   practices.  This is no -- as Judge Howell made very clear

16   several times, there is no undue burden here whatsoever on the

17   ISPs, and they have admitted to Judge LaChien in the early

18   state court action that they have all this information sitting

19   on someone's desk.  I believe his name is Mr. Cadenhead, but

20   don't hold me to that.  Sitting on a desk.  And they're

21   prepared, quote/unquote, to mail it tomorrow if ordered to do

22   so.

23         *THE COURT:*  Now, do you think that if the Court were

24   to order this discovery today that these attacks would stop?

25         *MR. STEELE:*  I think it would greatly, greatly

AA-49

1   decrease and here's why.  Two things.  One is, first of all,

2   some of these hackers aren't aware of this litigation.  There

3   is no reason to presume that all these people are magically

4   connected to ECF and know everything that's going on.  When

5   they receive a letter from our firm saying, hey, we just caught

6   you.  We believe we caught the subscriber of the account

7   associated with this person downloading this exact movie.  My

8   experience has been there is a rapid, very rapid decrease in

9   the amount of hacking because it is almost, oh, shoot, I got

10  caught.  So, yes, I do believe there is going to be a huge

11  decrease, and I can bear that out as an officer of the court

12  with several other clients I have that had the exact same thing

13  happening.

14          In fact, I can tell you that I have a client,

15  Millennium TGA, who when we started this process and we got

16  discovery on a large case, all the sites that you get these

17  passwords from and all put up a warning, do not take this guy's

18  passwords, he is getting sued.  He is just suing everyone

19  that's involved in this case.  So, yeah, the word gets out real

20  quick amongst the hardcore hacking community, and it also puts

21  them on notice.  I mean, they could be actually destroying

22  information, spoliation of evidence, because they didn't even

23  know about the case.  And there are some that do know about the

24  case.  And the minute they realize that their gig is up and

25  they can't hide anymore, you know, they are going to make

1    certain changes.

2         But, also, we need to get this information as part of

3    our discovery process.  I know it's not -- that doesn't make it

4    an emergency, the nature of it, but to some extent it does.

5    Because if we know who's doing it, we can reach out and say,

6    one, stop.  You are --

7         THE COURT:  Well, you are never going to know who is

8    doing it.  You are going to know which computer it comes from.

9         MR. STEELE:  Right.

10        THE COURT:  That's a different issue.

11        MR. STEELE:  I agree.

12        THE COURT:  Wouldn't the better solution to this be,

13   and I'm looking down the road here.  Mr. Bozarth is telling me

14   I'm not going to have to fool with this case too long.  He will

15   hit it with a big left hook, and it will go.  Maybe.  But isn't

16   a better solution is that you give -- you would -- some judge

17   would say, well, maybe you should give the Internet providers

18   the IP addresses you have and pay them to notify these people

19   to quit hacking your system.

20        MR. STEELE:  Well, that's part of our discovery

21   request, and that is to -- I'm sorry.  One of the items in our

22   emergency motion is that they be ordered to notify all of their

23   subscribers with --

24        THE COURT:  I'm just talking on as a solution on this

25   thing.  So you would say give them this information, and then

1    they would notify those computers, say, hey, somebody here has

2    been doing this.

3    　　　　MR. STEELE:  Right.  And we do believe that's

4    important, but we also have been down this road before.  And

5    Judge LaChien ordered AT&T specifically, four different

6    hearings, four different orders, to do it, and they didn't do

7    it.

8    　　　　THE COURT:  I'm just asking.

9    　　　　MR. STEELE:  Well, I think -- and I understand, Judge.

10   And just for a moment, to the idea of IP addresses and the

11   hacker's right.  It is like we see the license plate of the

12   getaway car.  Now, it may not have been the car owner, but my

13   experience is and my office's experience is, that it may not be

14   the owner but it is -- certainly almost every time it is, oh,

15   let me guess, you have an 18-year-old son in the basement kind

16   of thing.  And granted, sometimes, as Judge Howell said,

17   sometimes it won't lead to the evidence of a hacker -- we are

18   not saying that every single IP address is a hacker.

19   　　　　In fact, in a similar case in Cook County in federal

20   -- I'm sorry -- Northern District of Illinois, every single IP

21   address was the same hacker.  He was so prolific he had 27

22   different IP addresses.  There could -- obviously, there are

23   not the exact number of hackers for the IPs.  In fact, we

24   expect there to be much fewer hackers than the number of IPs.

25   But they lead us there, and they begin our discovery process.

1    And the persons -- every day that goes by, more and more people

2    move.  More and more people go, I don't want to -- you know,

3    I'll just jettison this computer because I'm nervous what the

4    information

5              *THE COURT:*  What happens in the case like this, just a

6    nonpayment of the use?

7              *MR. STEELE:*  Well, no, no.  What happens with these

8    people when they get this data is that they do many -- I'll

9    give you an example because, obviously, I don't want to take up

10   the Court's whole afternoon.  But for instance, one person that

11   we caught in this exact case basically site-ripped the entire

12   Web site of my client, set up a competing commercial site with

13   a similar name, and collected money so that these people could

14   come to his site.  And most of them didn't even realize that

15   they were going to a fake site.

16             Now, someone like that, you know, it's important,

17   because this is a direct hit to my client, who literally, as I

18   mentioned, is ready to testify he didn't make any money the

19   last two months and he blames the approximately 60 percent

20   decrease in gross revenue from November on this group of

21   hackers that are literally targeting him.  I think that if down

22   the road we are not asking to put our case on now, we are not

23   trying to make an emergency motion into a quick trial on the

24   merits.

25             All we're saying is -- well, a couple of things we

1    want.  One is, we want to get that notice out to the people

2    because that puts them on constructive notice also so that

3    after that notice they throw away their computer or try to

4    hide, which a lot of them do, then we have that basis.

5         Secondly, we need to know who it is so that we can

6    begin our discovery because we can't properly argue the merits

7    of this case without at least some initial discovery.  Knowing

8    who it is that's in a conspiracy when one defendant knows who

9    it is doesn't seem to be that much to ask for.  I'm sure most

10   bank robbers who were caught wouldn't want to have to give up

11   their conspirators, but that's not how the system works.  You

12   have got to give up that information.  And then if it is

13   urgent, if it is something that we can stop right away.

14        And then the third thing we are asking for, to find

15   out who it is exactly that these counsels are representing.

16   They've said they represent an unknown corporate counsel.  We

17   don't know who they represent.  We are asking that they

18   identify the corporate counsel in the emergency or corporate.

19        *THE COURT:*  What are you talking about?

20        *MR. STEELE:*  We are asking that counsel identify the

21   corporate representative in AT&T and ComCast that has made the

22   decision --

23        *THE COURT:*  Oh, okay.  I see.

24        Here's the way I see this case.  The -- if there is a

25   case here at the bottom of all this, it's a case for damages.

1    You have an adequate remedy at law.  Properly understood, what

2    you are asking me to do here today is grant what is at the

3    bottom injunctive relief, to make somebody do something that

4    they would otherwise not have to do to protect this business.

5    Well, that's the same problem that every business in the world

6    has.  And for as long as we've had a common law, we say, if you

7    have got an adequate remedy at law, you have got one.

8             Now, there's no evidence that's going to be destroyed.

9    I'll be honest about this.  I'm skeptical about how this case

10   could ever be put on, but my feet are not set in stone on it.

11   I've seen some cases that didn't look too hot at the start that

12   got better with time.  This may be one of those cases.  But you

13   are going to have to go through the regular discovery route

14   just like everyone else, and then some judge or some magistrate

15   will have to sit down and very carefully tailor this thing.

16            I don't foresee a situation where the Southern

17   District of Illinois is going to be pulling in cases from all

18   over the United States.  I'm in St. Clair County, and in the

19   Southern District of Illinois, we've got 38 counties.  And

20   that's -- that provides us with about all we can take care of

21   as it is.  Motion denied.  Have a good day.

22            Court's in recess.

23

24                          -oOo-

25

AA-55

1                           REPORTER'S CERTIFICATE

2          I, Molly N. Clayton, RPR, FCRR, Official Court Reporter

3     for the U.S. District Court, Southern District of Illinois, do

4     hereby certify that I reported with mechanical stenography the

5     proceedings contained in pages 1 - 18; and that the same is a

6     full, true, correct and complete transcript from the record of

7     proceedings in the above-entitled matter.

8

              DATED this 30th day of August, 2012.

9

10                                    *Molly Clayton, RPR, FCRR*

11                                    _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Case Number:   3:12-cv-00889-WDS-SCW |
| ANTHONY SMITH, ET AL. | ) | |
| *Defendant(s)* | ) | |

## MOTION FOR PRO HAC VICE ADMISSION

Pursuant to Local Rule 83.1(b), the undersigned attorney moves for admission pro hac vice

to the United States District Court for the Southern District of Illinois in order to appear as counsel

of record in this case on behalf of  Plaintiff Lightspeed Media Corporation                              .

In support of this motion, I state:

1.      I am an attorney licensed to practice law and a member in good standing in the

State(s) of  Minnesota                                      . The state and federal bar numbers issued

to me are:  0387795                                      .

2.      I am familiar with the law, facts, and procedures relating to the subject matter of this

litigation.

Accordingly, I ask to be admitted pro hac vice before this court.


Signed on: Aug 20, 2012                          _____
                Date                                        Signature of Movant

40 South 7th Street                               _____
        Street Address                                      Paul Hansmeier
                                                            Printed Name

Minneapolis, MN 55402
        City, State, Zip


AA-57

# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

| | | |
|---|---|---|
| Lightspeed Media Corporation | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Case Number:   3:12-cv-00889-GPM-SCW |
| Anthony Smith, et al. | ) | |
| *Defendant(s)* | ) | |

## <u>ENTRY OF APPEARANCE</u>

To the Clerk of Court and all parties of record:

I hereby enter my appearance as counsel for Plaintiff Lightspeed Media

Corporation.

DATED:  August 20, 2012

/s/John Steele
Signature

John Steele
Name

Prenda law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Address

(312) 880-9160
Phone Number

(312) 893-5677
Fax Number

Rev.  2/11

AA-58

# EXHIBIT L

**READ AT ONCE**

**NOTICE REGARDING**
**ALLEGED HACKING ACTIVITY**
**FROM YOUR INTERNET ACCOUNT**

A legal document called a complaint has been filed in a lawsuit that is currently pending before the U.S. District Court for the Southern District of Illinois. The allegations in the Complaint include allegations that your Internet account was associated with hacking activity with respect to websites owned by the Plaintiff, Lightspeed Media Corporation.

The Plaintiff does not know the actual names or addresses of these people, but only the Internet Protocol address ("IP address") of the computer associated with the allegedly illegal activity. The Plaintiff has sought leave to issue subpoenas to various Internet Service Providers to determine the identity of the subscribers of these IP addresses.

If you are receiving this notice, that means the Plaintiff has asked your Internet Service Provider to distribute this notice and is demanding that you cease and desist from any hacking activity that you may be engaged in. Further, Plaintiff has demanded that you take reasonable steps to secure your Internet connection against any hacking activities and preserve all evidence. If you fail to preserve evidence Plaintiff might amend its complaint to add a "spoliation of evidence" claim against you.

