**No. 13-3801**

# In the
# United States Court of Appeals
## for the Seventh Circuit

---

LIGHTSPEED MEDIA CORPORATION,

*Plaintiff,*

v.

ANTHONY SMITH, et al.,

*Defendants-Appellees,*

APPEAL OF:  PAUL A. DUFFY, et al.,

*Counsel for the Plaintiff.*

---

Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-000889-GPM-SCW.
The Honorable **G. Patrick Murphy**, Judge Presiding.

## BRIEF OF DEFENDANTS-APPELLEES

---

DANIEL G. BOOTH
JASON E. SWEET
BOOTH SWEET LLP
32R Essex Street
Studio 1A
Cambridge, MA 02139
(617) 250-8602

*Attorneys for Appellee
Anthony Smith*

BART W. HUFFMAN
CHARLES M. SALMON
LOCKE LORD LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
(512) 305-4700

HUGH S. BALSAM
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0403

*Attorneys for Appellee
SBC Internet Services, LLC
(f/k/a SBC Internet Services,
Inc. d/b/a AT&T Internet
Services)*

JOHN D. SEIVER
RONALD G. LONDON
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue N.W.
Suite 800
Washington, DC 20006-3401
(202) 973-4200

*Attorneys for Appellee
Comcast Cable Communications LLC
and Comcast Corporate
Representative No. 1*

---

 

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____13-3801_____

Short Caption: _Lightspeed Media Corporation v. Anthony Smith, et al._____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services)

    AT&T Corporate Representative No. 1

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Locke Lord LLP

    HeplerBroom LLC

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services) is wholly owned by BellSouth Corporation, which is wholly owned by AT&T Inc., a publicly held company.

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

    No publicly held company owns 10% or more of the stock of AT&T Inc.

Attorney's Signature: _/s/ Hugh S. Balsam_____  Date: _____01/07/2014_____

Attorney's Printed Name: _Hugh S. Balsam_____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).  Yes _X_    No _____

Address: _111 South Wacker Drive, Chicago, Illinois 60606_____

Phone Number: _(312) 443-0403_____  Fax Number: _(312) 896-6403_____

E-Mail Address: _hbalsam@lockelord.com_____

rev. 01/08 AK

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____13-3801_____

Short Caption: __Lightspeed Media Corporation v. Anthony Smith, et al._____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [X]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services)

    AT&T Corporate Representative No. 1

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Locke Lord LLP

    HeplerBroom LLC

(3)    If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services) is wholly owned by BellSouth Corporation, which is wholly owned by AT&T Inc., a publicly held company.

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

    No publicly held company owns 10% or more of the stock of AT&T Inc.

Attorney's Signature: __/s/ Bart W. Huffman (new)_____    Date: _____02/24/2014_____

Attorney's Printed Name: __Bart W. Huffman (new)_____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes __X__    No _____

Address: __600 Congress Avenue, Suite 2200, Austin, TX 78701 (new)_____

Phone Number: __(512) 305-4746 (new)_____    Fax Number: __(512) 391-4741 (new)_____

E-Mail Address: __bhuffman@lockelord.com (new)_____

rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 13-3801

Short Caption: Lightspeed Media Corporation v. Anthony Smith, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Anthony Smith

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Booth Sweet LLP

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: /s/  Jason E. Sweet                                    Date: 1/30/14

Attorney's Printed Name: Jason E. Sweet

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes  ☒    No _____

Address:  32R Essex Street

Cambridge, MA 02139

Phone Number: (617) 250-8619                    Fax Number:  (617) 250-8883

E-Mail Address: jsweet@boothsweet.com

rev. 01/08 AK

CIRCUIT RULE 26.1  DISCLOSURE STATEMENT

Appellate Court No: __13-3801_____

Short Caption:  __Lightspeed Media Corporation v. Anthony Smith, et al._____

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable  if this form is used.

   [  ]       PLEASE CHECK  HERE IF ANY INFORMATION ON THIS FORM  IS NEW OR REVISED
            AND INDICATE WHICH   INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

       Comcast Cable Communications, LLC_____

       Comcast Corporate Representative #1_____

       _____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

       Lashley & Baer, P.C._____

       Davis Wright Tremaine LLP_____

       _____

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and
       Comcast Cable Communications, LLC is wholly owned by Comcast Holdings Corporation, which is wholly
       Owned by Comcast Corporation, whose stock is publicly traded._____

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

       No publicly held company owns 10% or more of the stock of Comcast Corporation._____

Attorney's Signature:  __/s/ John D. Seiver_____     Date: __1/10/14_____

Attorney's Printed Name:  __John D. Seiver_____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).  Yes __X_____   No _____

Address:  __1919 Pennsylvania Avenue, N.W., Suite 800, Washington, D.C.  20006_____

Phone Number:  __(202) 973-4212_____     Fax Number:  __(202) 973-4499_____

E-Mail Address:  __johnseiver@dwt.com_____

rev. 01/08 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ................................................... i

TABLE OF AUTHORITIES ................................................................... viii

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUE ................................................................. 1

STATEMENT OF THE CASE .................................................................. 1

    Proceedings in state court .............................................................. 1

    Proceedings in federal court ............................................................ 4

SUMMARY OF THE ARGUMENT ............................................................. 8

ARGUMENT ........................................................................... 10

I.     The sanctional attorneys were afforded sufficient due process ............................. 10

    A.    Service of Smith's motion for sanctions on Duffy gave all the
             appellants due notice ............................................................... 11

           1.    Steele and Hansmeier have a well-documented role in
                     Prenda Law .................................................................. 13

    B.    Service on one attorney constitutes service on all others in the same
             law firm ......................................................................... 16

    C.    Each appellant had opportunity to be heard before he was
             sanctioned ...................................................................... 18

    D.    Duffy did not use his opportunitieis to oppose AT&T and Comcast's
             motions ......................................................................... 20

    E.    Appellants had ample opportunity to response to defendants'
             fee itemizations and made no significant response ..................................... 21

F.     The appellants availed themselves of the opportunity to contest sanctions in their motions to reconsider this appeal ....................................23

II.     The district court did not misapply § 1927 ..................................................25

A.     The court did not err in collectively sanctioning Duffy, Hansmeier, and Steele ...............................................................................................26

1.     Duffy, Hansmeier, and Steele regularly act in concert, and did so throughout these proceedings.....................................................26

2.     Duffy's, Hansmeier's, and Steele's interest in this lawsuit..............27

3.     Each of Duffy, Hansmeier, and Steele played a significant role in the litigation and the conduct giving rise to sanctions........................................................................................27

4.     The record also supports the court's finding that Duffy, Hansmeier, and Steele acted in concert such that collective sanctions were appropriate ................................................................29

5.     The case law does not require an individual allocation of the harm caused by each attorney as a result of their vexatious litigation practices, even if such an allocation were possible ..........31

B.     Comcast's and AT&T's § 1927 motions were not time-barred....................32

1.     Section 1927 does not impose a time limitation, nor does any applicable local rule ..............................................................................33

2.     No case law bars consideration of the § 1927 motion here on timelines grounds ...................................................................................34

3.     There was nothing unreasonable about the timing of the filing of the ISP's motions in any event.........................................................37

III.     The record abundantly supported the district court's findings.............................40

A.     Lightspeed's claims were objectively baseless, and the district court sufficiently explained so based on an  ample record ....................................40

1.      The district court adequately explained the basis for its ruling.......40

2.      There was ample basis for the court to find that Lightspeed's
         suit was objectively baseless................................................................41

B.      The district court appropriately drew an inference of baselessness
         from Lightspeed's voluntary dismissal .........................................................45

C.      The district court had ample basis to find that the attorneys
         exhibited a serious disregard for the orderly process of justice..................47

CONCLUSION .........................................................................................................................49

## TABLE OF AUTHORITIES

*AF Holdings LLC v. Navasca,*
No. 12-cv-2396, 2013 WL 3815677 (N.D. Cal. Jul. 22, 2013) ...........................................7, 39

*AF Holdings LLC v. Navasca,*
No. 12-cv-2396, 2013 WL 5701104 (N.D. Cal. Oct. 16, 2013)...............................................15

*Buchanan v. Sherrill,*
51 F.3d 227 (10th Cir. 1995)...................................................................................................16

*Bunger v. Sundstrand Group Ben. Program Trust,*
No. 86 C 20206, 1991 U.S. Dist. LEXIS 12129
(N.D. Ill. Feb. 11, 1991) .........................................................................................................17

*City of Riverside v. Rivera,*
477 U.S. 561 (1986) ................................................................................................................23

*Claiborne v. Wisdom,*
414 F.3d 715 (7th Cir. 2005).............................................................................................31, 46

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) ................................................................................................................45

*Copeland v. Marshall,*
641 F.2d 880 (D.C. Cir. 1980) ................................................................................................23

*Dal Pozzo v. Basic Machinery Co.,*
463 F.3d 609 (7th Cir. 2006)...................................................................................................11

*Daniel Int'l Corp. v. Fischbach & Moore, Inc.,*
916 F.2d 1061 (5th Cir. 1990).................................................................................................16

*Dugan v. Smerwick Sewerage Co.,*
142 F.3d 398 (7th Cir. 1998)...................................................................................................48

*FM Industries, Inc. v. Citicorp Credit Services,*
614 F.3d 335 (7th Cir. 2010).............................................................................................31, 32

*Harris v. Marsh,*
    123 F.R.D. 204 (E.D.N.C. Aug. 30, 1988) .........................................................17, 25

*Ingenuity 13 LLC v. John Doe,*
    No. 12-cv-8333, 2013 WL 1898633 (C.D. Cal. May. 6, 2013) ........................................14, 38

*In re Emanuel,*
    422 B.R. 453 (Bankr. S.D.N.Y. 2010) ...................................................................10

*In re TCI Limited,*
    769 F.2d 441 (7th Cir. 1985) ............................................................................45

*Jones v. Flowers,*
    547 U.S. 220 (2006) ......................................................................................11

*Kapco Mfg. Co., Inc. v. C & O Enters., Inc.,*
    886 F.2d 1485 (7th Cir. 1989) .................................................................... *passim*

*Knorr Brake Corp. v. Harbil, Inc.,*
    738 F.2d 223 (7th Cir. 1984) ............................................................................17

*Kotsilieris v. Chalmers,*
    966 F.2d 1181 (7th Cir. 1992) ...........................................................................17