This is a civil lawsuit, not a criminal case. You have not been charged with any crime. If the Plaintiff receives your identification information from your Internet Service Provider, you may be added as a named defendant to its lawsuit.

This notice is intended to inform you of some of your rights and options. It does not provide legal advice. If you would like legal advice, you should consult an attorney. To help you find a lawyer, the American Bar Association's "Consumers' Guide to Legal Help" can be found on the Internet at http://apps.americanbar.org/legalservices/findlegalhelp/home.cfm.

If you are interested in discussing this matter with the Plaintiff's attorneys, you may contact them by telephone at (312) 880-9160, by fax at (312) 893-5677 or by email at info@wefightpiracy.com. Please understand that these lawyers represent the company that has requested your identifying information in connection with the lawsuit and may have interests adverse to yours. You should be aware that if you contact them they may learn your identity, and that anything you say to them can later be used against you in court.

You should not call the Court.

AA-60

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LIGHTSPEED MEDIA CORPORATION,    )
    )      No.   3:12-cv-00889-WDS-SCW
        Plaintiff,    )
   v.    )
    )
ANTHONY SMITH,    )
SBC INTERNET SERVICES, INC., d/b/a    )
AT&T INTERNET SERVICES;    )
AT&T CORPORATE REPRESENTATIVE #1;    )
COMCAST CABLE COMMUNICATIONS,    )
LLC., and COMCAST CORPORATE    )
REPRESENTATIVE #1    )
    )
    )
        Defendants.    )
    )
    )

## DECLARATION OF STEVE JONES IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO ORDER DEFENDANTS, AT&T AND COMCAST TO PRODUCE LIMITED DISCOVERY PRIOR TO THE RULE 26(f) CONFERENCE

I, Steve Jones, declare under penalty of perjury as true and correct that:

    1.    I am of legal age, under no legal disability and make this declaration based upon my personal knowledge of the facts.

    2.    I am the Chief Executive Officer, operator and founder of Lightspeed Media Corporation ("Lightspeed").

    3.    Lightspeed's business operates by providing subscription-based website content to its paying members. The integrity of the business depends on preventing unauthorized access to the members-only areas of its websites.

    4.    In order to prevent unauthorized access, Lightspeed deploys an anti-hacking system called ProxyPass. This anti-hacking system is effective, but cannot prevent every instance of hacking and unauthorized access. As a result, Lightspeed's websites are repeatedly hacked and the hackers gain unauthorized access to members-only areas of its websites.

AA-62

5.       Through monitoring technology, Lightspeed is able to identify individuals that hack into its websites by their Internet Protocol ("IP") addresses. The Internet Service Providers ("ISPs") that provided these IP addresses to their subscribers are the only entities that can provide Lightspeed with the hackers' true identities. Certain ISPs, such as AT&T and Comcast, have been unwilling to divulge the hacker's identities. Indeed, they have numerous attempts to obstruct Lightspeed in its attempts to ascertain the hacker's identities. They have also been unwilling to help lessen the frequency of the criminal actions of their subscribers against Lightspeed. The hackers continue to be provided with Internet access and AT&T and Comcast continue to be provided with subscription payments.

6.       Not every ISP has been obstructionist. Most have provided the identifying information of the subscribers that hacked Lightspeed's websites. Lightspeed has resolved its claims against many of these hackers, but it is also currently involved in litigation with several others of these hackers.

7.       Lightspeed's litigation has reduced the number of hackings of its websites, but without the identities of all the hackers, the hackings continue at an epidemic level. In the past two months Lightspeed's websites have been targeted by 9,955 unique hackers worldwide. These hackers have attempted to breach Lightspeed's systems 78,298 times.

8.       Because AT&T and Comcast refuse to provide Lightspeed with the identities of the hackers, the hackers know they are effectively immune from liability and have become emboldened in their criminality. The hackers have permanently destroyed Lightspeed's computer systems. The hackers have committed identity theft against Lightspeed and Plaintiff's counsel. The hackers have committed bank fraud against my family. The hackers have even attempted to incite fellow hackers to murder me.

AA-63

9.      AT&T and Comcast maintain subscriber information for only a specific period of time. Each day that passes reduces Lightspeed's ability to prove its case against the hackers and AT&T and Comcast.

10.      AT&T and Comcast have indicated that they have already gathered the identifying information of the hackers and are preserving that information until the litigation finishes. AT&T and Comcast have not provided notice to their subscribers that Plaintiff is seeking this information, and they have not provided this information to Plaintiff.

11.      Under penalties of perjury as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believe the same to be true.

Steve Jones

Steve Jones

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | No.    3:12-cv-00889-WDS-SCW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ANTHONY SMITH, | ) | |
| SBC INTERNET SERVICES, INC., d/b/a | ) | |
| AT&T INTERNET SERVICES; | ) | |
| AT&T CORPORATE REPRESENTATIVE #1; | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | |
| LLC., and COMCAST CORPORATE | ) | |
| REPRESENTATIVE #1 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**EMERGENCY MOTION TO ORDER DEFENDANTS, AT&T AND COMCAST TO
PRODUCE LIMITED DISCOVERY PRIOR TO THE RULE 26(f) CONFERENCE**

Plaintiff, LIGHTSPEED MEDIA CORPORATION, by and through its undersigned counsel, as and for its Emergency Motion to Order Defendants, SBC INTERNET SERVICES, INC., d/b/a AT&T Internet Services, Ltd. ("AT&T") and COMCAST CABLE COMMUNICATIONS LLC ("Comcast"), to produce limited discovery prior to the Rule 26(f) conference, states as follows:

### INTRODUCTION

Plaintiff Lightspeed Media Corporation ("Lightspeed") is a small business that owns and operates subscription-based websites. (*See* Declaration of Steve Jones [hereinafter "Jones Decl."] ¶ 3, attached hereto as Exhibit A.) The integrity of its business depends on preventing unauthorized access to its members-only areas. (*Id.*) In support of this mission, Lightspeed deploys industry-leading anti-hacking systems, namely ProxyPass. (*Id.* ¶ 4.) Yet, no software can

anticipate and protect against every emerging hacking tactic.[1] Lightspeed's websites are heavily targeted by hackers, who are actively hacking into Lightspeed's sites at this very moment. (*Id.*)

The only entities that know the hackers' identities are their Internet Service Providers, AT&T and Comcast ("the Conspiring ISPs"). (*Id.* ¶ 5.) Yet, the Conspiring ISPs are entirely unwilling to divulge the hackers' identities. (*Id.*) They are not even willing to lessen the frequency of the criminal actions that their customers are currently perpetrating against Lightspeed. (*Id.*) Instead, the Conspiring ISPs are providing these criminals with unfettered Internet access—so long, of course, as the criminals continue making subscription payments to the Conspiring ISP's. (*Id.*)

On December 2011, Lightspeed initiated litigation in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, against one of the hacker group's leaders. Compl., *Lightspeed Media Corporation v. John Doe*, No. 11-L-683 (Ill. Cir. Ct. Dec. 14, 2011), attached hereto as Exhibit C. In that action, Lightspeed applied for and received leave from the court to ascertain the hackers' identities. Order, *Lightspeed*, No. 11-L-683 (Ill. Cir. Ct. Dec. 16, 2011), attached hereto as Exhibit D. Among the ISPs that were served with subpoenas were the Conspiring ISPs. At the time they were served with subpoenas, the Conspiring ISPs were merely third-party custodians of records.

---

[1] *See* Emil Protalinski, *Richard Clarke: China has Hacked Every Major US Company*, Zero Day, March 27, 2012, *available at* http://www.zdnet.com/blog/security/richard-clarke-china-has-hacked-every-major-us-company/11125 (last checked August 16, 2012) (explaining that even high tech, multi-million-dollar corporations cannot prevent hacking from occurring.); Glenn Chapman, *Cyber Defenders Urged to go on the Offensive*, Yahoo! News, July 26, 2012, available at http://news.yahoo.com/cyber-defenders-urged-offense-140023880.html (last checked August 16, 2012) (Former FBI cyber crime unit chief, Shawn Henry, explained that a proactive, instead of simply a reactive, approach needed to be taken to reduce and prevent hacking and other cyber crimes. Black Hat founder Jeff Moss added "I can't print money; I can't raise an army, but I can hire lawyers and they are almost as good. One way to fight the enemy is you just sue them.")

AA-66

Instead of complying with Lightspeed's subpoenas—and thus conforming to the behavior of the majority of the ISPs—the Conspiring ISPs made a business decision to adopt an obstructionist stance. (Jones Decl. ¶ 5.) Their motive was financial. (*Id.*) As Chief Justice Roberts has recognized, major ISPs profit mightily from high-speed Internet subscriptions. *See TECHNOLOGY; In Court, Verizon Challenges Music Industry's Subpoenas*, N.Y. Times, Sept. 17, 2003 (stating that Internet Service Providers such as AT&T and Comcast "make a lot of money off of piracy . . . People engaged in that activity use the more expensive services that [ISPs] offer."). The information provided by the majority of the ISPs allowed Plaintiff's agents to begin unraveling the conspiracy and decrease instances of hacking. (Jones Decl. ¶ 6.) While many of the identified hackers acknowledged their role and expressed surprise that their identities were subject to discovery, others chose to fight Plaintiff's claims. (*Id.*) Plaintiff is currently litigating its claims against dozens of the hackers that were identified in the original action. (*Id.*)

The Conspiring ISPs went so far at the Illinois Circuit Court level as to raise defenses on behalf of their subscribers arguing, bizarrely, that joinder of the (single) defendant was improper and that the Illinois Circuit Court lacked personal jurisdiction over non-resident members of the hacking conspiracy. Motion to Quash and for Protective Order, *Lightspeed*, No. 11-L-683 (Ill. Cir. Ct. Mar. 19, 2012), attached hereto as Exhibit E. The Circuit Court held that these arguments had no merit, particularly when raised by the conspiring ISPs on behalf of their subscribers. Order Denying Motion to Quash and for Protective Order, *Lightspeed*, No. 11-L-683 (Ill. Cir. Ct. Apr. 12, 2012), attached hereto as Exhibit F. Other courts, including in a recent authoritative opinion by the Hon. Judge Beryl A. Howell of the U.S. District Court for the District of

AA-67

Columbia, have reached similar conclusions. *AF Holdings LLC v. Does 1-1,058*, No. 12-00048 (D.D.C. Aug. 6, 2012), ECF No. 46, attached hereto as Exhibit B.

In an effort to further delay disclosing their subscribers' identities, the Conspiring ISPs asked the Circuit Court to stay the case so they could certify their arguments for appeal. Motion to Stay, *Lightspeed*, No. 11-L-683 (Ill. Cir. Ct. Apr. 25, 2012), attached hereto as Exhibit G. This request was rejected. Order, *Lightspeed*, No. 11-L-683 (Ill. Cir. Ct. May 21, 2012), attached hereto as Exhibit H. Finally, the Conspiring ISPs submitted a motion for a supervisory order to the Illinois Supreme Court. Motion for Supervisory Order, *AT&T Internet Services, et al. v. Lightspeed Media Corporation*, No. 114334 (Ill. June 12, 2012), attached hereto as Exhibit I. This motion was granted, but the relief granted was limited to reversing an administrative order and ordering certain subpoenas quashed as issued. Order, *AT&T Internet Services*, No. 114334 (Ill. June 27, 2012), attached hereto as Exhibit J. The supervisory order did not dismiss the case, vacate the Circuit Court's order granting leave to issue subscriber identification subpoenas or otherwise hamper Plaintiff's case. *Id.*

In light of the supervisory order, Lightspeed amended its complaint to name the Conspiring ISPs as defendants and name the John Doe defendant. First Amended Compl., *Lightspeed*, No. 11-L-683 (Ill. Cir. Ct. Aug. 3, 2012), attached hereto as Exhibit K. Lightspeed seeks damages against the Conspiring ISPs for the harm associated with the criminal acts of their subscribers after the date on which the Conspiring ISPs were on actual notice of the acts alleged of. *Id.* In the voluminous filings the Conspiring ISPs made at the Circuit Court level, the Conspiring ISPs have never denied that their subscribers were engaging in systematic criminal activity against Lightspeed.