*Lancaster v. TransUnion, LLC,*
    2011 WL 3610051 (N.D. Ill. Aug. 16, 2011) .......................................................29, 30

*Mars Steel Corp. v. Continental Bank N.A.,*
    880 F.2d 928 (7th Cir. 1989) ............................................................................41

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ......................................................................................11

*Overnite Trans. Co. v. Chicago Indus. Tire Co.,*
    697 F.2d 789 (7th Cir. 1983) .......................................................................34, 35

*Pac. Century Int'l, Ltd. v. Does 1-37,*
    282 F.R.D. 189 (N.D. Ill. 2012) ........................................................................27

*Prolink Holdings Corp. v. Federal Ins. Co.,*
   688 F.3d 828 (7th Cir. 2012)...................................................................33

*Rodgers v. Lincoln Towing Serv., Inc.,*
   771 F.2d 194 (7th Cir. 1985)...................................................................25

*Ross v. City of Waukegan,*
   5 F.3d 1084 (7th Cir. 1993)......................................................................41

*Schutts v. Bentley Nev. Corp.,*
   966 F. Supp. 1549 (D. Nev. 1997) .........................................................11

*Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Local Union No. 330,*
   557 F.3d 746 (7th Cir. 2009)...................................................................22

*Szabo Food Serv. Inc. v. Canteen Corporation,*
   823 F.2d 1073 (7th Cir. 1987)........................................................ *passim*

*Tate v. Ancell,* Nos. 11-3252 & 12-2694,
   2014 U.S. App. LEXIS 963 (7th Cir. Jan. 17, 2014) ....................... *passim*

*Teamsters Local No. 579 v. B&M Transit, Inc.,*
   882 F.2d 274 (7th Cir. 1989)...................................................................40

*Terket v. Lund,*
   623 F.2d 29 (7th Cir. 1980)......................................................................35

*Travelers Ins. Co. v. St. Jude Hosp.,*
   157 F.R.D. 386 (E.D. La. 1994) ..............................................................19

*United States v. Nesglo, Inc.,*
   744 F.2d 887 (1st Cir. 1984) ...................................................................20

*United Students Aid Funds, Inc. v. Espinosa,*
   559 U.S. 260 (2010) .................................................................................11

*Wolters Kluwer Fin. Servs. v. Scivantage,*
   525 F. Supp. 2d 448 (S.D.N.Y. 2007) ....................................................46

**Rules, Statutes and Other Authorities**

28 U.S.C. § 1927 ................................................................................................ *passim*

42 U.S.C. § 1988 ........................................................................................................36

Fed. R. Civ. P. 5(a)(1) ..............................................................................................16

Fed. R. Civ. P. 6(d)) ..................................................................................................20

N.D. Ill. L.R. 54.3 ......................................................................................................37

SDIL-LR 5.1(c)...........................................................................................................20

SDIL-LR 7.1(g) ..........................................................................................................20

SDIL-LR 83.1(e) ........................................................................................................16

## JURISDICTIONAL STATEMENT

The jurisdictional statement in the appellants' brief is complete and correct.

## STATEMENT OF THE ISSUE

Whether the district court properly exercised its discretion to require plaintiff's counsel, appellants here, to pay appellees' attorneys' fees and costs incurred in defending the suit below where appellants lack any credible basis for the claims they asserted, and where they prosecuted the case in an effort to circumvent an Illinois Supreme Court order denying plaintiff mass, nationwide discovery of thousands of Internet subscribers' personally identifiable information.

## STATEMENT OF THE CASE

Three attorneys who represented the plaintiff, Lightspeed Media Corp., in the underlying litigation—Paul Duffy, John Steele, and Paul Hansmeier—appeal an order of the United States District Court for the Southern District of Illinois assessing fees and costs against them under 28 U.S.C. § 1927 for conducting vexatious litigation. The judge awarded the fees and costs to the defendants in the suit: Anthony Smith, SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services), and Comcast Cable Communications, LLC. Smith, AT&T, and Comcast submit this joint appellee brief.

### Proceedings in state court.

Lightspeed, the owner or operator of one or more paid-subscription adult-entertainment websites, filed this lawsuit on December 14, 2011, in the circuit court of

St. Clair County, Illinois.  When Lightspeed filed suit, it identified defendant-appellee

Smith, then the only defendant in the case, as "John Doe."  (D.E. 2-3.)  Lightspeed then

obtained an *ex parte* order authorizing it to serve subpoenas on multiple Internet service

providers (ISPs), including AT&T and Comcast, to obtain the personally identifying

information of the John Doe defendant and some 6,600 unnamed Internet subscribers

located across the country.  (D.E. 2-9, at 14-16.)  Although Lightspeed referred to those

6,600 subscribers as "co-conspirators," Lightspeed did not allege any conspiratorial

conduct between or among any of the 6,600 subscribers and/or the single John Doe

defendant.  (D.E. 2-3, ¶¶ 10-18.)

AT&T, Comcast, and other ISPs (including Verizon Online LLC, Cox

Communications, Inc., and CenturyTel Internet Holdings, Inc.) resisted Lightspeed's

demands for subscriber information by moving the state court to quash and for a

protective order, but the judge denied the motion.  (D.E. 2-12, at 22-23.)  In accordance

with Illinois state-law practice, the moving ISPs sought a stay and "friendly" contempt

finding in order to take an immediate appeal, well in advance of the deadline for

complying with outstanding subpoenas.  (D.E. 2-12, at 42-46.)  The court denied that

motion as well, in open court and in written orders dated May 21, 2012.  (D.E. 2-17, at

51-53; D.E. 9-8; *see also* D.E. 2-17, at 48-50.)

Under Illinois Supreme Court Rules 305(b) and 383, the moving ISPs then filed

motions for an emergency stay and for a supervisory order from the Illinois Supreme

Court, on grounds that:  (i) seeking personal information of 6,600 so-called "co-conspirators" was improper when no claims were asserted against them and the information was not relevant to claims against the single John Doe defendant; (ii) there was no good cause for asserting that personal jurisdiction or venue would be proper as to the so-called "co-conspirators" or that they could otherwise be properly joined in this proceeding; and (iii) Lightspeed did not seek discovery for a proper purpose.  (D.E. 14-1, at 33-43.)

The Illinois Supreme Court promptly stayed enforcement of the circuit court's orders requiring compliance with the subpoenas.  (D.E. 14-4.)  Then, the supreme court issued a supervisory order directing the circuit court to "vacate its orders of May 21, 2012 … and to enter an order allowing the motion to quash subpoenas filed by movants AT&T Internet Services, et al."  (D.E. 9-10, at 3-4.)  On July 16, 2012, the circuit court complied.  (D.E. 2-27, at 1.)

On August 3, 2012, after the Illinois Supreme Court's ruling, Lightspeed amended its complaint to name as defendants AT&T, Comcast, and, for apparent *in terrorem* effect, their respective unidentified "corporate representatives."  (D.E. 2-2.)  In the amended complaint, Lightspeed replaced "John Doe" with Anthony Smith as an individual defendant, asserting that Smith had conspired with AT&T and Comcast (although he was not even alleged to be a customer of either of them) and had "hacked" and accessed content from Lightspeed's password-protected websites without

3

authorization.  Lightspeed asserted causes of action against AT&T and Comcast complaining about the ISPs' successful opposition to Lightspeed's third-party subpoenas in the Illinois Supreme Court and their alleged failure to take punitive actions against their subscribers in response to Lightspeed's accusations against them. (D.E. 2-2, ¶¶ 32-34, 45-49.)

In its amended complaint, Lightspeed did not name any of the 6,600 so-called "co-conspirators" as parties, only Smith, Comcast, and AT&T.  Lightspeed nonetheless proceeded to issue subpoenas seeking the same information about the same thousands of so-called "co-conspirators" as requested in the subpoenas the Illinois Supreme Court had ordered quashed in this same case, and Lightspeed purported to do so under the same early-discovery order it had relied on in issuing the quashed subpoenas.  (D.E. 14-6; D.E. 14-7.)

### Proceedings in federal court.

The ISPs removed the case to federal court (D.E. 2), at which point Lightspeed filed an emergency motion to order AT&T and Comcast to produce discovery in advance of the Rule 26(f) conference, again seeking the same information from AT&T and Comcast about the same so-called "co-conspirators."  (D.E. 9.)  After expedited briefing and a hearing, the district judge denied the emergency motion.  (D.E. 29, at 17-18.)  Each of the defendants filed Rule 12 motions to dismiss, asserting that Lightspeed's claims were improper and lacking any legal or factual basis.  (D.E. 26, D.E. 27 (AT&T);

D.E. 28, D.E. 28-1 through 28-4 (Comcast); D.E. 36, D.E. 37, and D.E. 37-1 (Smith).)

Defendants also successfully moved to stay discovery pending a ruling on their motions

to dismiss.  (D.E. 47; D.E. 53.)

    To combat dismissal of the amended complaint, Lightspeed alleged that Comcast

and AT&T "conspired with Defendant Smith and his co-conspirators."  (D.E. 39, at 14;

D.E. 40, at 14; *see also*, *e.g.*, D.E. 39, at 15 ("Comcast … acted in concert with Defendant

Smith and other hackers … and [ ] conspired with Defendant Smith and other

hackers"); D.E. 40, at 14 (identical allegation as to AT&T).)  Lightspeed made these

allegations without a hint of evidence, or a reasonable inference, of any knowledge,

cooperation, concerted action, or even communication between Comcast or AT&T and

such persons, either before or after any alleged hacking or infringement by defendant

Smith or any other alleged co-conspirator.  Despite this, Lightspeed similarly claimed

that Comcast and AT&T each "acted as [ ] de facto [ ] counsel for its subscribers."  (D.E.

39, at 19; D.E 40 at 18; *see also* D.E. 39, at 21 ("Comcast reached an explicit agreement

with its subscribers … to shield and defend them from liability, to conceal their

identities from Plaintiff, and to advocate on their behalf"); D.E. 40 at 12 (identical

allegation as to AT&T).)