AA-68

Lightspeed brings this motion on an emergency basis because Lightspeed's business is at a breaking point. In the past two months Lightspeed's systems have been targeted by 9,955 hackers worldwide who have attempted to breach Lightspeed's systems 78,298 times. (Jones Decl. ¶ 8.) The efforts of the Conspiring ISPs have emboldened the hackers, who now believe that they have complete impunity to commit criminal acts against Lightspeed. (*Id.*) The Conspiring ISPs subscribers have permanently destroyed Lightspeed's computer systems, engaged in identity theft against Lightspeed and Plaintiff's counsel, attempted to incite fellow hackers to murder Mr. Jones and even committed bank fraud against Mr. Jones' family. Furthermore, the Conspiring ISPs' aiding and abetting has prevented their criminal subscribers from being put on notice of the pending litigation, and thus their evidence preservation obligations. (*Id.*) As the Conspiring ISPs know, as each day passes Lightspeed's ability to prove its case against the Conspiring ISPs is dramatically lessened. (Jones Decl. ¶ 9.) The Conspiring ISPs' aiding and abetting of their subscribers' criminal acts has gone too far. Plaintiff seeks four forms of emergency relief.

First, Lightspeed requests that this Court order the Conspiring ISPs to immediately transmit a copy of the attached cease and desist notice to the subscribers listed on Exhibit A to the original complaint. *See* Notice, attached hereto as Exhibit L. This basic step will put the Conspiring ISPs' subscribers on notice that they cannot continue to commit criminal acts against Lightspeed with impunity. The Conspiring ISPs have already identified their subscribers and send regular bills to them monthly. (Jones Decl. ¶ 10.) They cannot plausibly claim any burden from this step. In fact, this step will act to lessen the liability that the Conspiring ISPs continue to accrue on a daily basis by way of their aiding and abetting activities.

AA-69

Second, Lightspeed requests that the Court order the Conspiring ISPs to turn over the identifying information of these subscribers. The Conspiring ISPs have indicated that they have already compiled this information, and disclosing it to Lightspeed will not therefore not present any burden beyond the time associated with putting a stamp on an envelope. (Jones Decl. ¶ 10.)

Third, Lightspeed requests that the Court order the Conspiring ISPs to immediately preserve any and all evidence foreseeably relevant to Lightspeed's case. Both Conspiring ISPs have participated from the sidelines in this case until now, and taken advantage of the legal process without being subject to the obligations applicable to a Federal litigant. As such, the Conspiring ISPs may have already destroyed relevant evidence; Lightspeed requests that the Court order no further destruction.

Fourth, Lightspeed requests that the Conspiring ISPs immediately produce information sufficient to allow Lightspeed to determine the identity of, and then name and serve, the Corporate Representatives identified as Defendants in this lawsuit. Defendants are required to produce that information with their initial disclosures, but there is no reason to allow them to hold onto the information until those initial disclosures. The Conspiring ISPs have exclusive knowledge of the identities of their respective Corporate Representatives, and claims against them cannot proceed until Lightspeed learns who they are.

## ARGUMENT

The Court has broad authority under the Federal Rules of Civil Procedure to manage the discovery process. *See, e.g.*, Fed. R. Civ. P. 26(d); 16(b)(3)(B); 16(c)(2)(F). Rule 26(d)(1) explicitly permits a party to seek discovery from any source before the parties have conferred when authorized by a court order. Fed. R. Civ. P. 26(d)(1). The courts in this and other jurisdictions rely on considerations of need and fairness when deciding whether this early

AA-70

discovery is warranted. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000); *accord Lamar v. Hammel*, No. 08-02-MJR-CJP, 2008 WL 370697, at *3 (S.D. Ill. Feb. 11, 2008). Plaintiff has a need for expedited discovery because physical evidence of computer hacking will be destroyed with the passage of time; because hacking by the subscribers of the Conspiring ISPs is ongoing and continuous, necessitating immediate relief; and because this suit cannot proceed without this information. At the same time, Lightspeed's request does not offend traditional notions of fairness and practicality.

Rule 26(d) gives judges broad power to determine the timing and sequence of discovery. Fed. R. Civ. P. 26(d); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). The Federal Rules rely on the discretion of trial judges to tailor the scope, manner, and timing of discovery to the needs of the case and ensure the just, speedy, and inexpensive administration of justice. *See, e.g.*, Fed. R. Civ. P. 16(b)(3)(B); 16(c)(2)(F) (setting forth a trial court's power to manage discovery by modifying the timing and extent of discovery through scheduling and case management orders). Though this Circuit has not articulated a set test or criteria for deciding whether early discovery is warranted, courts in this Circuit in the past has elected to rely on considerations of need and fairness. *Merrill Lynch*, 194 F.R.D. at 623 ("Plaintiff must make . . . showing of the need for the expedited discovery. . . . Courts must also protect defendants from unfair expedited discovery."); *see also Vance v. Rumsfeld*, No. 06-C-6964, 2007 WL 4557812, at *3 (N.D. Ill. Dec. 21, 2007) (balancing "[p]laintiffs' need for information relevant to this litigation against the undeniable hurdles of gathering discovery in Iraq during wartime"); *accord Lamar*, 2008 WL 370697, at *3 ("This Court . . . will rely on

AA-71

considerations of need and fairness."); *IRC, LP v. McLean*, No. 09-189-JPG-CJP, 2009 WL 839043, at *2 (S.D. Ill. Mar. 31, 2009).

## I.   THE COURT SHOULD ORDER THE CONSPIRING ISPS TO SUBMIT THE ATTCHED CEASE AND DESIST NOTICE TO THEIR HACKER SUBSCRIBERS

Lightspeed requests that the Court order the Conspiring ISPs to immediately transmit the attached cease and desist notice to the subscribers identified in Lightspeed's initial complaint. The notice will serve at least three critical purposes. First, the notice will—for the first time—put the Conspiring ISPs' subscribers on notice of this litigation. The Conspiring ISPs have taken no identifiable action to put their subscribers on notice of this litigation. (Jones Decl. ¶ 10.) Their subscribers accordingly are not aware that they have to preserve case-critical electronically stored evidence. Second, the notice will instruct subscribers whose Internet accounts have been hijacked by unscrupulous third parties to take measures to secure their Internet accounts. Finally, and most importantly, the notice will cause significant numbers of the Conspiring ISPs' subscribers to actually cease and desist their criminal activity. Until now these subscribers believe they are untouchable and are acting with impunity. The notion that their identities are subject to being revealed will cause the hackers to reconsider the wisdom of committing criminal acts against Lightspeed.

Balanced against Lightspeed's extreme need for this action, the Conspiring ISPs have no plausible argument against providing this notice. First, this situation is of their own making. Issuing this notice would, in part, address the failure of the Conspiring ISPs to take any steps whatsoever to address and stop the widespread and ongoing hacking by their subscribers, and to give some assurance that relevant evidence is not destroyed. (Jones Decl. ¶ 5.) Second, the Conspiring ISPs have already compiled the subscriber information that will be required to

AA-72

transmit the notices. (*Id.* ¶ 10.) Third, the Conspiring ISPs regularly transmit notices to their subscribers in the ordinary course of business. Finally, if anything, transmitting the attached notice will serve to hedge the liability the Conspiring ISPs continue to accrue on an ongoing basis.

## II.   THE COURT SHOULD ORDER THE CONSPIRING ISPS TO DISCLOSE THE IDENTITIES OF THE HACKER SUBSCRIBERS

Lightspeed also respectfully requests that this Court direct the Conspiring ISPs to immediately produce to Lightspeed the identities of each and every subscriber of theirs whom Lightspeed has identified as a wrongdoer in this matter. Exs. To Compl., *Lightspeed*, No. 11-L-683 (Ill. Cir. Ct. Dec. 14, 2011), attached as Ex. C.

Because the hacking into and theft from Lightspeed's website is ongoing and continuous, Plaintiff needs to discover the identities of IP subscribers listed in the Complaint in order to take quick actions to prevent further irreparable harm. (Jones Decl. ¶ 7.) Without a way to contact those individuals, Plaintiff will continue to suffer ongoing, continuous injury due to their criminal conduct. (*Id.*) Counsel for the Conspiring ISPs both represented to the St. Clair County Court previously presiding over this matter that they had retrieved the identifying information for each of the IP addresses listed in the Complaint (Jones Decl. ¶ 10), which Lightspeed alleges were associated with individual who hacked into and stole from its site. (Ex. C.) The Conspiring ISPs do not have a reasonable basis to withhold that information from Plaintiff.

While Defendants previously indicated that they would preserve identifying information for their subscribers until this litigation terminates (Jones Decl. ¶ 10), there is no way for either the Plaintiff or this Court to monitor their compliance with those assurances. And there is no valid reason for the Defendants not to release the information immediately. Lightspeed has a clear and undeniable interest in taking any and all steps necessary to prevent criminal activity

9

AA-73

from continuing through the use of those IP addresses, including contacting their owners and demanding that they cease and desist from this activity. Furthermore, the Conspiring ISPs do not have a protectable interest that should excuse it from producing the names of its subscribers who used their accounts for criminal conduct against Lightspeed.

There can be no undue burden for the Conspiring ISPs to produce that information, because each has already assembled it, and all either Defendant has to do is forward it to the Plaintiff. (Jones Decl. ¶ 10.) And given the Defendants' admissions that they have already assembled the identifying information, they cannot claim now that producing it is an undue burden under Rule 45. As the U.S. District Court for the District of Columbia recently held in the recent landmark opinion regarding the subject, production of such information is not unduly burdensome in these circumstances. *AF Holdings*, No. 12-00048 (D.D.C. Aug. 6, 2012), ECF No. 46 at 18, attached as Ex. B (rejecting as baseless argument that production of information was overly burdensome after it was already compiled; holding that "[d]espite the fact that the Movant ISPs have already located the requested information, they urge the Court to quash the plaintiff's subpoenas because of misjoinder and lack of personal jurisdiction. This argument is erroneous.")

Lightspeed therefore respectfully requests that this Court direct the Conspiring ISPs to immediately produce to Lightspeed the identifying information for each and every one of their subscribers listed as co-conspirators in the initial complaint filed in this matter. Lightspeed is literally one stamp away from justice on this point.