    While the motions to dismiss were pending in this case, Judge Otis D. Wright of

the Central District of California held a hearing in connection with various adult-

content copyright-infringement cases to explore the roles that Duffy, Steele, and

Hansmeier (who frequently operated as the "Prenda Law" firm) played in such litigation. (Reporters' Tr. of Proceedings, *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333 (C.D. Cal. Mar. 19, 2013), ECF No. 93 (transcript of Mar. 11, 2013 hearing)). Three days later, Judge Wright entered an order requiring Duffy, Hansmeier, and Steele to show cause why they should not be sanctioned for their roles in certain BitTorrent litigation pursued before Judge Wright. (Order, *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333 (C.D. Cal. Mar. 14, 2013), ECF No. 86.) Simultaneously, the Prenda Law attorneys began to voluntarily dismiss other cases they had filed. (*E.g.*, Pl.'s Notice of Voluntary Dismissal Without Prejudice, *AF Holdings, LLC v. Richard Turner*, No. 12-cv-3568 (N.D. Ill. Mar. 14, 2013), ECF No. 25; Pl.'s Notice of Voluntary Dismissal Without Prejudice, *AF Holdings, LLC v. John Doe*, No. 12-cv-4244 (N.D. Ill. Mar. 14, 2013), ECF No. 16). Those dismissals included the complaint in this case, which mooted the defendants' then-still-pending motions to dismiss. (D.E. 59.)

On April 5, 2013, 14 days after the order on Lightspeed's voluntary dismissal of the case (D.E. 60), defendant Smith filed a motion for attorney's fees under Fed. R. Civ. P. 54(d)(2) and 28 U.S.C. § 1927. (D.E. 61.) Duffy filed a response to the motion. (D.E. 63.)

Meanwhile, in California, while Smith's fee motion was pending in this case, Judge Wright entered an order in *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333, 2013 WL 1898633 (C.D. Cal. May 6, 2013) (PACER version of order filed below at D.E. 92-4))

sanctioning several persons and entities, including Duffy, Steele, and Hansmeier as a set of three "Principals" that Judge Wright identified. *Id.*, at *2, *5. Judge Wright referred the matter to the U.S. Attorney for the Central District of California, as well as the criminal investigation division of the Internal Revenue Service. Judge Wright also referred the "Principals" to "their respective state and federal bars" and referred Duffy to that district's standing committee on discipline. *Id.*, at *5-6.

Duffy, Steele, and Hansmeier continued to dismiss cases they had filed in various jurisdictions. (*E.g.*, Pl.'s Notice of Voluntary Dismissal Without Prejudice, *Pac. Century Int'l Ltd. v. Strink*, No. 13-cv-0946 (N.D. Ill. Jun. 5, 2013), ECF No. 6; Notice of Voluntary Dismissal of Action, *OpenMind Solutions, Inc. v. Halverson and Does 2-565*, No. 11-cv-1883 (D.D.C. May 31, 2013), ECF No. 46.) Other sanctions ensued. *E.g., AF Holdings LLC v. Navasca*, No. 12-cv-2396, 2013 WL 3815677 (N.D. Cal. Jul. 22, 2013) (granting motion for attorney's fees and costs after voluntary dismissal with prejudice).

On October 30, 2013, Judge Murphy granted defendant Smith's motion for fees in this case, found that the "litigation smacked of bullying pretense," and ordered Smith to file an itemization of fees. (D.E. 65.) On November 8, 2013, Comcast and AT&T filed motions for attorneys' fees under F.R.C.P. 54(d)(2) and 28 U.S.C. § 1927. (D.E. 78; D.E. 82.) Hansmeier and Steele filed oppositions to the ISPs' motions (D.E. 86, 88).

The district judge heard the fee-related motions on November 13, 2013 (D.E. 96), and, also taking into account fee itemizations filed by Smith (D.E. 90, D.E. 90-1 through

90-6), and AT&T and Comcast (D.E. 97, D.E. 97-1; D.E. 98, D.E. 98-1 and 98-2), issued an

order on November 27, 2013 that held the three attorneys jointly responsible to pay

$261,025.11 to defendants under 28 U.S.C. § 1927. (D.E. 100, at 13.)

This appeal followed.

## SUMMARY OF THE ARGUMENT

1.      Steele and Hansmeier received sufficient notice and a sufficient

opportunity to be heard with respect to Smith's motion (note that they do not complain

about notice of the ISPs' motions). Service of Smith's motion on Duffy gave all of the

appellants adequate notice. There was abundant evidence, appropriately credited by

the district court, that Duffy, Steele, and Hansmeier were members of the same firm

during the prosecution of this suit and that they worked with each other in close concert

in this and in many other matters. The case law teaches that this legal and factual

affiliation obviates the need for each individual attorney to receive personal service of

each document filed in the case, including a motion for sanctions.

Duffy had sufficient notice and a sufficient opportunity to be heard with respect

to the ISPs' sanctions motions (note that the other two attorneys do not complain).

Duffy has the facts wrong when he asserts that his response deadline was still looming

when the district court ruled on the ISPs' motions.

The attorney-appellants also are not on solid ground in arguing that they lacked

opportunity to respond to the various fee itemizations. The district judge said he had

all that he needed when he approved the itemizations, and nothing the appellants could have said would have changed that. It is noteworthy that they never—even after the ruling—gave any substantive challenge to the itemizations. It is not for the sanctioned attorneys to quibble with a time entry here and there where all the defendants' attorneys efforts were directed at combatting the baseless lawsuit that Lightspeed's attorneys filed.

2.     The district judge also followed proper procedure under § 1927. He did not impose "vicarious" liability on the appellants. Rather, he noted substantial evidence of their concerted actions and held the members of the group liable for their collective actions. The attorneys should not be permitted to avoid the sting of sanctions by forcing the court to participate in a fast-moving shell game, guessing which attorney did what and when. These attorneys have a long history of collective action, in both this and other lawsuits, and it was appropriate for them to be sanctioned collectively.

There was also no timeliness issue with the ISPs' sanctions motion. Section 1927 does not contain any time limitation, nor does any applicable local rule, and the judge-made requirement of timeliness is concerned with the avoidance of piecemeal appeals. That is not a concern here, where the plaintiff voluntarily dismissed its case and thus there is no appeal on the merits of the underlying action.

3.     Finally, ample evidence supported the imposition of sanctions. Lightspeed's amended complaint that named the ISP defendants and Smith as co-

conspirators rested on a variety of objectively baseless theories.  No facts were alleged—

and no conceivable facts could be alleged—to support a theory that the ISPs actively

conspired with their customers (or that Smith, who was not even alleged to be a

customer of either ISP defendant, conspired with both of them) to harm Lightspeed.

None of the authority the appellants cite supports dragging the ISPs into the lawsuit as

defendants.  And the appellants' brief contains no substantive defense of their

allegations against Smith.

Ultimately, it is inconceivable that the appellants should harbor any doubt about

the basis for the sanctions against them.  The defendants' various motions spelled out

the basis for sanctions in painstaking detail, and the district court expressed its

skepticism early in the case, and consistently noted its agreement with the defendants'

arguments.

## ARGUMENT

## I.    The sanctioned attorneys were afforded sufficient due process.

The appellants were given notice and an opportunity to respond, satisfying the

requirements of due process under § 1927.  "[T]he requirements of due process of law

are applicable to a proceeding to impose sanctions, entitling a party or attorney to

notice and opportunity to respond[.]"  *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d

1485, 1494 (7th Cir. 1989).  But an attorney facing sanctions under § 1927 is "entitled to

no more than the minimum that due process requires."  *In re Emanuel*, 422 B.R. 453, 464

(Bankr. S.D.N.Y. 2010).  In the context of § 1927, due process is satisfied by notice and

an opportunity to be heard.  "So long as counsel had notice that the opposing party was

seeking sanctions and counsel had an appropriate opportunity to respond, that is all

that is required."  *Tate v. Ancell*, Nos. 11-3252 & 12-2694, 2014 U.S. App. LEXIS 963, *36-

39 (7th Cir. Jan. 17, 2014) (citing *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 613 (7th

Cir. 2006)).

> **A.   Service of Smith's motion for sanctions on Duffy gave all the appellants due notice.**

Due process "requires notice 'reasonably calculated, under all the circumstances,

to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections.'"  *United Students Aid Funds, Inc. v. Espinosa*, 559

U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314

(1950)).  "[D]ue process does not require actual notice …" *Id.* (quoting *Jones v. Flowers*,

547 U.S. 220, 225 (2006)).  "Notice of the possibility of [§ 1927] sanctions may be either

actual or constructive."  *Schutts v. Bentley Nev. Corp.*, 966 F. Supp. 1549, 1562 (D. Nev.

1997).

The district court correctly held that "Smith served his motion for attorney fees

on Duffy, and that is all he was required to do."  (D.E. 100, at 6.)  It properly determined

both that, as a matter of fact, the sanctioned attorneys were all part of the same law

firm, and that as a matter of law, service on one was sufficient to give each notice they

could be sanctioned.  Service on Duffy was "reasonably certain to inform those affected," that is, Steele and Hansmeier.  *Mullane*, 339 U.S. at 315.

The court first found it "irrefutable that Steele had actual notice" of the motion, which was served to one of the email addresses Steele had provided to the court for service of electronic documents through the ECF system while he was still listed as attorney of record.  (D.E. 100, at 5.)  The appellants argue that this did not suffice to show Steele was served because the district court did not confirm that Steele was still receiving email at that address after withdrawing.  (App. Br. 17.)  The district judge considered Steele's claim that service was insufficient (*see* AA26) but ultimately deemed it "baseless," for good reason.  (D.E. 100, at 5.)  Steele gave the court two different explanations of how he learned about the sanctions order.  On November 4, 2013, he declared that he had learned about it via Duffy.  (AA29.)  But at the November 13, 2013 hearing, he stated, "I learned about this fee issue when Paul Hansmeier called me … and told me what he had just learned from Paul Duffy."  (AA25.)  It was not clear error for the court to dispute Steele's "feigned protestations" (D.E. 100, at 10) and decide that the email address Steele provided for electronic service had achieved its stated purpose.

Of note, Steele moved to withdraw from this case only two days after the order to show cause issued directing him to appear for the hearing in front of Judge Wright where he was ultimately sanctioned.  (Order of Mar. 5, 2013, *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333 (C.D. Cal. Mar. 5, 2013), ECF No. 66.)  After Steele was ordered to

appear before Judge Wright, he filed a declaration recounting his, Duffy's, and

Hansmeier's ongoing involvement with Prenda Law.  (D.E. 92-2.)  Steele, Duffy, and

Hansmeier were represented by the same counsel in connection with that sanctions

proceeding, during which time they started to dismiss cases including this one and

during which time Smith filed his motion for sanctions in this case.  (*See, e.g.*, Decl. of

John Steele in support of Ex Parte Application for Order Withdrawing Order for John

Steele, Paul Hansmeier, Paul Duffy, and Angela van den Hemel to Appear, *Ingenuity 13*

*LLC v. John Doe*, No. 12-cv-8333 (C.D. Cal. Mar. 8, 2013), ECF No. 83.)