AA-74

**III.    THE COURT SHOULD ORDER THE CONSPIRING ISPS TO PRESERVE OTHER POTENTIALLY RELEVANT EVIDENCE UNTIL AFTER TRIAL**

Both of the Conspiring ISPs interposed themselves in this litigation in a vast and concerted effort to prevent Lightspeed from obtaining information as to those subscribers who were guilty of criminal conduct against it. In doing so, they acted as *de facto* legal counsel for their hacker-subscribers, and have prevented Lightspeed from pursuing its valid claims.

Given the obstructionist and dilatory litigation tactics in which both Defendants have (until now) engaged, there is a very clear and immediate risk that discoverable information within their possession, custody and control when this litigation began in December 2011 no longer exists. There is a further risk that the Defendants, given their decision to protect and enable their subscribers' continued criminal activity from claims by Lightspeed, have discarded, and will continue to discard, evidence that is highly relevant to claims against them in the Amended Complaint. That evidence includes, without limitation, information such as communications (or lack of communication) between the Conspiring ISPs and their subscribers instructing the subscribers to discontinue hacking into Lightspeed's website; communications between the Conspiring ISPs regarding to concerted efforts that they have taken in order to stymie Lightspeed's claims; and communications between each Defendant and its respective employees relating to the decision not to comply with subpoenas served in this case.

Defendant clearly has an obligation to provide such evidence to Lightspeed through their initial disclosures in this case. However, given the extreme lengths to which the Conspiring ISPs have already gone in order to avoid complying with subpoenas and other court orders, and to interfere with any attempt on the part of Lightspeed to assert its claims, there is a clear need for the Court to intervene in order to assure that the Conspiring ISPs do not discard evidence

AA-75

relevant to Lightspeed's claims. Lightspeed therefore respectfully requests that this Court enter an order directing the Conspiring ISPs to preserve any and all evidence potentially relevant to this case, including without limitation any and all evidence relating to their communications with subscribers listed in the Complaint; communications between the Conspiring ISPs; and communications between each Defendant and its respective employees and agents regarding this case.

### IV.   THE COURT SHOULD ORDER THE CONSPIRING ISPS TO IMMEDIATELY PRODUCE INFORMATION NECESSARY TO IDENTIFY THE CORPORATE REPRESENTATIVE DEFENDANTS

This Court should also order the Conspiring ISPs to either identify, or produce to Lightspeed information sufficient for it to identify, the unnamed Corporate Representative of each entity who is a Defendant in this case, before the Rule 26(f) conference. The Corporate Representative for each entity is, among other thing, the individual ultimately responsible for the decision of each of the Conspiring ISPs to act as *de facto* legal counsel for their subscribers and to prevent Plaintiff from moving forward with its claims.

Courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002); *Living Scriptures*, 2010 WL 4687679, at *1 (granting motion for expedited discovery of Doe Defendants because "without such information this case cannot commence").

Here, the lawsuit cannot proceed against the Corporate Representative Defendants without first discovering their identities. Any delay on the part of Defendants in providing this information increases the chances that the individuals may terminate their employment from Defendants, which may make it substantially more difficult for Lightspeed to locate and serve

AA-76

them. Although the Conspiring ISPs, through the actions of those Representatives, acted to delay the litigation in this case for nearly nine (9) months, Lightspeed has no basis upon which to learn their identities. Lightspeed needs the Defendants to disclose the identities of the Corporate Representatives described in the Amended Complaint in order for the case against them to move forward. The Court should therefore enter an order at this time directing Defendants to disclose their identities, or to provide Lightspeed with sufficient information to allow it to determine their identities, because doing so will promote judicial economy and allow the case to move forward. Directing Defendants to disclose their Corporate Representatives at this also highly equitable; those Corporate Representatives, without having any of the responsibilities of actually being party litigants, have acted to stymie and delay Lightspeed's attempts to prevent continued theft from their subscribers.  Defendants should not be allowed the luxury of further delay, by waiting until after the Rule 26(f) conference, to identify the Corporate Representatives who are Defendants in this case.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Lightspeed respectfully requests that this Court (i) grant this Emergency Motion; (ii) order the Conspiring ISPs to provide the attached notice letter to each IP address owner of theirs listed in the original Complaint; (iii) order the Conspiring ISPs to disclose the identity of each and every such IP address owner order to Lightspeed; (iv) order the Conspiring ISPs to preserve  any and all evidence potentially relevant to Lightspeed's claims; and (v) order the Conspiring ISPs disclose the identities of their respective Corporate Representative named as a Defendant in this case; and (vi) grant any and all further relief that this Court deems to be reasonable and appropriate under the circumstances.

AA-77

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

DATED: August 16, 2012

By:    /s/ Paul Duffy
        Paul Duffy (Bar No. 6210496)
        Prenda Law Inc.
        161 N. Clark St., Suite 3200
        Chicago, IL 60601
        Telephone: (312) 880-9160
        Facsimile: (312) 893-5677
        E-mail: paduffy@wefightpiracy.com
        *Attorney for Plaintiff*

AA-78

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 16, 2012, all counsel of record who are

deemed to have consented to electronic service are being served a true and correct copy of the

foregoing document using the Court's CM/ECF system.


<u>/s/ Paul Duffy</u>
PAUL DUFFY

AA-79

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

LIGHTSPEED MEDIA CORPORATION,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
ANTHONY SMITH,　　　　　　　　　　)
SBC INTERNET SERVICES, INC., d/b/a　)
AT&T INTERNET SERVICES,　　　　　　)　　　Case No. 11-L-683
AT&T CORPORATE REPRESENTATIVE #1,　)
COMCAST CABLE COMMUNICATIONS,　　)
LLC and COMCAST CORPORATE　　　　)
REPRESENTATIVE #1,　　　　　　　　　)　　　Jury Trial Demanded
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　)
　　　　　　　　　　　　　　　　　　)

**FILED**
ST. CLAIR COUNTY
**AUG 0 3 2012**
_[signature]_
CIRCUIT CLERK

### FIRST AMENDED COMPLAINT

Plaintiff, Lightspeed Media Corporation, through its undersigned counsel, hereby files this First Amended Complaint requesting damages and injunctive relief, and alleges as follows:

### NATURE OF THE ACTION

1.　Plaintiff files this action against Defendant Anthony Smith for computer fraud and abuse, conversion, unjust enrichment, breach of contract, and related civil conspiracy claims. Defendant and Defendant's co-conspirators, whose names Plaintiff has repeatedly sought to ascertain during discovery, used one or more hacked passwords to gain unauthorized access to Plaintiff's websites and protected computer content and, upon information and belief, continues to do the same. Plaintiff seeks a permanent injunction, statutory or actual damages, award of costs and attorneys' fees, and other relief.

2.　Plaintiff files this action against Defendants AT&T and Comcast (collectively, the "ISPs"), and/or a corporate representative of each entity, for negligence, computer fraud and abuse, civil conspiracy, violations of the Illinois Consumer Fraud and Deceptive Practices Act



EXHIBIT
AA-80

and aiding and abetting. These ISPs, directly and through their respective corporate representatives, have, among other things, allowed their respective subscribers to repeatedly and persistently hack into and steal from Plaintiff's website; and, upon information and belief, failed to take reasonable action to prevent their subscribers from hacking into and stealing from Plaintiff's website; failed to warn their subscribers to cease and desist in such conduct; interfered with Plaintiff's efforts to identify and take action to prevent the subscribers' illegal and tortious activity; and, through a direct policy decisions, inaction or for other reasons, allowed the continued and pervasive criminal and tortious acts by certain of their subscribers against Plaintiff.

## THE PARTIES

3.     Plaintiff is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business located in Arizona.

4.     Defendant Anthony Smith's co-conspirators' actual names are unknown to Plaintiff. Instead, they are known to Plaintiff only by their Internet Protocol ("IP") addresses, which are numbers assigned to devices, such as computers, connected to the Internet. In the course of monitoring website access, Plaintiff's agents observed unauthorized access of Plaintiff's protected websites through the IP addresses listed on the Exhibits attached to the original Complaint.

5.     Defendant SBC Internet Services, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in Dallas, Texas. AT&T is an internet service provider ("ISP") that has, among other things, knowingly assisted, or negligently allowed, Defendant Smith's co-conspirators to engage in the widespread, persistent and continuing hacking into Plaintiff's protected website, and to misappropriate and

AA-81

disseminate content from Plaintiff's website. AT&T has opposed and interfered with all of Plaintiff's attempts to ascertain the identities of AT&T's subscribers who are involved in this widespread criminal activity, prevented Plaintiff from any available mechanism for obtaining damages and stopping the hacking, and acted as the *de facto* legal counsel for Defendant Smith's co-conspirators by asserting substantive claims and defenses to liability on their behalf in litigation here and throughout the Nation. AT&T has thus allowed the extensive criminal activity to continue, and it has profited, and continues to profit, from the illegal activity of the conspiracy, by continuing to seek monthly subscription fees from members of the conspiracy while sheltering and assisting continued civil and criminal wrongdoing.

6.     AT&T Corporate Representative 1 is the individual who, upon information and belief, is a director, officer or employee of AT&T with authority to direct AT&T to fail or refuse to comply with valid subpoenas served upon to AT&T seeking the identities of Defendant Smith's co-conspirators; to fail or refuse to prevent AT&T's subscribers from continued hacking of, and theft from, Plaintiff; to authorize AT&T to act as the *de facto* legal counsel to allow its subscribers to continue theft from Plaintiff; and to authorize AT&T's decision to fail or refuse to perform activities that would inhibit its subscribers from committing tortious and criminal acts against Plaintiff.

7.     Defendant Comcast Cable Communications, LLC. ("Comcast") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Philadelphia, Pennsylvania.  Comcast is an ISP that has, among other things, knowingly assisted, or negligently allowed, Defendant Smith's co-conspirators to engage in the widespread, persistent and continuing hacking into Plaintiff's protected website. Comcast has opposed and interfered with Plaintiff's attempts to ascertain the identities of

AA-82

Comcast's customers who are involved in this widespread criminal activity, prevented Plaintiff from seeking damages and stopping the hacking into its website, and acted as the *de facto* legal counsel for members of the conspiracy by asserting substantive claims and defenses to liability on their behalf in litigation here and throughout the Nation. Comcast has thus allowed the extensive theft to continue, and it has profited, and continues to profit, from the illegal activity of the conspiracy, by continuing to seek monthly subscription fees from members of the conspiracy while sheltering and assisting continued civil and criminal wrongdoing.

8.     Comcast Corporate Representative 1 is the individual who, upon information and belief, is a director, officer or employee of Comcast with authority to direct Comcast to fail or refuse to comply with valid subpoenas served upon to Comcast seeking the identity of Defendant Smith and his co-conspirators; to fail or refuse to prevent Comcast's subscribers from continued hacking of, and theft from, Plaintiff; to authorize Comcast to act as the *de facto* legal counsel to allow its subscribers to continue theft from Plaintiff; to authorize Comcast's decision to fail or refuse to comply with such subpoenas; and to authorize Comcast to take actions to limit its subscribers' criminal and civil wrongdoing.

## JURISDICTION AND VENUE

9.     Pursuant to 735 ILCS 5/2-209, this Court has personal jurisdiction over Defendant Smith because, upon information and belief, Defendant Smith resides in or committed the unlawful acts in St. Clair County, Illinois.