### 1.    Steele and Hansmeier have a well-documented role in Prenda Law

The record amply supports the district court's finding that "Duffy, Steele, and

Hansmeier are all associated with the same law firm: Prenda Law Inc." (D.E. 100, at 6.)

The docket lists Duffy's firm as Prenda Law, Inc., *id.*, as do his filings.  (*See, e.g.*, D.E. 59;

D.E. 9, at 14; D.E. 2-2, at 23.)  Steele and Hansmeier both identified themselves as acting

on behalf of Prenda Law.  (D.E. 100, at 6.)  Steele listed his firm as Prenda Law Inc. on

his entry of appearance.   (D.E. 20.) In opposing a stay of discovery, Hansmeier

identified himself as "Of Counsel to Prenda Law Inc."  (D.E. 50, at 9.)  In the voluntary

dismissal, Duffy's signature block shows Prenda Law's address as 161 N. Clark St.,

Suite 3200, which is the same address Steele used when he moved to withdraw.  (D.E.

59, at 1; D.E. 57, at 1.)

Those filings alone suffice to show Steele and Hansmeier's involvement in Prenda Law, but the court had further grounds to find, as it stated the hearing on sanctions, that "it looks like this Prenda law firm is made up of Mr. Duffy and Mr. Hansmeier and others [e.g., Steele]; at least they come together on certain occasions." (AA7.)  In that hearing, Smith's counsel pointed out other cases in California where it had been found that Duffy, Steele, and Hansmeier collectively are Prenda Law.  (AA23.) The court agreed: "Well, that's what I read." (AA23.)

The court also took judicial notice of Judge Wright's sanctions order, which found that they "owned and controlled" Prenda Law and had used the firm and shell companies Ingenuity 13 LLC and AF Holdings LLC to perpetrate fraud on the court. (D.E. 100, at 7 (citing *Ingenuity 13 LLC v. John Doe*, 2013 WL 1898633; (D.E. 92-4); *see also* D.E. 93, at 12, 14.)  The court noted Steele's signed declaration in *Ingenuity 13* (D.E. 92-2) that he knows Hansmeier and Duffy through his work with Prenda Law, that he and Hansmeier are of counsel with the firm, and that Duffy is its principal.  (D.E. 100, at 11 n. 7.)

Furthermore, Brett L. Gibbs, who appeared as counsel of record with Prenda Law in *Ingenuity 13* and other cases, had declared that the firm's principal is Duffy and that Steele and Hansmeier are members to whom he reported.  (D.E. 92-3.)  As Gibbs explained: "During the course of my work with Prenda, Mr. Steele and Mr. Hansmeier were the attorneys who informed me that they communicated with Prenda's clients,

14

oversaw the litigations on behalf of those clients, and provided me with instructions and guidelines, which I was informed, originated from the clients. I reported to Mr. Steele and Mr. Hansmeier."  (D.E. 92-3.)  In *Ingenuity 13,* when ordered to show cause why they should not be sanctioned for fraud on the court, the appellants exercised their Fifth Amendment privilege against self-incrimination.  (D.E. 61, at 16-17; D.E. 92-4.)

As the court also found here, other evidence further supported that appellants worked in concert with each other.  (D.E. 100, at 6.)  "For example, both Steele and Hansmeier used Duffy's CM/ECF login information to enter their appearances, or Duffy attempted to do so for them."  (D.E. 100, at 6 (citing D.E. 11 and D.E. 15).)  Further, the similarities in their filings "indicate an ongoing relationship."  (D.E. 100, at 7 (noting appellants' motions had identical formatting and "the substance is largely the same").)  The court also took judicial notice of the factual findings in an order to show cause issued in *AF Holdings LLC v. Navasca*, No. 12-cv-2396, 2013 WL 5701104 (N.D. Cal. Oct. 16, 2013), in which the court found that, for all material purposes, "Prenda Law, Inc. is a mere continuation of Steele Hansmeier [PLLC]."  (D.E. 100, at 7.)  The court thus correctly found that "Duffy, Steele, and Hansmeier are closely associated and acted in concert to file and prosecute this frivolous lawsuit."  (D.E. 100, at 7-8.)

This Court should reject the attorneys' argument that this evidence of their concerted action does not tend to show they were working in concert on April 5, 2013, when Smith filed his motion.  (App. Br. 19.)  The district judge correctly found they

worked in concert throughout the action, culminating in the voluntary dismissal of the action that occurred around the same time that the *Ingenuity 13* sanctions proceedings were ongoing.  As Smith's motion for sanctions noted, "Steele and Hansmeier have at times tried to disavow having any interest in Prenda Law, [though] the *Ingenuity 13* Court has since found that they and Duffy 'had a pecuniary interest and active, albeit clandestine participation in these cases.'"  (D.E. 61, at 16.)  When they tried to disavow their role in Prenda Law in this case, the district court found that Steele and Hansmeier "both flat-out lied about their association with Prenda Law, Inc. in the face of documentary evidence on the record in this case, and their sworn declarations in other cases." (D.E. 100, at 10-11 (citing Doc. No. 92-2).)  Finding that the appellant attorneys are all associated with Prenda Law was not erroneous, and was certainly not clear error.

**B.   Service on one attorney constitutes service on all others in the same law firm.**

It was not an abuse of discretion to determine that service on Duffy gave the other attorneys in his firm sufficient notice that they faced sanctions.  The court correctly held that due process does not require that each attorney be served each motion.  (D.E. 100, at 5-6 (citing Fed. R. Civ. P. 5(a)(1); *Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1063 (5th Cir. 1990); and *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995)).)  Appellants cite to no case that holds otherwise, failing to rebut the common presumption that actual knowledge of one or more lawyers in a firm is imputed to each of its members.  *See, e.g.,* SDIL-LR 83.1(e) ("Service upon [a party's]

16

attorney shall constitute service upon all other counsel appearing of record for the party.").

A motion for sanctions against an attorney provides the attorney with sufficient notice when served on the attorney's law firm. *Bunger v. Sundstrand Group Ben. Program Trust*, No. 86 C 20206, 1991 U.S. Dist. LEXIS 12129, *4-5 (N.D. Ill. Feb. 11, 1991) (notice to attorney accomplished by letter regarding motion for sanctions sent to him at his law firm). Likewise, service on one of several attorneys subject to a motion for sanctions gives sufficient notice to each:

> [T]o the extent counsel argues notice to the law firm was not notice to her, such a proposition is patently without merit. If fifteen lawyers in a firm are working on the same case, nothing in the Rules suggests the court or opposing counsel must serve each lawyer individually with every filing in the case. Common sense and the realities of practice mandate that service on one counsel at the firm, presumably lead or senior counsel, suffices to notice all in the firm.

*Harris v. Marsh*, 123 F.R.D. 204, 213 (E.D.N.C. Aug. 30, 1988).

Further, an attorney who has withdrawn from a case may still be sanctioned under § 1927. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1183 (7th Cir. 1992) (citing *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984)). In such a case, serving a sanctions notice on counsel of record at their law firm provides former counsel sufficient notice. This is true even if the former counsel has withdrawn, not just from the case, but from the firm as well. "If, upon leaving the firm, counsel failed to receive notice of the 1985 sanctions hearings, fault lies with counsel and her former law firm

[which was properly served], blame to be equally shared, not with defendant or this court." *Harris*, 123 F.R.D. at 212. By that principle, Steele and Hansmeier—who have not denied their deep involvement in Prenda Law—were put on notice of Smith's motion by service to Duffy at that firm. Despite the appellants' arguments, (*see* App. Br. 18), such notice—and not personal service—is all that was required.

The district court's findings that the appellants worked in concert further justify the sanctions; their close working relationship ensured that service on Duffy was reasonably calculated to provide notice to his colleagues. If Steele and Hansmeier were unaware of Smith's sanction motion (an unbelievable proposition for many reasons, including that they were all then jointly represented in the ongoing *Ingenuity 13* sanctions proceedings), they have only Duffy to blame.

The Smith motion gave each notice that they could be subject to sanctions; they declined to oppose at their peril. Because "Smith's service on Duffy was also effective for Steele and Hansmeier … [they] had adequate notice of Smith's motion, and the deadline for response papers, but chose to disregard it." (D.E. 100, at 8.)

**C.    Each appellant had opportunity to be heard before he was sanctioned.**

The appellants do not contend that they lacked an opportunity to contest the ISPs' motions, and each appellant also had ample opportunity to contest Smith's motion and the award to Smith. Duffy filed an opposition to Smith's motion. (D.E. 63.) Steele and Hansmeier did not, although the court reasonably determined that they had been

18

duly notified, either through direct notice or through service on their associate Duffy.
Each appellant moved to vacate or reconsider the district court's first sanctions order.
(D.E. 66, D.E. 67 (Hansmeier); D.E. 68, D.E. 69 (Steele); D.E. 74, D.E. 75 (Duffy).)  Before
issuing its final order, the court held a hearing that all appellants attended and took
their motions under advisement (D.E. 96) before finding they failed to state any
grounds warranting relief.  (D.E. 100, at 2.)

The hearing was more than due process required.  "Under 28 U.S.C. § 1927, a
court may tax an attorney with the unnecessary attorneys' fees and costs expended by a
litigant without a hearing."  *Travelers Ins. Co. v. St. Jude Hosp.*, 157 F.R.D. 386, 387 (E.D.
La. 1994). "[T]he right to a hearing in these circumstances is obviously limited to cases
where a hearing could assist the court in its decision.  Where the sanctionable conduct
occurred in the presence of the court, there are no issues that a hearing could illuminate
and hence the hearing would be pointless."  *Kapco*, 886 F.2d at 1495.  The appellants'
misconduct here occurred in plain sight, so no hearing was needed to illuminate any
issues.  Indeed, their prevarications at the hearing only added fuel to the fire, providing
even more reasons to award sanctions.  (D.E. 100, at 10.)

> **D.**   **Duffy did not use his opportunities to oppose AT&T and Comcast's motions.**

Hansmeier and Steele filed oppositions to AT&T's and Comcast's motions for
attorney's fees (D.E. 86; D.E. 88) and gave voice to their objections at the hearing.