10.     This Court has personal jurisdiction over the other Defendants because each has participated in, or allowed, the commission of unlawful acts in St. Clair County, Illinois. This Court also has personal jurisdiction over the remaining Defendants under the doctrines of pendent and supplemental jurisdiction.

AA-83

11.     Venue in this county is proper pursuant to 735 ILCS 5/2-101, because, upon information and belief, Defendant Smith resides in St. Clair County, Illinois, and the actions giving rise to the causes of action alleged herein occurred, in whole or in part, in St. Clair County, Illinois.

## POTENTIAL JOINDER OF CO-CONSPIRATORS

12.     Plaintiff may elect, after learning additional facts, to seek leave of the Court to amend this complaint to include Defendant's co-conspirators as defendants in this action pursuant to 735 ILCS 5/2-405.

## BACKGROUND

13.     The Internet has made nearly unlimited amounts of information and data readily available to anyone who wants to access it.  Some of this information and data is private and available only to those who have lawful access to it.  Owners attempt to protect this private content through the use of password authentication systems.  Unfortunately, however, this does not ensure that content remains protected from unauthorized access.

14.     Hacking is the act of gaining access without legal authorization to a computer or computer system.  This is normally done through the use of special computer programming software.  This password cracking software repeatedly attempts to guess a password until the correct password is ascertained.  The software can attempt a great number of passwords in a short period of time, sometimes even a million per second, making this type of software very efficient at obtaining a password. Individuals that utilize this type of software are called hackers.[1]

---

[1] The technical definition of "hacker" is actually much broader and includes anyone who modifies a computer system to accomplish a goal—whether authorized or not (very similar to a computer programmer). A "cracker" is the technically correct definition of someone who gains unauthorized access to a computer. However, the common, popular definition of "hacking" is generally understood to be that of a "cracker." In this document any references to "hacker" or "hacking" will refer to their common definition of "cracker" or "cracking."

AA-84

Hackers employ various other means to gain unauthorized access to data such as identifying exploitable flaws in database codes.

15.     Once a password is obtained, the hacker has unauthorized access to the protected content as long as the password remains valid.   Sometimes a hacker will post the hacked password on a hacked password website, making it available to the members or visitors of that website.   The hacker may even charge individuals for use of the hacked password and make a profit off of the loss and harm he or she has caused to the website owner or users.   There are not necessarily any limits on how often or by how many people a password can be used, so a single hacked password can potentially allow unauthorized access to significant numbers of individuals.

## FACTUAL ALLEGATIONS REGARDING DEFENDANT SMITH
## AND HIS CO-CONSPIRATORS

16.     Plaintiff is the owner and operator of adult entertainment websites.   Plaintiff invests significant capital in maintaining and operating those websites.   Plaintiff makes the websites available only to those individuals who have been granted access to Plaintiff's website content (*i.e.,* paying members).   This access is given to members of the Plaintiff's websites who sign-up and pay a fee to access the content.   Access to this content is protected by a password assigned to each individual member.

17.     Defendant Smith and Defendant Smith's co-conspirators belong to a hacking community where hacked passwords are passed back and forth among the members. Members in this community work together to ensure that the members have access to normally inaccessible and unauthorized areas of Plaintiff's secured websites. The series of transactions in this case involved accessing, agreeing to share, sharing hacked passwords over the Internet and using the hacked passwords to access Plaintiff's protected websites and private computer content. Defendant Smith and his co-conspirators actively participated with one another in order to

AA-85

disseminate the hacked passwords, and intentionally engaged in a concerted action with one another to access the same websites and content.

18.     Defendant Smith and his co-conspirators gained unauthorized access to Plaintiff's protected websites.  They used hacked passwords to intentionally gain unauthorized access to the member's sections of Plaintiff's protected websites.  Through these hacked passwords Defendant Smith and his co-conspirators consumed Plaintiff's content as though they were paying members.   They downloaded Plaintiff's private computer content and disseminated that information to other unauthorized individuals.

19.     Since Defendant Smith and his co-conspirators accessed Plaintiff's protected websites through hacked passwords, they were not required to provide any identifying personal information, such as their true names, addresses, telephone numbers or email addresses. Defendant and his co-conspirators can only be identified by their IP addresses.

20.     Plaintiff retained Arcadia Data Security Consultants, LLC ("Arcadia") to identify IP addresses associated with hackers that use hacked passwords and the Internet to access Plaintiff's protected websites and private computer content.

21.     Arcadia used forensic software named Trader Hacker and Intruder Evidence Finder 2.0 (T.H.I.E.F.) to identify hacking, unauthorized access, and password sharing activity on Plaintiff's websites.  The individuals committing these unlawful activities are identified by their IP addresses as well as the dates and times they unlawfully accessed Plaintiff's websites.

22.     Once Defendant Smith and his co-conspirators' IP addresses and dates and times of unlawful access were ascertained, Arcadia used publicly available reverse-lookup databases on the Internet to determine what ISP issued the IP addresses.

AA-86

23.    In addition to logging Defendant Smith's IP address, Arcadia's software logged other important information into a uniform database, such as the specific websites that were unlawfully accessed and the files that were downloaded during that unauthorized access.

24.    Defendant was detected by the T.H.I.E.F. Security System gaining unauthorized access to Plaintiff's protected websites on November 24, 2011 at 01:09 (UTC). This date was the latest time the T.H.I.E.F. Security System detected Defendant's unauthorized access.

25.    Defendant was detected by the T.H.I.E.F. Security System accessing, without authorization, ten (10) of the Plaintiff's protected websites. Further, Defendant was detected downloading more than seventy-two (72) private computer files from these websites.

26.    A listing of the IP address, ISP, and date and time of one of unauthorized accesses of Defendant Smith and his co-conspirators is set forth in an Exhibit to the original Complaint. A declaration attesting to Arcadia's software is attached as an Exhibit to the original Complaint, a signed copy of which is on file with the Court in this matter.

## FACTUAL ALLEGATIONS AGAINST ISPs AND THEIR CORPORATE REPRESENTATIVES

27.    AT&T has never contested or disputed allegations that certain of its subscribers have hacked into, and stolen from, Plaintiff's website.

28.    Comcast has never contested or disputed allegations that certain of its subscribers have hacked into, and stolen from, Plaintiff's website.

29.    At the outset of this litigation, the ISPs and their Representatives were simply third-party custodians who were the sole holders of identifying information of their subscribers who have been hacking into and stealing from Plaintiff's website.  Plaintiff attempted, through the only means available to it, to obtain that identifying information through discovery.

AA-87

30.   The ISPs, upon information and belief, through the approval and authorization of the Corporate Representative of each entity, chose to interpose themselves in this litigation, interfere with the Court's Orders, evade subpoenas, and prevent and obstruct Plaintiff from learning the identities of those ISP subscribers hacking into and stealing from its website. Further, upon information and belief, the ISPs have not taken any actions to prevent their subscribers from committing criminal and tortious acts against Plaintiff even after being on actual notice of the criminal and tortious activity and having full control over the Internet accounts of their subscribers.

31.   A significant percentage of the alleged criminal and tortious actors are AT&T or Comcast subscribers. As such, the delay tactics and other interference on the part of the ISPs has prevented Plaintiff from learning the identities of a vast number of Defendant Smith's co-conspirators.

32.   Plaintiff requested, and this Court on or about December 16, 2011 granted, leave to serve discovery in order to learn the identities of Defendant Smith and his co-conspirators.

33.   In accordance with that Court Order, Plaintiff served subpoenas upon all of the internet service providers listed in Paragraph A of the Court Order, including AT&T and Comcast.

34.   Upon being served with the subpoenas, the ISPs sought to delay and derail this litigation, thereby shielding their subscribers from liability and allowing them to continue their unfettered hacking and theft from Plaintiff's website.

35.   ISPs ran interference for their paying customers, despite allegations certain of those customers were using their subscriptions to commit criminal acts.

36.    The ISPs have not provided the identity of hackers who are also their subscribers to Plaintiff.

37.    The ISPs instead filed several motions to extend the time in which to respond to the subpoenas.

38.    The ISPs, rather than responding, moved to quash the subpoenas.   The Court, after hearing extensive evidence and argument from the ISPs, entered orders on April 27 and May 21, 2012, in which it directed the ISPs, among other things, to produce subscriber information for the Court to review *in camera* before disclosing it to Plaintiff.

39.    Rather than comply with that order, the ISPs caused further delay by filing a petition with the Illinois Supreme Court under Supreme Court Rule 383, seeking a supervisory order to preclude the disclosure of subscriber information to the Court for *in camera* review. The Illinois Supreme Court on June 24, 2012 granted that petition and vacated the May 24, 2012 order.

40.    In seeking to quash the subpoenas, and in submitting the Rule 383 Petition, the ISPs made numerous arguments for which it had no standing, on behalf of its subscribers who have been identified as hackers.

41.    The ISPs, among other things, challenged on grounds only available to parties to litigation, such as lack of personal jurisdiction, improper joinder, challenges to the sufficiency of factual allegations in the Complaint under 735 ILCS 5/2-615, and other arguments that are available only to litigants to make.

42.    The ISPs also argued that the burden on their subscribers of producing identifying information in response to subpoenas served upon them was excessive.  The ISPs made this

AA-89

argument despite the fact that the subpoenas imposed no burden on the subscribers because the ISPs, and not subscribers, were the only ones required to take action.

43.    The ISPs chose to act as if they were parties to this litigation, and have obstructed any attempt by Plaintiff to stop the hacking into, and theft from, its website.

44.    Every action that the ISPs have taken in connection with this litigation has served to delay litigation and to prevent Plaintiff from preventing hacking.  Every action that the ISPs have taken in connection with this litigation has prevented Plaintiff from asserting its rights, preventing criminal activity against it, or obtaining any relief for harm caused to it.

45.    The ISPs did not and have not produced evidence suggesting that they have notified any of their subscribers to cease and desist the illegal hacking into, and theft from, Plaintiff's website.

46.    The ISPs did not and have not produced evidence suggesting that they have cancelled a single contract with a subscriber on the ground that Plaintiff has identified it as having stolen from its website.

47.    The ISPs did not and have not produced evidence suggesting that they have notified law enforcement officials that certain of their subscribers have engaged in criminal activity against Plaintiff.

48.    Upon information and belief, the ISPs have taken no reasonable action to prevent the massive level of hacking into, and theft from, Plaintiff's website, which continues to this day.

49.    The ISPs and their respective Corporate Representatives have thus enabled and sheltered the continued massive hacking into and theft from Plaintiff's website.

50.     The extent of the hacking that the ISPs continue to enable is demonstrated by the fact that between August 1 and December 6, 2011 alone, Plaintiff's software blocked well over 330,000 unauthorized sign-on attempts to its website (over 2,500 per day).

51.     The IP addresses listed in the Complaint represent less than two percent (2%) of the attempts to hack into Plaintiff's website.  In total, hackers illegally downloaded over 170,000 files, using more than 3.5 terbytes of total bandwith, from Plaintiff's website.

52.     Furthermore, upon information and belief, nearly twenty percent, or 1,805, of the group of subscribers that the ISPs seek to protect have attempted to hack into Plaintiff's website with a new, hacked user- or passcode, since this litigation began.   This amount continues to increase daily. Of those, at least seventy-five have each attempted to hack Plaintiff's website five or more times each since this action began.