(AA17-22; AA24-28.)  Despite the appellants' arguments, Duffy had every opportunity to do the same.

The appellants incorrectly assert that the district court entered the sanctions order before the time lapsed under the local rules for responding to AT&T's and Comcast's motions.  (App. Br. 20.)  The local rules allow 17 days for any response to electronically filed motions.  *See* SDIL-LR 7.1(g) & SDIL-LR 5.1(c) (citing Fed. R. Civ. P. 6(d)).  AT&T and Comcast filed their motions on November 8, 2013. (D.E. 78; D.E. 82.)  Therefore, any response from Duffy was due by November 25, 2013.  But Duffy never filed any response.  The court granted AT&T's and Comcast's motions on November 27, 2013, two days after Duffy's deadline.

The appellants also blame the district court for Duffy's silence at the hearing, contending that the court didn't allow Duffy to speak.   (App. Br. 20-21.)  Yet Steele spoke up unbidden (AA24-28), and the district court shushed Hansmeier for interrupting.   (*See* AA9-10.)  Duffy could not expect to avoid sanctions by not filing a response and then keeping silent at a hearing on counsels' misconduct.  *See United States v. Nesglo, Inc.*, 744 F.2d 887, 890 (1st Cir. 1984) (affirming § 1927 sanctions).  Duffy's squandered opportunities do not constitute a violation of due process.

**E.     Appellants had ample opportunity to respond to defendants' fee itemizations and made no significant response.**

Appellants contend that they had no opportunity to respond to defendants' fee itemizations (App. Br. 21-22), but here too their complaints reflect not a lack of due process but a lack of due diligence.

Smith filed his itemization on November 8, 2013, 19 days before the court granted it in full.  (D.E. 84.)  On November 12, 2013, the court required Smith to change the signature block in the itemization and refile.  (D.E. 89.)  Smith refiled it, with identical content, the same day.  (D.E. 90.)  On November 25, 2013, the district court ordered that, "for the purposes of docket control," the docket text should be modified to describe defendants' itemizations as supplements to their motions for sanctions.  (D.E. 99.)  Nothing supports the appellants' contention that when the court recharacterized Smith's petition as a supplement, it reset the response deadline.  (App. Br. 21-22.)  The refiling or "recharacterization" did not impair or prejudice the appellants' ability to respond to the petition, for these administrative docketing actions did not change the substance of the itemization.  (D.E. 99.)

On November 10, 2013, Hansmeier filed a notice of intention to file a response to Smith's itemization "on or before the due date of November 22, 2013."  (D.E. 87.)  Hansmeier did not file a formal response, opting instead to express his position at the hearing, saying of Smith's fees, "they're not modest for me. That $70,000 is an extremely large amount of money."  (AA19.)  This sudden bout of parsimony, which did not seem

21

to afflict Hansmeier when he was imposing those costs on Smith, is not a relevant

consideration.  This Court has "expressly held that an attorney's ability to pay is not

relevant to the imposition of sanctions under section 1927."  *Tate*, 2014 U.S. App. LEXIS

963, at *46, citing *Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Local Union No. 330*,

557 F.3d 746, 749 (7th Cir. 2009).

AT&T and Comcast filed their supplemental itemizations on November 15 and

November 22, 2013. (D.E. 97; D.E. 98.)  The November 27, 2013 order noted that the

appellants had filed responses to defendants' motions for fees, but not to the

supplemental itemizations.  (D.E. 100, at 12 (citing D.E. 63, D.E. 66, D.E. 68, D.E. 74, D.E.

86.)  The court found that a response unnecessary because it needed no further

information.  (D.E. 100.)  It was neither clear error nor an abuse of discretion to decide

that appellants' responses would not illuminate the court's own consideration of

defendants' itemizations and declarations.  The sanctions awards included all time that

defendants' counsel spent since August 2012.  In any event, none of the sanctioned

attorneys ever challenged the substance of the fee itemizations, either before the ruling

or in a motion to reconsider after the ruling.

The propriety of the district court's decision is borne out in the meager objections

to the itemizations that the appellants raise in their opening brief.  They identify three

purported "material errors and discrepancies," (App. Br. 22), none of which is

significant.  For example, they flag two entries in Smith's itemization, describing time

spent on his reply brief regarding his motion to dismiss, which state only, "Research and Draft: CFAA section for motion to dismiss." *Id.* Both entries were for time billed between Lightspeed's response and Smith's reply, so viewed in context, omission of the word "reply" is inconsequential. (*See* D.E. 90-1, at 8-9.) One "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [the opposing party] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 581 n. 11 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980)).

### F. The appellants availed themselves of the opportunity to contest sanctions in their motions to reconsider and this appeal.

"As with any procedural error, counsel must demonstrate that he was harmed by the error in order to establish a basis for reversal; the failure to grant notice and an opportunity to be heard, like any other error, can be harmless." *Tate*, 2014 U.S. App. LEXIS 963, at *52. The appellants received notice, had the opportunity to contest the sanctions and did so, and have not shown they were harmed by any deprivation. But in any event, the district court correctly determined that even assuming a hypothetical due process violation, it was cured by the sanctions hearing. (D.E. 100, at 8.) That determination was not an abuse of discretion.

An opportunity to contest sanctions awarding attorney's fees through a motion to reconsider and appeals satisfies due process. In *Tate v. Ancell*, this Court's most recent § 1927 decision, the sanctioned attorney moved to reconsider the decision to award fees. *Tate*, 2014 U.S. App. LEXIS 963, at *44. Before the attorney was sanctioned,

he had already argued the issue of whether "the claims against the [] defendants lacked a reasonable basis in law and in fact and thus should not have been pursued." *Id.*, at *45. The Court found the attorney's remaining "legal arguments as to what findings are necessary to support the imposition of sanctions pursuant to section 1927 and whether the district court's findings here support its sanctions decision … are arguments that [the attorney] can make and indeed has made on appeal; the inability to make them below has not harmed him." *Id.*, at *45-46.

The same is true of the appellants here. As in *Tate*, the attorneys here had multiple opportunities to address the basis of the sanctions—the baselessness of the lawsuit—in the district court. Duffy signed and filed oppositions to each of the Rule 12 motions to dismiss, seeking to perpetuate claims that the district court ultimately found baseless. (D.E. 39, D.E. 40, D.E. 44.) Hansmeier signed and filed a response to the motion to stay discovery in which he argued that the claims in the amended complaint were meritorious and were not "patently frivolous" (D.E. 50, at 4-5). Moreover, the court's decision to stay put the appellants on notice that their case could be found frivolous. When Steele brazenly argued that Prenda Law's nationwide approach to shakedown litigation did not and should not trouble the courts (AA45), the court informed Lightspeed's attorneys that their case would be carefully scrutinized. (AA46.) Given this history, any claimed surprise at the imposition of sanctions is disingenuous, especially given that the same attorneys were and continue to be the subject of sanctions

motions and orders in other courts. *Accord Harris*, 123 F.R.D. at 213; *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205-06 (7th Cir. 1985) ("a hearing would have served no useful purpose" before attorney was sanctioned for a complaint's "'frivolous' and 'worthless' claims"; due process requirements were satisfied where "counsel had adequate opportunity to contest [sanctions] in its motion for reconsideration" and on appeal).

Finally, the appellants object that the Rule 60(b) standard was applied to their motions to vacate and/or reconsider the order granting Smith's motion for attorney's fees. (App. Br. 19-20.) But as they concede, the court reviewed the issue of notice *de novo* (*id.*), and their arguments failed even under that standard. The court determined that Steele and Hansmeier had adequate notice but chose to disregard it. (D.E. 100, at 8.) Further, the district court did not apply the Rule 60(b) standard to Comcast and AT&T's motions, instead reviewing them *de novo* under the same § 1927 standards applied to Smith's motion. (D.E. 100, at 9-11; D.E. 65.) Under any standard, the attorneys' conduct was sanctionable and the awards should stand.

## II.     The district court did not misapply § 1927.

There is no merit to appellants' argument that the district judge misapplied § 1927 by applying vicarious liability or by considering AT&T's and Comcast's motion, which appellants erroneously contend were "untimely."

25

**A.     The court did not err in collectively sanctioning Duffy, Hansmeier, and Steele.**

The district court properly held Duffy, Steele, and Hansmeier jointly and severally liable under § 1927 for costs and fees arising from their conduct, and was not required to "apportion" their culpability as those attorneys now argue.  (App. Br. § II.A.)  The record demonstrates that each of Duffy, Steele, and Hansmeier engaged in conduct supporting the imposition of sanctions; and moreover, that they have long worked closely in concert in this and numerous other, similar cases, such that collective sanctions are supported and appropriate.

**1.     Duffy, Hansmeier, and Steele regularly act in concert, and did so throughout these proceedings.**

Duffy, Steele, and Hansmeier have been, at all times relevant to this appeal, leaders of an enterprise known first as Steele Hansmeier, and then as Prenda Law. Even as early as March 2012, Prenda Law attorneys had filed more than a hundred cases implicating many thousands of Internet subscribers. *See* Decl. of Bart W. Huffman, ¶¶ 7-8, *AF Holdings LLC v. Does 1-1,058*, No. 12-cv-0048 (D.D.C. Mar. 2, 2012), ECF No. 8-11.

At various times, continuing through the present, Duffy, Hansmeier, and Steele have used multiple "law firm" names and "of counsel" designations.  Regardless, they remained in active concert in this type of litigation, as demonstrated by the record and recognized by the district court, as well as other federal courts.  *E.g., Ingenuity 13*.

**2.    Duffy's, Hansmeier's, and Steele's interest in this lawsuit.**

This suit was an opportunistic attempt to harvest some $15-20 million in settlements from a single St. Clair County state-court proceeding—from persons located across the country—and was no doubt driven in part by the "stiffening judicial headwind" in the federal copyright suits that were the attorneys' usual modus operandi.  *See Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 194 (N.D. Ill. 2012).

Duffy, Hansmeier, and Steele tenaciously and vigorously prosecuted this action until the district court stayed discovery was stayed by the federal district court.  They initially hired a retired local judge to be their local counsel (D.E. 2-9, at 6-13, 50); filed a motion to take the deposition of the president and chief executive officer of AT&T (D.E. 2-12, at 53-57); and engaged Clyde Kuehn, a former Illinois appellate judge, to appear in the Illinois Supreme Court proceeding.  Then, upon denial of mass discovery in the state court, they asserted groundless claims in an amended complaint; and, upon removal, sought the same mass discovery again, in an "emergency hearing" in federal court.