### COUNT I – COMPUTER FRAUD AND ABUSE
### (All Defendants)

53.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

54.     Defendant Smith intentionally used one or more hacked passwords to gain unauthorized access to Plaintiff's protected websites and protected computer content.

55.     Once Defendant gained access to Plaintiff's websites, he downloaded Plaintiff's private computer content and disseminated that content to other unauthorized individuals.

56.     Defendants AT&T and Comcast, with the approval of the respective Corporate Representatives, failed and refused to take action to prevent hacking into, and theft from, Plaintiff's website.

57.     As a result of Defendants' actions, or failure to take appropriate actions, Plaintiff had to take remedial actions in order to prevent the rampant and ongoing unauthorized access to

AA-91

its protected websites and private computer content. Plaintiff retained Arcadia to identify Defendant Smith and other hackers that were gaining unauthorized access to Plaintiff's protected websites, so Plaintiff could this remedial legal action and prevent any further unauthorized access. The cost to Plaintiff for Arcadia to create the T.H.I.E.F. Security System to identify Defendant and other hackers was in excess of $250,000.

58.     The cost to Plaintiff for Arcadia to host and run the T.H.I.E.F. Security System is $500.00 per month. The T.H.I.E.F. Security System was used by Arcadia to detect the hacking and unauthorized access of Plaintiff's websites for eleven (11) months, from August of 2011 to July of 2012. The total cost to host and use the T.H.I.E.F. Security System for those eleven (11) months was $5,500.00.

59.     The minimum cost to gain lawful, authorized access to Plaintiff's websites is $39.95 for a single month of membership. The average membership to Plaintiff's website lasts 2 months. Members of the conspiracy have damaged Plaintiff in the amount of $519,350 in lost revenues by gaining, or allowing and failing to prevent, unauthorized access to Plaintiff's protected websites instead of authorized access.

60.     Defendants have thus damaged Plaintiff in the amount of at least $774,850 in economic damages for the remedial measures Plaintiff was forced to take to prevent further unauthorized access to its websites by Defendant Smith and other hackers.

61.     Defendants' actions constitute a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. A private right of action exists under the Act under 18 U.S.C. § 1030(g).

## COUNT II – CONVERSION
### (Defendant Smith)

62.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

AA-92

63.    Plaintiff has the exclusive right to the content contained in its protected websites, and is solely permitted to allow access to and disseminate that private content.

64.    Plaintiff has an absolute and unconditional right to the immediate possession of the property as the owner of the websites as issue.

65.    Defendant Smith wrongfully, intentionally, and without authorization gained access to Plaintiff's protected websites and downloaded Plaintiff's private content and disseminated that content to other unauthorized individuals. These actions are inconsistent with Plaintiff's right of possession.

66.    Defendant Smith knows, or has reason to know, that he does not have permission to access the private and password-protected areas of Plaintiff's websites and Plaintiff has demanded the return of its protected content from Defendant Smith.

67.    The above alleged facts support a claim of conversion by Plaintiff against Defendant Smith.

### COUNT III – UNJUST ENRICHMENT
### (Defendant Smith)

68.    The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

69.    Defendant Smith unjustly retained a benefit by accessing Plaintiff protected websites and consuming and downloading Plaintiff's content without providing compensation for the services and content provided by Plaintiff.

70.    Defendant Smith's benefit was to the Plaintiff's detriment as Plaintiff will not be compensated by Defendant Smith or any other individual that was provided Plaintiff's content by Defendant Smith. Additionally, Defendant Smith's actions were to the Plaintiff's detriment by increasing Plaintiff's bandwidth costs and causing Plaintiff reputational harm.

AA-93

71.   Defendant Smith continues to benefit from the unjust benefit of Plaintiff's protected content and this violates the fundamental principles of justice, equity, and good conscience.

72.   The above alleged facts support a claim of unjust enrichment by Plaintiff against Defendant Smith.

### COUNT IV – UNJUST ENRICHMENT
### (Defendants AT&T and Comcast)

73.   The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

74.   Defendant ISPs unjustly retained a benefit by failing to take action to prevent their subscribers who participated in the conspiracy from illegally accessing Plaintiff's protected website, and consuming and downloading Plaintiff's content, without providing compensation for the services and content provided by Plaintiff.   The subscriber fees that Defendant ISPs collected from Defendant Smith and/or his co-conspirators included, in part, fees from those who illegally used the Internet to commit criminal and tortious acts against Plaintiff.

75.   Defendant ISPs were also unjustly enriched because, while engaging in a dilatory legal strategy designed solely to prevent Plaintiff from learning the identities of their subscribers, they, upon information and belief, continued to collect subscriber fees from subscribers who did, and continued to, hack into and steal from Plaintiff's website.

76.   Defendants' benefits were to the Plaintiff's detriment as Plaintiff will not be compensated by any Defendants or any other individual that was provided Plaintiff's content by any Defendant. Additionally, Defendants' actions were to the Plaintiff's detriment by increasing Plaintiff's bandwidth costs and causing Plaintiff reputational harm.

AA-94

77.     Defendants continue to benefit from the unjust benefit of Plaintiff's protected content and this violates the fundamental principles of justice, equity, and good conscience.

78.     The above alleged facts support a claim of unjust enrichment by Plaintiff against Defendants.

### COUNT V – BREACH OF CONTRACT
### (Defendant Smith)

79.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

80.     To lawfully access Plaintiff's websites, users must state that they agree with the following statement: "I have come to this website knowing it's [sic] contents and agree to view sexually explicit material for my personal use. Viewing such material does not knowingly violate the community standards of the area in which I live."

81.     Defendant Smith violated this user agreement by using the material on Plaintiff's protected websites for more than just personal use by disseminating the material to other unauthorized individuals.

82.     Defendant Smith also violated this user agreement by knowingly violating the community standard where he lives, because Defendant Smith's violations of the law are presumably a violation of the community standards.

83.     The above alleged facts support a claim of breach of contract by Plaintiff against Defendant.

### COUNT VI – CIVIL CONSPIRACY
### (Defendant Smith and Smith's Co-Conspirators)

84.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

AA-95

85.    Defendant Smith and his co-conspirators engaged in a concerted action to share hacked passwords amongst each other that would allow entry into Plaintiff's protected websites.

86.    Defendant Smith and his co-conspirators, by sharing hacked passwords among themselves that were created solely for the purpose of illegally gaining access to Plaintiff's website, reached an agreement to hack into and steal from Plaintiff's website.

87.    Defendant and his co-conspirators used those hacked passwords to gain unauthorized access to Plaintiff's protected websites.

88.    Once Defendant and his co-conspirators gained access to Plaintiff's websites, they downloaded protected content from those websites and shared that content amongst themselves and with other unauthorized individuals.

89.    As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged above.

### COUNT VII – CIVIL CONSPIRACY
**(Defendants Smith, AT&T, AT&T's Corporate Representative,
Comcast and Comcast's Corporate Representative)**

90.    Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

91.    Defendant Smith and his co-conspirators hacked into and stole from Plaintiff's website.

92.    Defendants AT&T and Comcast were informed, at a minimum through Plaintiff's initial complaint in this matter, that certain of their subscribers were hacking into and stealing from Plaintiff's website.

AA-96

93.     Upon information and belief, Defendants AT&T and Comcast have failed to take action sufficient to prevent their subscribers from hacking into and stealing from Plaintiff's website.

94.     Instead, AT&T and Comcast, previously nonparties to this litigation, instead chose to act as *de facto* legal counsel for Defendant Smith and his co-conspirators by asserting substantive defenses to liability that only a party to litigation, and not third-party information repositories, may assert, all in an effort to obstruct Plaintiff from learning who stole from it.

95.     To the extent that AT&T and Comcast acted as *de facto* legal counsel for Defendant Smith's co-conspirators, in exchange for continued receipt of subscriber fees from Defendant Smith's co-conspirators, the Defendants reached an agreement to allow and/or shelter the continued hacking into an theft from Plaintiff's website as a component of the services provided in exchange for subscriber fees.

96.     The Corporate Representative of each of AT&T and Comcast who elected to allow their subscribers to continue their unrestrained criminal and tortious activity against Plaintiff, to the extent they facilitated and allowed criminal activity against Plaintiff to continue. The Corporate Representative of AT&T and Comcast, therefore, is each personally liable for involvement in civil conspiracy.

97.     As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged above.

## COUNT VIII – ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT
### (Defendants AT&T and Comcast)

98.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

AA-97

99.    Defendant Smith's, and his co-conspirators', use of a hacked passwords to illegally gain entry into and steal from Plaintiff's website is a deceptive practice.

100.    Defendant AT&T's and Comcast's efforts to defend those gaining illegal access to Plaintiff's website from being identified, while at the same time failing to prevent the individuals from continued unlawful entry into the website, is a deceptive practice.

101.    The Defendants intended the Plaintiff to rely upon their deceptive practices because, among other things, their conduct allowed Defendant Smith's co-conspirators to re-gain unauthorized entry into Plaintiff's website under the false guise that they were legitimate, paying customers. Defendants' deception occurred in the course of conduct involving trade.

102.    Plaintiff was actually damaged by Defendants' deception in the form of, among other things, lost revenues from the theft and distribution of its conduct without payment.

103.    Defendants AT&T and Comcast are therefore liable to Plaintiff for damages pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("Act"), 815 ILCS 505/1, *et seq.*

## COUNT X – AIDING AND ABETTING
### (Defendants AT&T, AT&T Corporate Representative, Comcast, Comcast Corporate Representative)

104.    Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

105.    At all times relevant hereto, Defendants AT&T and Comcast, and their corporate representatives, knew or should have known that certain of their subscribers were accused of hacking into and stealing from Plaintiff's website.

106.    Defendants AT&T and Comcast aided and abetted Defendant Smith and his co-conspirators in the illegal hacking and theft from Plaintiff by, among other things, failing to take

AA-98

action to prevent such conduct, and acting as *de facto* legal counsel for Smith and his co-conspirators in an effort to prevent Plaintiff from learning of their identities, aided and abetted the hacking into, and theft from, Plaintiff's website.

107.   Furthermore, to the extent that the actions of AT&T and Comcast in those respects allowed and enabled criminal activity to occur and/or continue against Plaintiff, the decisions of the Corporate Representative for each entity who was responsible for those actions were not within their scope of employment.   As such, each Corporate Representative is personally liable to Plaintiff for aiding and abetting the hacking into, and theft from, Plaintiff's website.

108.   Furthermore, the actions of AT&T and Comcast, and each respective Corporate Representative, in those regards were willful, malicious, intentional, aggravated, and were committed with reckless and/or deliberate disregard of an unjustifiable and substantial risk of significant harm to Plaintiff, and as such, Plaintiff should be entitled to punitive damages from Defendants AT&T and Comcast and their respective Corporate Representative.