**3.    Each of Duffy, Hansmeier, and Steele played a significant role in the litigation and the conduct giving rise to sanctions.**

As in the many other cases that their enterprise pursued, each of Duffy, Hansmeier, and Steele were materially involved throughout the proceedings below. For example, the record demonstrates that:

- Duffy, the nominal head of Prenda Law: signed the opposition papers in the Illinois Supreme Court, issued subpoenas (including the repeat subpoenas after the supreme court had granted the ISPs' motion to quash) (D.E. 14-7), filed the "emergency" motion in federal court (D.E. 9), appeared at the "emergency" hearing (D.E. 29), and signed Lightspeed's oppositions to the defendants' Rule 12 motions to dismiss.  (D.E. 39; D.E. 40.)

- Hansmeier also appeared at the emergency hearing in federal court (D.E. 29), appeared at a conference before a magistrate judge concerning the defendants' motions to stay discovery (D.E. 49), and then proceeded to resist the ISPs' motion for a stay of discovery as the sole signatory (as "of counsel to Prenda Law") of an opposition replete with advocacy of Lightspeed's improper claims.  (D.E. 50.)

- Steele argued at all or virtually all of the significant hearings in the state and federal court proceedings of this case, including hearings on: the ISPs' motion to quash in state court, the ISPs' motion for a stay and "friendly contempt" in state court, and the "emergency motion" for discovery in federal court.  (D.E. 29.)  He even submitted an affidavit in support of a motion to take the deposition of AT&T's

chief executive officer, brought by all appearances solely for the

purpose of harassment.  (D.E. 2-12, at 58-60.)

Although Duffy, Hansmeier, and Steele would like to point the finger at each

other or even at their local counsel, they are the attorneys who worked together to

perpetuate the "bullying pretense" that the district judge accurately perceived.  The

record reflects extensive involvement.

> **4.    The record also supports the court's finding that Duffy, Hansmeier, and Steele acted in concert such that collective sanctions were appropriate.**

The decision to sanction Duffy, Steele, and Hansmeier together is consistent with

the record.  As discussed above in connection with notice, the district court correctly

observed that the attorneys "'acted in concert throughout the entirety of the

proceedings.'"  (App. Br. 13 (quoting SA13); s*ee also* AA20 ("what we have here, is we

have concerted action" with "[e]veryone … trying to do the same thing … operating

under the Prenda law firm").)  This is sufficient for the joint-and-several obligation

assessed.  *See Lancaster v. TransUnion, LLC,* 2011 WL 3610051 (N.D. Ill. Aug. 16, 2011)

(holding attorneys who were materially involved in the same action jointly and

severally liable for attorneys' fees under § 1927.)

In its order issuing sanctions collectively, the court specifically noted that "Duffy,

Steele, and Hansmeier are all associated with the same law firm: Prenda Law, Inc.  The

docket sheet indicates Paul Duffy's firm is Prenda Law; Steele listed his firm as Prenda

Law on his entry of appearance and his motion to withdraw; and Hansmeier indicated that he was 'of counsel' to Prenda Law, Inc." (SA7.)  In addition, the court found that Duffy, Hansmeier, and Steele operated interchangeably for purposes of making filings in the case.  (*See* SA6-7 (discussing the attorneys' use of CM/ECF logins and shared work product).)  The court also took judicial notice "that Steele submitted a declaration [elsewhere] swearing that he was 'of counsel with the law firm, Prenda Law, Inc.' and that Hansmeier was 'also of counsel to the firm.'"  (*Id.* at 7.)  The court also took note of the cooperation between the three attorneys in similar cases in other courts.  (*See* SA7 (citing other courts' findings of concerted action or similar relationships).)

The record does not support the attorneys' arguments that they each undertook only certain "discrete" actions.  As the district court found, they "work[ed] in concert" in a course of action demonstrating a "disregard for the orderly process of justice." (SA6, SA10 & nn.2-6.)  Although they took turns filing and appearing, that does not absolve any of them for their role in what the court found to be a concerted effort to "file and prosecute this frivolous lawsuit."  (D.E. 100, at 7-8.)  Even the understated description of the individual attorneys' involvement set forth in their opening brief demonstrates a cooperative operation.  (App. Br. 25-26.)

The attorneys were not held "vicariously" liable for actions taken solely by others (App. Br. 23); rather, they were sanctioned collectively on the basis of actions undertaken as part of a common enterprise throughout this case.  Every step that each

took was mutually reinforcing as part of collective action that gave rise to the district court's imposition of sanctions.  None of them denied, nor could they have plausibly denied, being aware of what the others were doing.

>     **5.     The case law does not require an individual allocation of the harm caused by each attorney as a result of their vexatious litigation practices, even if such an allocation were possible.**

The two Seventh Circuit cases the attorneys cite as authority for their position do not require an individualized-quantum-of-harm analysis when imposing sanctions under § 1927 in a case like this.  In *Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005) (cited in App. Br. 24-25, 27), the Court held that "§ 1927 does not provide a legal basis for an order of fees against an entity like a law firm that is not itself 'admitted to practice.'"  *Id*. at 724.  Here, the court did not impose sanctions against Prenda Law, but rather against each of the attorneys who engaged in sanctionable conduct in the prosecution of this case.  *Claiborne* is accordingly inapposite.

*FM Industries, Inc. v. Citicorp Credit Services*, 614 F.3d 335, 341 (7th Cir. 2010) (cited in App. Br. 24) states the black-letter point that § 1927 liability is direct, not vicarious. But as already explained, no vicarious liability was imposed here.  In *FM Industries*, the Court found that § 1927 sanctions could not be levied against a copyright specialist retained by the sanctioned attorney because the specialist "did not sign the complaint, demand $815 million as a discovery sanction, insist that [a former chairman of Citicorp who had no involvement in the alleged infringement] appear for a deposition, foul up

the … pretrial order, or take any of the other steps that led to the sanction." *Id.* at 340.

None of Duffy, Steele, or Hansmeier served as a specialist; rather, they acted collectively

to prosecute this improper litigation. Moreover, they each advocated the improper

claims at various points directly to the court. Notably, the district court did not

sanction their second local counsel, Kevin Hoerner, further demonstrating the court's

consideration of Lightspeed's various attorneys' actual responsibility for sanctionable

conduct.

The *FM Industries* court further reasoned that the copyright specialist could not

be sanctioned merely "for making the mistake of agreeing to help a careless lawyer."

*Id*. Even Duffy, Steele, and Hansmeier know they cannot plausibly claim to simply

have "mistakenly" helped the others. Indeed, not only is there no apparent case law to

support the individual-apportionment argument, it is hard to imagine how a court

would make such an apportionment. These attorneys, acting as a team, vexatiously

wasted the time, money, and resources of the court and defendants. As a team, they are

responsible for the consequences.

**B.    Comcast's and AT&T's § 1927 motions were not time-barred.**

AT&T and Comcast filed their § 1927 motions on November 8, 2013, just over a

week after Judge Murphy granted Smith's motion finding Lightspeed's attorneys had

advanced claims they knew to be frivolous. (D.E. 65, at 1.) The ISPs filed their motions

on the strength of Judge Murphy's ruling, the conduct of Lightspeed's attorneys, and

developments in other cases around the country that made the vexatious nature of the

attorneys' conduct more apparent.

On appeal, Lightspeed's attorneys do not quarrel with the timing of Smith's

motion.  Instead, they urge that the district judge erred by considering and granting the

ISPs' motions because, they say, the motions were not brought within a "reasonable

time." (App. Br. 28-30.)  But § 1927 itself contains no time limitation, and the appellants

here cite no case law holding untimely a § 1927 motion filed before proceedings are

finished in the district court.

As a preliminary matter, the appellants fault Judge Murphy for not explicitly

addressing their timeliness argument, but the judge obviously considered and rejected

their position.  This Court may affirm a district court's ruling on any basis supported by

the record not waived by the appellee, *Prolink Holdings Corp. v. Federal Ins. Co.*, 688 F.3d

828, 832 (7th Cir. 2012), and, as we now show, there is an ample basis for this Court to

uphold Judge Murphy's exercise of his discretion here.  *See, e.g., Kapco Mfg. Co.*, 886 F.2d

at 1492  (stating, in context of a § 1927 ruling, "This court need only inquire whether any

reasonable person could agree with the district court's sanction award.").

> 1.    **Section 1927 does not impose a time limitation, nor does any
> applicable local rule.**

Section 1927 provides, in pertinent part, only that an attorney who "multiplies []

proceedings in any case unreasonably and vexatiously may be required by the court to

satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct." The statute provides that a court may require an offending attorney to pay fees. It does not prescribe that the offended party must file a motion within a particular time.

Nor does any local rule in the Southern District of Illinois impose a time limit on the filing of a § 1927 or like motion.

Accordingly, the question becomes whether any case law supports a finding of untimeliness here to preclude consideration of the fee request. The answer to that is no.

### 2.    No case law bars consideration of the § 1927 motion here on timeliness grounds.

None of the case law that the appellants cite supports the notion that AT&T's and Comcast's motions should have been rejected as untimely. The cases concern the district court's jurisdiction to decide a sanctions motion.

In the primary authority the attorneys cite, the Court found that a party had failed to seek recovery of fees within a reasonable time where it did not file a sanctions motion in either the district court or the appellate court until after the appeals court had affirmed the judgment on the merits. *Overnite Trans. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 793-94 (7th Cir. 1983). The Court stated: "a motion for attorney's fees and costs under section 1927 is so inexorably bound to the underlying merits of the case that a party must bring a motion for fees and costs either before an appeal is perfected or during the pendency of the appeal on the merits." *Overnite* 623 F.2d at 793. Under *Overnite*, the requirement that a motion for attorneys' fees be filed within a "reasonable"

time" is not measured by a passage of days or months; rather, the *Overnite* "rule" is that the termination of an appeal deprives the district court of jurisdiction to take up the issue. Obviously, AT&T and Comcast filed well before this appeal was filed, let alone resolved.

Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980), cited in *Overnite* and in the appellants' brief, also concerned the interplay between a sanctions motion and the timing of an appeal. In *Terket*, the losing party appealed the judgment on the merits while a motion for fees was still pending. This Court held that the pendency of the appeal did not deprive the district court of jurisdiction to decide the sanctions motion. *Id.* at 33-34. The decision on the sanctions motion could be separately appealed and, hopefully, the two appeals consolidated—thus the exhortation that the district court decide the fee motion expeditiously. *Id.* at 34.