### JURY DEMAND

1.   Plaintiff hereby demands a jury trial in this case.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests Judgment and relief as follows:

1)   With respect to Count I, judgment against Defendants that they have: a) committed or allowed computer fraud and abuse against Plaintiff pursuant to 18 U.S.C. § 1030(g); and b) converted, or allowed conversion of, Plaintiff's protected content;

2)   With respect to Count II, judgment that Defendant Smith has converted property belonging to Plaintiff;

AA-99

3)      With respect to Count III, judgment that Defendant Smith has become unjustly enriched at the expense of Plaintiff;

4)      With respect to Count IV, judgment that Defendant Comcast and AT&T have become unjustly enriched at the expense of Plaintiff;

5)      With respect to Count V, judgment that Defendant Smith breached the contractual agreement he had with Plaintiff;

6)      With respect to Count VI, judgment that Defendant Smith conspired with other individuals to commit the unlawful activities set forth herein;

7)      With respect to Count VII, judgment that all Defendants conspired among each other, and with others, to commit the unlawful activities set forth herein;

8)      With respect to Count VIII, judgment that Defendants AT&T and Comcast are therefore liable to Plaintiff for damages pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("Act"), 815 ILCS 505/1, *et seq.*;

9)      With respect to Count IX, judgment that Defendants AT&T and Comcast, and the Corporate Representative of each entity, aided and abetted commission of the unlawful activities set forth herein;

10)      Judgment in favor of the Plaintiff against the Defendants for actual damages or statutory damages pursuant to 18 U.S.C. § 1030(g) and common law, at the election of Plaintiff, in an amount in excess of $200,000 to be ascertained at trial;

11)      Judgment in favor of the Plaintiff, and against AT&T and Comcast and their respective Corporate Representatives for punitive damages;

AA-100

12) Order of impoundment under 17 U.S.C. §§ 503 & 509(a), impounding all copies of Plaintiff's audiovisual works, photographs or other materials, which are in Defendant Smith's possession or under his control;

13) An order that Defendants are jointly and severally liable to the Plaintiff in the full amount of the Judgment on the basis of a common law claim for civil conspiracy; for an award of compensatory damages in favor of the Plaintiff and against Defendants, jointly and severally, in an amount to be determined at trial;

14) Judgment in favor of Plaintiff against the Defendants awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

15) Judgment in favor of the Plaintiff against the Defendants, awarding Plaintiff declaratory and injunctive or other equitable relief as may be just and warranted under the circumstances.

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

DATED: August 3, 2012

By: _____

Kevin T. Hoerner  (Bar No. 06196686)
Becker, Paulson, Hoerner & Thompson P.C.
5111 W. Main Street
Bellville, Illinois 62226
(618) 235-0020
*Counsel for Plaintiff*

AA-101

Paul Duffy (Bar No. 06210496)
Prenda Law, Inc.
161 N. Clark Street, Suite 3200
Chicago, IL  60601
Telephone: (312) 880-9160
Facsimile:  (312) 893-5677
E-mail: paduffy@wefightpiracy.com
*Counsel for Plaintiff*

AA-102

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS
LAW DIVISION

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | No.   L   683 |
| Plaintiff, | ) | |
| v. | ) | |
| JOHN DOE, | ) | |
| Defendant. | ) | |

FILED
ST. CLAIR COUNTY
DEC 1 3 2011
*Katahdin a. Dean*
CIRCUIT CLERK
19

### CERTIFICATE OF DISCLOSURE

Steve Jones, founder and CEO of Arcadia Data Security Consultants, programmer of the
Trade Hacker and Intruder Evidence Finder 2.0 (T.H.I.E.F.) security software, and Declarant of
the Declaration (Exhibit C to the Complaint), is also the owner of Lightspeed Media
Corporation, the Plaintiff in this case.

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

DATED: December 12, 2011

By:  *M. O'My*

Michael O'Malley, Esq. (Bar No. 3125757)
Carey, Danis, & Lowe
5111 W. Main Street
Bellville, Illinois 62226
(618) 212-6300
MO'Malley@careydanis.com
*Attorney for Plaintiff*

FILED
ST. CLAIR COUNTY
DEC 1 4 2011
*Katahdin a. Dean*
CIRCUIT CLERK
41

AA-103

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS
LAW DIVISION

LIGHTSPEED MEDIA CORPORATION,          )
                                        )     No.   L 683
              Plaintiff,                )
                                        )
       v.                               )
                                        )     DECLARATION OF STEVE
JOHN DOE,                               )     JONES
                                        )
              Defendant.                )
                                        )
_____)

I, Steve Jones, declare under penalty of perjury as true and correct that:

     1.     I am of legal age, under no legal disability and make this declaration based upon my personal knowledge of the facts.

     2.     I am the founder, Chief Executive Officer and sole member of Arcadia Data Security Consultants ("Arcadia") and the programmer of the Trader Hacker and Intruder Evidence Finder 2.0 ("T.H.I.E.F.") Security System.

     3.     I have worked in the computer and Internet related industries for over 25 years, primarily in software design and systems analysis capacities. In my professional experience, I have personally developed, designed and coded numerous large scale software systems for companies such as Starbucks, Costco, and Reed's Jewelers.

     4.     Every year, Internet based businesses lose millions of dollars to hackers, thieves and other third parties who illegally access restricted or membership areas of websites in violation of the websites' user agreements. Once these individuals access these restricted areas, they download valuable copyrighted web content which is only available to paying customers. Not only do these individuals steal valuable web content, they increase client costs by using expensive bandwidth and server resources. The result is loss of potential earnings through theft

FILED
ST. CLAIR COUNTY
DEC 1 4 2011
CIRCUIT CLERK
AA-104

and at the same time, an increase in costs of day to day operations. Plaintiff and other similarly situated companies contract with Arcadia to help combat the unauthorized access and theft of their online content.

5.       In most instances, thieves use hacked usernames and passwords to gain unauthorized access to Plaintiff's online content. While the T.H.I.E.F. Security System does not identify how the thieves actually gain the usernames and passwords that they use, the most common methods of gaining these usernames and passwords are well known. The hacked passwords are usually gained through the use of special computer software that repeatedly attempts to guess a username and password until the correct ones are obtained. Once a valid username and password is identified through this hacking method, the thieves use that information to access to Plaintiff's websites as though they were subscribing members.

6.       Often, thieves will place the hacked username and password into "hacked password websites" and share that information with others who also seek unauthorized access to Plaintiff's online content. There are no limits to the number of individuals that can use a single hacked password, so it is common for multiple thieves to access Plaintiff's website through a single password.

7.       I have developed software systems designed to help clients combat Internet related piracy, including developing software specifically designed to stop computer hackers. The T.H.I.E.F. Security System is designed to identify these thieves and provide the information necessary to sue the thieves in civil court. The T.H.I.E.F. Security System is designed to identify the hacked usernames and passwords as well as the individuals who are using the hacked usernames and passwords.

**AA-105**

8.      Most web servers create raw logs that contain a wide variety of detailed information about visitors to a website. The T.H.I.E.F. Security System analyzes these raw server logs generated by the client's server to determine hacking. unauthorized access, and password sharing activity. This activity is summarized in reports that can be used by clients to identify the thieves who log into the client's websites.

9.      The T.H.I.E.F. Security System uses a proprietary algorithm to parse the server logs and identify hackers who have entered the client membership or restricted area illegally and downloaded valuable web content that is only available to paying customers.  Since the hackers do not use their own identifying information to access clients' websites, they are identified only by their Internet Protocol ("IP") addresses.

10.      An IP address is a unique number that is assigned to Internet users by an Internet Service Provider ("ISP") at a given date and time.  An ISP generally records the time and dates that it assigns each IP address to a subscriber and maintains for a period of time a record of such an assignment to a subscriber in logs maintained by the ISP.  In addition. the ISP maintains records which typically include the name, one or more addresses, one or more telephone numbers, and one or more email addresses of the subscriber.  However, these records are not public and are not available to Arcadia at this time.

11.      There are two types of IP addresses: dynamic and static.  A static IP address is an IP address that will be associated with a particular user as long as that user is a customer of a given ISP.  A dynamic IP address is an IP address that will change from time-to-time.  Most consumer customers of ISPs are assigned a dynamic IP address.  The reason for this is that an ISP can get by with a smaller overall pool of IP addresses if it simply assigns the next available IP address at a given time to a customer who wishes to connect to the Internet versus allocating a

AA-106

permanent and unique IP address to each of its users.  ISPs keep logs of IP addresses, but the

length of time they keep the logs can be as short as days.

12.     In addition to determining the hackers' IP addresses, T.H.I.E.F. also identifies the

websites accessed by being accessed by the hackers, the content being unlawfully accessed and

downloaded, and the date and time of the unlawful access.  This information generated is stored

in a database that may be verified and audited by independent third parties.

13.     Under penalties of perjury as provided by law pursuant to section 1-109 of the

code of civil procedure, the undersigned certifies that the statements set forth in this instrument

are true and correct, except as to matters herein stated to be on information and belief and as to

such matters the undersigned certifies as aforesaid that the undersigned verily believe the same to

be true.


Steve Jones

12/6/11

Notary

KIM F. PEARSON
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
July 26, 2015

AA-107

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
### ST. CLAIR COUNTY, ILLINOIS
### LAW DIVISION

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | No.   L |
| Plaintiff, | ) | |
| v. | ) | **Complaint** |
| JOHN DOE, | ) | **Jury Trial Demanded** |
| Defendant. | ) | |

Plaintiff, Lightspeed Media Corporation, through its undersigned counsel, hereby files this Complaint requesting damages and injunctive relief, and alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff files this action for computer fraud and abuse, conversion, unjust enrichment, breach of contract, and related civil conspiracy claim. Defendant and Defendant's co-conspirators, whose names Plaintiff expects to ascertain during discovery, used one or more hacked passwords to gain unauthorized access to Plaintiff's website and protected content and, upon information and belief continues to do the same. Plaintiff seeks a permanent injunction, statutory or actual damages, award of costs and attorneys' fees, and other relief.

## THE PARTIES

2.     Plaintiff is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business located in Arizona.

3.     Defendant's and his co-conspirators' actual names are unknown to Plaintiff. Instead, they are known to Plaintiff only by their Internet Protocol ("IP") addresses, which are numbers assigned to devices, such as computers, connected to the Internet. In the course monitoring website access, Plaintiff's agents observed unauthorized access of Plaintiff's

1

C1



Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

protected website through the IP addresses listed in on Exhibit A, attached hereto. Plaintiff

believes that Defendant's identity will be revealed in discovery, at which time Plaintiff, if

necessary, will seek leave of the Court to amend this Complaint to identify Defendant.

## JURISDICTION AND VENUE

4.      Pursuant to 735 ILCS 5/2-209, this Court has personal jurisdiction over Defendant

because, upon information and belief, Defendant resides in or committed the unlawful acts in St.

Clair County, Illinois. Plaintiff used geolocation technology to trace Defendant's location to St.

Clair County. Although not a litmus test for personal jurisdiction, the use of geolocation gives

Plaintiff good cause for asserting that personal jurisdiction is proper over Defendant.

5.      Venue in this county is proper pursuant to 735 ILCS 5/2-101, because, upon

information and belief, Defendant resides in St. Clair County, Illinois.

## POTENTIAL JOINDER OF CO-CONSPIRATORS

6.      Plaintiff may elect, after learning additional facts, to seek leave of the Court to

amend this complaint to include Defendant's co-conspirators as defendants in this action

pursuant to 735 ILCS 5/2-405.

## BACKGROUND

7.      The Internet has made nearly unlimited amounts of information and data readily

available to anyone who wants to access it.  Some of this information and data is private and

available only to those who have lawful access to it.  Owners attempt to protect this private

content through the use of password authentication systems.  Unfortunately, however, this does

not ensure that content remains protected from unauthorized access.