Overnite* and *Terket* teach that the timeliness requirement is primarily driven by a desire to avoid the specter of piecemeal appeals. Thus, after an adjudication on the merits, a motion seeking attorneys' fees under § 1927 should be brought within a reasonable time after a judgment on the merits such that any appeal of the district court's order on a fee motion can be consolidated with any then-pending appeal on the merits of the case. *Terket*, 623 F.2d at 34; *Overnite Trans. Co.*, 697 F.2d at 793.

The appellants also invoke *Szabo Food Serv. Inc. v. Canteen Corporation*, 823 F.2d 1073 (7th Cir. 1987), for the proposition that a court should "compar[e]" the filing date

of the sanctions motion with the date of a voluntary dismissal. (App. Br. 28.)

According to the Court in *Szabo*, a voluntary dismissal does not give rise to a

"prevailing party" and, thus, a claim for attorneys' fees under 42 U.S.C. § 1988 was

untenable. Not so for Rule 11 motions for sanctions, though. "The obligation to answer

for one's act accompanies the act; a lawyer cannot absolve himself of responsibility by

dismissing his client's suit." *Id.* at 1079. As the Court explained, in language that

equally applies to § 1927 sanctions for vexatious litigation:

> Neither 'prevailing' on the merits nor an entitlement to 'costs' is a
> necessary condition of a Rule 11 award. Rule 11 is designed to discourage
> unnecessary complaints and other filings, for the benefit of the judicial
> system as much as of the defendants. Unnecessary complaints sap the
> time of judges, forcing parties with substantial disputes to wait in a longer
> queue and condemning them to receive less judicial attention when their
> cases finally are heard. This implies that a court always should be able to
> award fees, whether the plaintiff wins, loses on the merits, or dismisses
> his own case. Szabo-Digby took up the court's time on very short notice
> and received a decision on a request for a TRO; it demanded that Canteen
> expedite the filing of its papers; if it should not have filed the complaint at
> all, it has inflicted on both Canteen and the court the sort of injury with
> which Rule 11 is concerned.

*Id.* at 1078. Although *Szabo* did not enunciate a rule as to when a Rule 11 motion must

be filed, the Court noted that the motion at issue was timely either under the bill-of-

costs framework (which the Court also said didn't apply) or under the local rule for

attorneys' fees motions. Notably, as discussed above, the local rules of the Southern

District of Illinois do not include a time limit applicable to sanctions motions, and the

current version of the attorney fee rule referenced in *Szabo* (from the Northern District

of Illinois) provides that "[u]nless otherwise ordered by the court, this rule does not

apply to motions for sanctions under Fed. R. Civ. P. 11 or other sanctions provisions."

N.D. Ill. L.R. 54.3.

In sum, none of the authority that Lightspeed's attorneys cites applies here,

where there was a voluntary dismissal, no appeal pending, and the district court was

already addressing a sanctions motion that another defendant had filed.

### 3. There was nothing unreasonable about the timing of the filing of the ISPs' motions in any event.

Even assuming a general "reasonableness" requirement exists, it would be

satisfied here. Within 14 days of the order on Lightspeed's attorneys' voluntary

dismissal, defendant Smith filed his sanctions motion. Under *Szabo*, 823 F.2d at 1073,

and other authority, the district court retained jurisdiction and authority as to whether

the conduct of Lightspeed's attorneys was unreasonable and vexatious. Once the court

pronounced that it was, the ISPs promptly submitted their requests for fees. (D.E. 65;

D.E. 78; D.E. 82.)

The sanctioned attorneys cannot credibly claim any prejudice resulting from the

timing of the ISPs' motion. Certainly surprise would not be a tenable claim.

Throughout the federal-court phase of this case, the ISPs consistently asserted that the

claims Lightspeed asserted against them were groundless, harassing, and brought in

retribution for the ISPs' successful resistance of improper discovery that Lightspeed

sought from them in the state-court phase of this case. (*See, e.g.,*D.E. 14, at 1-2 (AT&T's

response to "emergency" motion; D.E. 47, at 3 n. 3 (purpose of the litigation was to "harass[] AT&T and Comcast in retribution for Lightspeed's loss in the Illinois Supreme Court."), and 5 (claims improperly sought "retribution"); and D.E. 27, at 3 n. 3 ("Federal courts have questioned whether plaintiffs such as Lightspeed are complying with Rule 11 of the Federal Rules of Civil Procedure to the extent they are not seeking discovery for a proper purpose, but are instead burdening the courts and ISPs to take advantage of the threat against an ISP subscriber of damages, the prospect of having to appear and assert defenses in a remote jurisdiction, and the stigma associated with pornography, and to thereby induce thousands of potentially innocent ISP subscribers to make 'settlement' payments to avoid being named as defendants in a lawsuit." (citation omitted)).)

Furthermore, after Lightspeed dismissed its case and Smith filed his motion for sanctions, the sanctionable nature of the conduct and motivations of Lightspeed's attorneys continued to be established. In the Central District of California, Judge Wright sanctioned them and referred them to various governmental agencies and disciplinary authorities, finding they acted in concert in connection with these cases. *Ingenuity 13 LLC*, 2013 WL 1898633. Meanwhile, the Lightspeed attorneys proceeded to dismiss cases across the country, including other cases in which AT&T and Comcast had objected to discovery. *E.g.*, Pl.'s Notice of Voluntary Dismissal, *AF Holdings LLC v. Miloglou*, No. 12-cv-5077 (N.D. Ill. Mar. 28, 2013), ECF No. 43. Other sanctions motions

and orders began to roll in.  *E.g.*, *AF Holdings v. Navasca*, 2013 WL 3815677 (granting

motion for attorney's fees and costs after voluntary dismissal with prejudice).  And,

eventually, Judge Murphy pronounced his agreement that the conduct of Lightspeed's

attorneys in this case was improper, groundless, and vexatious.  (D.E. 65.)

This case could be the poster child for abusive litigation.  AT&T and Comcast

spent enormous sums successfully opposing abusive and improper discovery tactics

and requests in state court, only then to be required to expend a substantial amount of

fees in federal court (i) in opposing a repeat effort (on an "emergency" basis, no less) to

obtain the same improper discovery and (ii) in defending against groundless claims

asserted against them as harassment for successfully opposing that improper discovery

in state court.  The ISPs expended these sums to challenge abusive use of the courts and

out of respect for the rights of thousands of unrepresented individuals located across

the country.  It is no surprise and certainly not unreasonable that they promptly sought

their fees upon Judge Murphy's pronouncement, or that Judge Murphy granted their

fee request.  Nor is it a surprise that the ISPs (having already expended extraordinary

sums) chose not to spend still more fees on a sanctions request until the evolving

circumstances revealed that the court was likely to rule favorably on such a request,

during a time when such request could still be properly made.

**III.    The record abundantly supported the district court's findings.**

The district court did not err in finding Lightspeed's federal action baseless from the outset and in finding that the appellants knew of the frivolous nature of their claims.  (D.E. 100, at 9.)  (App. Br. III.B-C).  Appellants' contrary arguments ring especially hollow against the backdrop of how this case fits into their larger scheme.  As thoroughly documented before the district court and described above, this conduct involved a patchwork of mass "Doe" lawsuits to identify individuals, in order to accuse them of "hacking" or illegal file-sharing—accurately or not—so as to strong-arm as many as possible into settlements before cases were dismissed (or collapsed of their own weight).  (*See generally* D.E. 27; D.E.28-1; D.E.37; D.E. 61, at 2; D.E. 78.)

**A.    Lightspeed's claims were objectively baseless, and the district court sufficiently explained so based on an ample record.**

The claims the appellants brought were objectively baseless, and the district judge adequately explained so.

**1.    The district court adequately explained the basis for its ruling.**

There is no merit to the appellants' claim that the district court wasn't expansive enough in giving reasons for imposing sanctions.  (App. Br. 34-35.)  Lightspeed's attorneys were well apprised, from the defendants' briefs and the court's ruling, of the basis for sanctions.  Indeed, this Court has indicated that, if the reasons for granting sanctions are clear on the record, a court need not belabor the point.  *See, e.g., Teamsters Local No. 579 v. B&M Transit, Inc.*, 882 F.2d 274, 280 (7th Cir. 1989).  The appellants'

authorities are in accord.  *See Ross v. City of Waukegan*, 5 F.3d 1084, 1089 (7th Cir. 1993)

(App. Br. 28); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989)

(App. Br. 34) ("As in tort law, the event sometimes speaks for itself" on sanctions).  The

record here—and the appellants' track record overall—could not be clearer as to the

propriety of sanctions.

> ## 2. There was ample basis for the court to find that Lightspeed's suit was objectively baseless.

The sanctions order reflects the district judge's acceptance of the defendants'

showings that the claims directed against them were frivolous.  As an initial matter, the

appellants do not even contend in their brief that the claims leveled against Smith—a

transparent pretext for the mass discovery that the Illinois Supreme Court had already

denied—were meritorious.

As detailed in the ISPs' motions to dismiss, and elsewhere, the claims against the

ISPs were based on allegations that they: (i) improperly opposed Lightspeed's

discovery (which the Illinois Supreme Court vindicated); (ii) failed to act to protect

Lightspeed's websites (which the ISPs could not and never had any duty to do); and (iii)

conspired with their customers to Lightspeed's detriment (which doesn't make any

sense for numerous reasons, including that the ISPs didn't know who those customers

were, even if there had been any substantial evidence of wrongdoing).  (D.E. 2-2, ¶¶ 29-

52.)  With this untenable basis, the Lightspeed attorneys asserted against the ISPs:

- a Computer Fraud and Abuse Act claim based not on any affirmative act but only on refusals to act, and that did not assert action directly affecting protected computers, transmission of any command, or even a statutory prohibition allegedly violated;

- conspiracy and aiding-and-abetting even though no meeting of minds between either ISP and any subscribers or any other defendant was ever alleged, and despite such coordination being implausible;

- state-law claims that the Copyright Act plainly preempted;

- a claim under the Illinois Consumer Fraud and Deceptive Practices Act despite a lack of standing and any nexus to consumer harm;

- claims based on steps the ISPs took in court despite the obvious applicability of the absolute litigation privilege;

- claims that the ISPs somehow became their subscribers' *de facto* counsel, without any basis in law for such a position; and

- an unjust-enrichment count even though Illinois law does not even recognize such as a cause of action.