8.      Hacking is the act of gaining access without legal authorization to a computer or

computer system.  This is normally done through the use of special computer programming

AA-109

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

software.  This password cracking software repeatedly attempts to guess a password until the correct password is ascertained.  The software can attempt a great number of passwords in a short period of time, sometimes even a million per second, making this type of software very efficient at obtaining a password. Individuals that utilize this type of software are called hackers.[1]  Hackers employ various other means to gain unauthorized access to data such as identifying exploitable flaws in database codes.

9.     Once a password is obtained, the hacker has unauthorized access to the protected content as long as the password remains valid.  Sometimes a hacker will post the hacked password on a hacked password website, making it available to the members or visitors of that website.  The hacker may even charge individuals for use of the hacked password and make a profit off of the loss and harm he or she has caused to the website owner or users.  There are not necessarily any limits on how often or by how many people a password can be used, so a single hacked password can potentially allow unauthorized access to significant numbers of individuals.

## FACTUAL ALLEGATIONS

10.     Plaintiff is the owner and operator of an adult entertainment website.  Plaintiff invests significant capital in maintaining and operating this website.  Plaintiff makes the website available only to those individuals who have been granted access to Plaintiff's website content (i.e. paying members).  This access is given to members of the Plaintiff's website who sign-up and pay a fee to access the content.  Access to this content is protected by a password assigned to each individual member.

---

[1] The technical definition of "hacker" is actually much broader and includes anyone who modifies a computer system to accomplish a goal—whether authorized or not (very similar to a computer programmer).  A "cracker" is the technically correct definition of someone who gains unauthorized access to a computer.  However, the common, popular definition of "hacking" is generally understood to be that of a "cracker."  In this document any references to "hacker" or "hacking" will refer to their common definition of "cracker" or "cracking."

3

AA-110

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

11.     Defendant and Defendant's co-conspirators belong to a hacking community where hacked passwords are passed back and forth among the members. Members in this community work together to ensure that the members have access to normally inaccessible and unauthorized areas of the Internet. The series of transactions in this case involved accessing and sharing hacked passwords over the Internet and using the hacked passwords to access Plaintiff's website and private content.  Defendant and his co-conspirators actively participated with one another in order to disseminate the hacked password, and intentionally engaged in a concerted action with one another to access the same website and content.

12.     Defendant and his co-conspirators gained unauthorized access to Plaintiff's private website.  They used hacked passwords to gain unlawful access to the member's sections of Plaintiff's websites.  Through these hacked passwords Defendant and his co-conspirators consumed Plaintiff's content as though he or she was a paying member.  They even downloaded Plaintiff's private content and disseminated that information to other unauthorized individuals.

13.     Since Defendant and his co-conspirators accessed the website through hacked passwords, they are not required to provide any identifying personal information, such as their true names, addresses, telephone numbers or email addresses.  Defendant and his co-conspirators can only be identified by their IP addresses.

14.     Plaintiff retained Arcadia Data Security Consultants, LLC ("Arcadia") to identify IP addresses associated with hackers that use hacked passwords and the Internet to access Plaintiff's private website and content.

15.     Arcadia used forensic software named Trader Hacker and Intruder Evidence Finder 2.0 (T.H.I.E.F.) to detect hacking, unauthorized access, and password sharing activity on

4

C4

AA-111

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

Plaintiff's websites. The individuals committing these unlawful activities are identified by their IP addresses as well as the dates and times they unlawfully accessed Plaintiff's websites.

16.    Once Defendant's and his co-conspirators' IP addresses and dates and times of unlawful access were ascertained, Arcadia used publicly available reverse-lookup databases on the Internet to determine what ISP issued the IP addresses.

17.    In addition to logging Defendant's IP addresses. Arcadia's software logged other important information into a uniform database. such as the specific websites that were unlawfully accessed and the files that were downloaded during that unauthorized access.

18.    A summarization of the information gathered for Defendant is set forth in Exhibit A. The listing of the IP address, ISP, and date and time of the unauthorized access of Defendant's co-conspirators is set forth in Exhibit B. A declaration attesting to Arcadia's software is attached as Exhibit C.

### COUNT I – COMPUTER FRAUD AND ABUSE

19.    The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

20.    Defendant used one or more hacked passwords to gain unauthorized access to Plaintiff's website and protected content.

21.    Once Defendant gained access, he downloaded Plaintiff's private content and disseminated that content to other unauthorized individuals.

22.    Defendant's actions constitute a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. A private right of action exists under the Act under 18 U.S.C. § 1030(g).

23.    Defendant has caused loss to Plaintiff in the form of actual damages, statutory damages, and reputational injury, in excess of $5,000.

AA-112

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

24.     The above alleged facts support claim of computer fraud and abuse by Plaintiff against Defendant.

## COUNT II – CONVERSION

25.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

26.     Plaintiff has the exclusive right to the content contained in its protected websites, and is solely permitted to allow access to and disseminate that private content.

27.     Plaintiff has an absolute and unconditional right to the immediate possession of the property as the owner of the websites as issue.

28.     Defendant wrongfully, intentionally, and without authorization gained access to Plaintiff's protected website and downloaded Plaintiff's private content and disseminated that content to other unauthorized individuals. These actions are inconsistent with Plaintiff's right of possession.

29.     Defendant knows, or has reason to know, that he does not have permission to access the private and password-protected areas of Plaintiff's website and that Plaintiff would demand the return of its protected content if it was aware of Defendant's identity.

## COUNT III – UNJUST ENRICHMENT

30.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

31.     Defendant unjustly retained a benefit by accessing Plaintiff protected website and consuming and downloading Plaintiff's content without providing compensation for the services and content provided by Plaintiff.

AA-113

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

32.    Defendant's benefit was to the Plaintiff's detriment as Plaintiff will not be

compensated by Defendant or any other individual that was provided Plaintiff's content by

Defendant. Additionally, Defendant's actions were to the Plaintiff's detriment by increasing

Plaintiff's bandwidth costs and causing Plaintiff reputational harm.

33.    Defendant continues to benefit from the unjust benefit of Plaintiff's protected

content and this violates the fundamental principles of justice, equity, and good conscience.

## COUNT IV – BREACH OF CONTRACT

34.    Plaintiff hereby incorporates by reference each and every allegation contained in

the preceding paragraphs as if set forth fully herein.

35.    To lawfully access Plaintiff's website, users must state that they agree with the

following statement: "I have come to this website knowing it's [sic] contents and agree to view

sexually explicit material for my personal use. Viewing such material does not knowingly violate

the community standards of the area in which I live."

36.    Defendant violated this user agreement by using the material on Plaintiff's

protected website for more than just personal use by disseminating the material to other

unauthorized individuals.

37.    Defendant also violated this user agreement by knowingly violating the

community standard where he lives, because Defendant's violations of the law are presumably a

violation of the community standards.

## COUNT V – CIVIL CONSPIRACY

38.    Plaintiff hereby incorporates by reference each and every allegation contained in

the preceding paragraphs as if set forth fully herein.

AA-114

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

39.    Defendant and his co-conspirators engaged in a concerted action to share hacked passwords amongst each other that would allow entry into Plaintiff's protected website.

40.    Defendant and his co-conspirators used those hacked passwords to gain unauthorized access to Plaintiff's website.

41.    Once Defendant and his co-conspirators gained access to Plaintiff website, they downloaded protected content from that website and shared that content amongst themselves and with other unauthorized individuals.

42.    As a proximate result of this conspiracy. Plaintiff has been damaged, as is more fully alleged above.

## JURY DEMAND

43.    Plaintiff hereby demands a jury trial in this case.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiff respectfully requests Judgment and relief as follows:

1)    Judgment against Defendant that he has: a) committed computer fraud and abuse against Plaintiff pursuant to 18 U.S.C. § 1030(g); b) converted Plaintiff's protected content; c) become unjustly enriched at the expense of Plaintiff; d) breached the contractual agreement he had with Plaintiff; and e) Defendant conspired with other individuals to committed the above unlawful activities;

2)    Judgment in favor of the Plaintiff against the Defendants for actual damages or statutory damages pursuant to 18 U.S.C. § 1030(g) and common law, at the election of Plaintiff, in an amount in excess of $100,000 to be ascertained at trial;

8

C8

AA-115

Michael O'Malley, Esq.
Carey, Danis, & Lowe
*Attorney for Plaintiff*

    3)      Order of impoundment under 17 U.S.C. §§ 503 & 509(a) impounding all copies

of Plaintiff's audiovisual works, photographs or other materials, which are in Defendant's

possession or under his control;

    4)      On Count V, an order that Defendant is jointly and severally liable to the Plaintiff

in the full amount of the Judgment on the basis of a common law claim for civil conspiracy; for

an award of compensatory damages in favor of the Plaintiff and against Defendant, jointly and

severally, in an amount to be determined at trial;

    5)      Judgment in favor of Plaintiff against the Defendants awarding the Plaintiff

attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs

of this action; and

    6)      Judgment in favor of the Plaintiff against the Defendants, awarding Plaintiff

declaratory and injunctive or other equitable relief as may be just and warranted under the

circumstances.

 

        Respectfully submitted,

        LIGHTSPEED MEDIA CORPORATION

DATED: December 12, 2011

        By: _____
        Michael O'Malley, Esq. (Bar No. 3125757)
        Carey, Danis, & Lowe
        5111 W. Main Street
        Bellville, Illinois 62226
        (618) 212-6300
        MO'Malley@careydanis.com
        *Attorney for Plaintiff*

AA-116

UNITED  STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

VPR  INTERNATIONALE,[1]

          PLAINTIFF,

     vs.                       11-2068

DOES 1-1017,
individually and as representatives
of a class,

          DEFENDANTS.

ORDER ON MOTION FOR EXPEDITED DISCOVERY

In this novel case, which has turned Fed. R. Civ. P. 23 on its head, an identified existing entity, acting as a plaintiff, seeks to sue a class of unnamed individuals, denominated only as Does 1 through 1017.  There has been no service of process yet because, obviously, there is no identified  "person" to serve within the meaning of Fed. R. Civ. P. 4.  So at this point the court has no personal jurisdiction over anyone.  The Does, perhaps, are subscribers who have an internet service address.  All that identifies the Does are multi-digit internet subscriber addresses.

There is nothing to lead the court to believe that expedited discovery is necessary in the case.  There is no basis to believe that information will be lost or evidence destroyed that would justify expedited discovery that is not conducted in an adversarial procedure.

Certainly there are existing, identified entities who could be named as defendants that have control over or know the identity of a particular internet service address customer.  Their being named in the suit would give the court an entity upon whom process could possibly be served and provide personal jurisdiction over identified parties to the suit.  The identified, existing defendant over whom the court had personal jurisdiction could then participate in an adversarial proceeding where questions or claims of privilege or protection could be raised.  *See* Fed. R. Civ. P. 45(d)(2).

Plainly stated, the court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose and intent of Fed. R. Civ. P. 23 .

The motion to expedite discovery [6] is denied.

Enter this 9th day of March, 2011.

**s/Harold A. Baker**

———————————————————————
Harold A. Baker
United States District Judge

---

[1] Identified in the pleadings as a "Montreal based producer of adult entertainment," nothing indicates whether VPR is a  *sui juris*  entity.