These were not just failed alternative theories of liability, or optimistic add-ons to any otherwise valid cause(s) of action—they constituted the whole of the claims leveled against the ISPs.

42

The appellants engage in revisionist history when they argue that their claims were based on an "arguable legal theory," were "not entirely without color," and that the court ignored "favorable authority."  (App. Br. 36-38.)  "[A]ll of these authorities" that the appellants cite (*id*. 38) amount to two flimsy cases that cannot bear the weight of the appellants' arguments.  Nor can they overcome the fact that the appellants cite *not a single case* where an ISP was found liable—or was even forced into discovery as a party and/or taken to summary judgment—on *any* theory in the complaint here listed above.

The two "authorities" the appellants cite are not on point.  The one-page order in *VPR Internationale* does not mean what the appellants suggest it means. (App. Br. 37.) Indeed, VPR—represented by the Steele Hansmeier firm—faced many of the same problems Lightspeed did here, as the order reflects:  VPR brought a "novel" claim, sought and was denied early expedited discovery, and the court labeled the case "a fishing expedition by means of a perversion of the purpose and intent" of the federal rules.  (AA117.)  That case also was ultimately dismissed voluntarily.  (Pl.'s Notice of Voluntary Dismissal, No. 11-cv-2068, *VPR Internationale v. Does 1-1017*, Case No. 11-cv-02068 (Aug. 2, 2011), E.C.F. No. 23.)

There were also "obvious" personal-jurisdiction problems in *VPR*, which, to be sure, Judge Baker mused might be overcome by naming the Does' ISPs as defendants. (AA117.)  But nothing in that rumination suggested ISPs can be named absent a valid legal theory of liability, that VPR or its counsel should lodge such a complaint without a

viable theory, or that such a theory was even conceivable. It is an overreach to suggest, as the appellants here do, that the court in *VPR* deemed it "mandatory" to name ISPs as defendants without a good-faith basis on which to proceed. (App. Br. 37 (citing AA117).)

Nor does the other cited authority—a discovery order from the district court for the District of Columbia—offer a legal theory for proceeding as the appellants did here. (*See* App. Br. 37-38 (citing *AF Holdings LLC v. Does 1-1,058*, 286 F.R.D. 39 (D.D.C. 2012), *stayed and appeal pending*, No. 12-7135 (D.C. Cir. Dec. 27, 2012)).) For starters, the appellants filed the amended complaint naming the ISPs here on August 3, 2012, three days *before* the *AF Holdings* order issued that the appellants now claim justified their actions. Also unlike in this case, ISPs were *not* named as defendants in *AF Holdings*. Consequently, none of the legal theories advanced against the ISPs here were pursued in *AF Holdings*, and nothing in that decision supports the approach that the appellants took here. Rather, *AF Holdings* involved issues of joinder, venue, and personal jurisdiction over Doe defendants, and says nothing about the propriety of making an ISP a defendant in a complaint alleging computer fraud, unjust enrichment, *etc*.

Notably, the appellants' brief raises no substantive argument to counter the material deficiencies in each cause of action alleged against defendant Smith. Smith's motions for dismissal and sanctions detailed this frivolousness, (D.E. 37; D.E. 61) and the district court agreed . (D.E. 65, at 1.)

Finally, the appellants overreach when they ascribe to the district court "muted optimism" and "encouragement."  (App. Br. 33, 35-36.)  They base this description on a single statement at a hearing on their request for emergency early discovery—made in the course of *denying* that motion.  (AA55.)  Fairly read, the statement indicates that the court deemed the lawsuit shaky at the outset, a determination that was confirmed in the court's mind once it saw the motions to dismiss, the voluntary withdrawal of the complaint, and how this case fit into the appellants' larger pattern of malfeasance.  *Cf. In re TCI Limited*, 769 F.2d 441, 450 (7th Cir. 1985) ("Unless attorneys learn from experience, § 1927 will not achieve its purpose. … Litigation must be grounded in an objectively reasonable view of the facts and the law.  If it is not, the lawyer who proceeds recklessly—not his innocent adversaries—must foot the bill.").

## B.  The district court appropriately drew an inference of baselessness from Lightspeed's voluntary dismissal.

The district court was on solid ground when it determined that the timing of Lightspeed's voluntary dismissal, before a ruling on fully briefed motions to dismiss, supported an award of sanctions.  See Doc. 61 p. 13.

A Rule 41 dismissal does not inoculate attorneys from sanctions.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990) ("Rule 41(a)(1) was not designed to give a plaintiff any benefit other than the right to take one such dismissal without prejudice.");  *see also id.* at 396 (court may determine collateral issues such as "the imposition of costs, attorney's fees, and contempt sanctions" after a notice of voluntary dismissal); *Szabo*,

823 F.2d at 1076, 1084-85 (attorneys can be sanctioned despite voluntarily dismissing a frivolous action); *Wolters Kluwer Fin. Servs. v. Scivantage*, 525 F. Supp. 2d 448 (S.D.N.Y. 2007) (ordering sanctions under § 1927 after voluntary dismissal, based in part on that dismissal). The court sanctioned the appellants not simply because they dismissed the lawsuit, but because they should never have brought it, and the timing of the dismissal supported a finding that the lawsuit was pretextual.

There is no merit to the appellants' suggestion that the dismissal was actually evidence of good faith. (App. Br. 39.) "Whether an attorney who is being sanctioned acted in good faith is not material if his conduct was objectively unreasonable." *Kapco Mfg. Co., Inc.*, 886 F.2d at 1494; *accord Claiborne*, 414 F.3d 715 at 721; *Tate*, 2014 U.S. App. LEXIS 963, *36-39.

In any event, neither of the appellants' two supposed justifications for the voluntary dismissal bears scrutiny. First, it is implausible that, on March 21, 2013, Lightspeed was "finally overwhelmed" by this case's expense. (App. Br. 39.) The case was at a standstill then. The motions to dismiss were fully briefed for decision. And in the four-plus months between the stay order and dismissal, Lightspeed filed nothing other than Steele's and Hansmeier's motions to withdraw. Remaining in the case while simply awaiting a ruling on the dismissal motions, could not have cost Lightspeed anything.

46

The second proffered justification—that the data Lightspeed sought likely no longer existed—fares no better.  (App. Br. 39-40.)  It is inconceivable that Lightspeed had somehow determined as a factual matter that the information it sought was likely unavailable.  The ISP defendants consistently represented that there was no risk of lost evidence: "AT&T and Comcast have gathered and are already preserving, for the pendency of the litigation, the identifying information Lightspeed seeks." (D.E. 14, at 19.)  Lightspeed's principal recognized as much.  (AA64 ¶ 10.)  So did Steele, who said in the first district court hearing that "the ISP defendants have admitted to Judge LeChien in the early state court action that they have all this information sitting on someone's desk." (AA49.)  The district court thus appropriately determined that "there's no evidence that's going to be destroyed."  (AA55.)

### C.     The district court had ample basis to find that the attorneys exhibited a serious disregard for the orderly process of justice.

Finally, the appellants argue that the sanctions imposed against them must be reversed because they did nothing sanctionable at the November 13 hearing.  But the sanctions order was not based on that one hearing.  To the contrary, the court stated that the attorneys willingly lied to the court "on paper and in person" and cited the November 13 hearing *as just one example*.

Nor is there a requirement that the district court discuss specific instances of misconduct in detail.  This Court has affirmed unexplained or incompletely explained rulings imposing (or denying) sanctions when the grounds for the decision were

evident from the record.  *E.g.*, *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 408 (7th Cir. 1998) ("Even a few sentences of explanation, however, will often be enough to apprise the parties as to the court's rationale and invariably will facilitate the process of appellate review.").

This is in keeping with the Court's recognition that sanctions must both compensate and deter.  *See, e.g., Tate*, 2014 U.S. App. LEXIS 963, *50.  This is not a case where the district court considered a § 1927 motion lightly.  Judge Murphy's initial order expressly agreed with Smith's 20-page motion for sanctions. (D.E. 65.)  After considering the respective motions for reconsideration and their arguments at the November 13, 2013 hearing, Judge Murphy then issued a 13-page order that also expressly agreed with the ISPs' motions. (D.E. 100, at 9-10).  The sanctions in this case were well-deserved and well-supported in the district court's decision.

## CONCLUSION

For all the above reasons, the sanctions order should be *affirmed*.  Further, the

defendant-appellees also request any other relief to which the Court deems they are

entitled, such as fees and costs on appeal.

Respectfully submitted,


/s/  Hugh S. Balsam
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0403

/s/  Bart W. Huffman
Charles M. Salmon
LOCKE LORD LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
(512) 305-4700

*Attorneys for Appellee*
*SBC Internet Services, LLC (f/k/a SBC*
*Internet Services, Inc. d/b/a AT&T Internet*
*Services*

/s/  Jason E. Sweet
Daniel G. Booth
BOOTH SWEET LLP
32R Essex Street
Studio 1A
Cambridge, MA 02139
(617) 250-8602


*Attorneys for Appellee*
*Anthony Smith*

/s/  John D. Seiver
Ronald G. London
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue N.W.
Suite 800
Washington, DC 20006-3401
(202) 973-4200


*Attorneys for Appellee*
*Comcast Cable Communications LLC*
*and Comcast Corporate Representative*
*No. 1*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Brief of Defendants-Appellees complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,130 words, excluding the parts of  the brief  exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 97-2003 in 12 point Palatino Linotype font.

/s/  Hugh S. Balsam

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2014, the Brief of Defendants-Appellees was

filed with the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the appellate CM/ECF system.

The following participants in the case who are registered CM/ECF users will be

served by the appellate CM/ECF system:

Paul A. Duffy                            Paul Hansmeier
32nd Floor                               CLASS JUSTICE PLLC
Two N. LaSalle Street                    Suite 1900
Chicago, IL 60602                        100 S. Fifth Street
                                         Minneapolis, MN 55402
John L. Steele
Suite 400
1111 Lincoln Road
Miami Beach, FL 33139

I further certify that the following participant in the case is not a registered

CM/ECF user. On February 26, 2014, the Brief of Defendants-Appellees was sent via

first-class mail, proper postage prepaid to the following non-CM/ECF participants:

Andrew G. Toennies
LASHLY & BAER, P.C
714 Locust Street
St. Louis, MO 63101

/s/  Hugh S. Balsam