NO. 13-3801

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

LIGHTSPEED MEDIA CORPORATION,
*Plaintiff,*

v.

ANTHONY SMITH, et al.,
*Defendants-Appellees,*

Appeal of:
PAUL DUFFY, JOHN STEELE, & PAUL HANSMEIER,
*Appellants.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-GPM-SCW

**Reply Brief of Appellants Paul Duffy, John Steele & Paul Hansmeier**

Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................... ii

ARGUMENT ................................................................................. 1

I.   The District Court Improperly Held the Sanctioned Attorneys Vicariously Liable for a Complaint They Neither Signed nor Filed ...................................... 1

    A.  Appellees' "Concerted Action" Narrative Fails as a Matter of Fact .............. 1

    B.  Appellees' "Concerted Action" Narrative Fails as a Matter of Law ............... 4

II.  The District Court's Rationale for Sanctions is Unsupported by Explanation or by the Record and Cannot Be Upheld .......................................... 6

    A.  The district court's decision to find the complaint baseless from the outset, after stating that the case may get "better with time" but before the completion of any discovery, is unprecedented and unsustainable. .................................................................. 8

    B.  The totality of precedent and logic show that drawing a negative inference from Plaintiff's Rule 41(a)(1) voluntary dismissal was improper. ...................................................................... 11

III. The Seven-Month Delay of Comcast and AT&T in Filing Their Fee Motions is Unreasonable and Cannot Be Sustained Under This Court's Precedent ............................................................................ 15

    A.  Appellees cannot deny that a general prohibition against unreasonable delay is the rule in this and other Circuits ........................... 15

    B.  Appellees utterly fail to demonstrate that the ISPs' more than seven-month delay was reasonable or justifiable. .................................. 15

IV. Appellees Cannot Justify Their Voluntary Failure to Serve Notice of Smith's Sanctions Motion on Steele or Hansmeier, or the Various Ways in Which the District Court Denied the Attorneys a Fair Opportunity to Respond .......................................................................... 17

V.  In Their Zealousness to Defend the Sanctions Award, Appellees Make Material Misstatements of Fact and Law ........................................... 20

CONCLUSION ............................................................................. 22

Certificate of Compliance .......................................................... 23

# TABLE OF AUTHORITIES

## Cases

*AF Holdings LLC v. Does 1–1,058*, 286 F.R.D. 39 (D.D.C. 2012)................................ 8

*AF Holdings v. Navasca*, No. 12-cv-2396, 2013 WL 3815677 (N.D. Cal. Jul. 22, 2013) .................................................................................. 20

*AF Holdings v. Navasca*, No. 12-cv-2396, 2013 WL 5701104 (N.D. Cal. Oct. 16, 2013)................................................................................. 20

*Alexander v. U.S.*, 121 F.3d 312 (7th Cir. 1997) ........................................ 10

*Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008).................................. 12

*Asai v. Castillo*, 593 F.2d 1222 (D.C. Cir. 1979) ........................................ 6

*B. Willis, CPA, Inc. v. Public Service Co. of Oklahoma*, 511 Fed. Appx. 753 (10th Cir. 2013) ........................................................................ 15

*Bender v. Freed*, 436 F.3d 747 (7th Cir. 2006) ........................................... 3

*Bunger v. Sundstrand*, No. 86 C 20206, 1991 U.S. Dist. LEXIS 12129 (N.D. Ill. Feb. 11, 1991)...................................................................... 17

*Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886 (1961)................ 17

*Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005) ........................................ 5

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ............................... 11

*Dahnke v. Teamsters Local 695*, 906 F.2d 1192 (7th Cir. 1990) .................................. 8

*FM Industries, Inc. v. Citicorp Credit Servs.*, 614 F.3d 335 (7th Cir. 2010) ........................................................................................ 1, 4, 5

*Harris v. Marsh*, 123 F.R.D. 204 (E.D.N.C. 1988)....................................... 18

*In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008)................................. 15

*In re TCI, Ltd.*, 769 F.2d 441 (7th Cir. 1985)................................ 6, 8, 9, 10

*Knorr Brake Corp. v. Harbil*, 738 F.2d 223 (7th Cir. 1984) .......................................... 6

*Kronisch v. U.S.*, 150 F.3d 112 (2d Cir. 1998) ........................................... 14

*Manbourne, Inc. v. Conrad*, 796 F.2d 884 (7th Cir. 1986) .......................................... 22

*Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804 (7th Cir. 2003) ................................. 11

*Ordower v. Feldman*, 826 F.2d 1569 (7th Cir. 1987).................................................. 22

*Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789 (7th Cir. 1983) .................................................................................. 6, 8, 15

*Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) ................................................. 5

*Steinert v. Winn Group, Inc.*, 440 F.3d 1214 (10th Cir. 2006) ................................... 15

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987) ................................................................................................. 6, 8

*Tate v. Ancell*, Nos. 11-3252 & 12-2694, 2014 U.S. App. LEXIS 963 (7th Cir. Jan. 17, 2014)................................................................................ 19

*Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980) ............................................. 15

*The Jolly Group Ltd. v. Medline Industries, Inc.*, 435 F.3d 717 (7th Cir. 2006) ...................................................................................... 9

*U.S. v. Hill*, 459 F.3d 966 (9th Cir. 2006) .................................................. 14

*U.S. v. Hunter*, 13 F. Supp. 2d 574 (D. Vt. 1998) ...................................... 14

*Walter v. Fiorenzo*, 840 F.2d 427 (7th Cir. 1988)........................................ 9, 14

*Wolters Kluwer Fin. Servs. v. Scivantage*, 525 F. Supp. 2d 448 (S.D.N.Y. 2007), *rev'd*, 564 F.3d 110 (2d Cir. 2009)................................. 11, 20

*Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009), *rev'g* 525 F. Supp. 2d 448 (S.D.N.Y. 2007) ...................................... 12

**Statutes**

18 U.S.C. § 1030(a) ....................................................................................... 7

18 U.S.C. § 1030(b) ............................................................................... 7

**Rules**

Fed. R. Civ. P. 41(a)(1) ...................................................... 11, 12, 14, 15

Fed. R. Civ. P. 60(b) ...................................................................... 18, 20

**Other Authorities**

H.R. Conf. Rep. 96-1234, 96th Cong., 2d Sess. 8 (1980), *reprinted in*
    1980 U.S. Code Cong. & Admin. News 2716, 2782–83 ................................... 10

Paul H. Luehr, *Real Evidence, Virtual Crimes: The Role of Computer*
    *Forensic Evidence*, Criminal Justice, Fall 2006 ................................................ 14

# ARGUMENT

## I. The District Court Improperly Held the Sanctioned Attorneys Vicariously Liable for a Complaint They Neither Signed nor Filed

All parties to this Appeal agree that neither Duffy, nor Steele, nor Hansmeier signed or filed the amended complaint in this case. *See* Resp. Br. 28–29 (listing actions taken by each sanctioned attorney). Appellees do not dispute that attorney Kevin Hoerner was the one who performed these acts. Further, all parties agree that the claims asserted in the amended complaint were the basis for the district court's imposition of § 1927 sanctions. *See* Resp. Br. 24 (identifying "the baselessness of the lawsuit" as "the basis of the sanctions"). Succinctly stated, more than a quarter-million dollars in sanctions were imposed under § 1927 against Duffy, Steele and Hansmeier for actions someone else took. On its face, this result violates the tenet that "personal responsibility remains essential to an award of sanctions under § 1927." *FM Industries, Inc. v. Citicorp Credit Servs.*, 614 F.3d 335, 341 (7th Cir. 2010).[1]

In an attempt to circumvent the essential "personal responsibility" feature of § 1927, Appellees present a narrative that Duffy, Steele, and Hansmeier "acted in concert throughout the entirety of the proceedings." Resp. Br. 29; SA-13. This narrative fails as both a matter of fact and law.

### A. Appellees' "Concerted Action" Narrative Fails as a Matter of Fact

It is difficult to overstate the degree to which Appellee's "concerted action" narrative lacks support in the record. A quick survey of their Response shows that Appellees allocate a good portion of it to discussing what happened in *other* cases, instead of what happened in *this* case. The

---

[1] Incredibly, Appellees claim that the district court's failure to consider or analyze the responsibility of the attorney who actually signed and filed the amended complaint—Kevin Hoerner—actually *demonstrated* the court's consideration of actual responsibility. Resp. Br. 32.

Appellees' effort to change the subject to other cases, understandable as it is as a tactic, misses the point of § 1927 sanctions. When one examines the actions actually performed by Hoerner, Duffy, Steele and Hansmeier in *this* case, it becomes clear that the Appellees' narrative fails as a matter of fact.

For his part, Hansmeier appeared through a different law firm—Alpha Law Firm LLC—than Hoerner, Duffy or Steele. AA-38, AA-57. The record reflects that Hansmeier first appeared in the case on August 20, 2012[2] and withdrew on November 15, 2012. AA-36, AA-57; Dkt. 56. Thus, of the 466 days from the filing of the original complaint to Plaintiff's voluntary dismissal of the amended complaint, Hansmeier appeared for only 87 days, or approximately 18% of the case. This is quite a far cry from the "entirety of the proceedings." From a substantive perspective, of the dozens of filings in the removed action and the hundreds of filings over the case's total lifespan, Hansmeier signed/filed *one substantive paper*—a ten-page opposition to a joint motion to stay discovery. Thus, there is no factual basis on which to conclude that Hansmeier materially participated in the proceedings, much less acted in concert with Hoerner, Steele, or Duffy over "the entirety of the proceedings."

Steele did not sign or file a single substantive pleading in the removed action. He presented a single oral argument before the district court on August 20, 2012, which was also the day on which he first appeared. AA-38, AA-58. Other than attending a discovery conference via telephone (Dkt. 49), Steele took no substantive action in the case until his withdrawal on March 7, 2013. AA-34; Dkt. 58.

Duffy did not sign any iteration of the complaint in this matter (*see* AA-101, AA-116), and was from one of three separate law firms that appeared on Lightspeed's behalf in the federal phase of this lawsuit alone.

---

[2] This was over eight months after the original complaint was filed and over two weeks after the amended complaint was filed.

Duffy's first action in the federal court was on August 16, 2012, when he filed an emergency discovery motion on Lightspeed's behalf, which was supported by an affidavit from the CEO of Lightspeed stating why this relief was being sought. AA-65. Duffy did not present argument at the motion hearing. *See* AA-38–56. The only other papers Duffy filed in this case before its dismissal were good-faith responses to Appellees' motions to dismiss. Dkt. 39; Dkt. 40; Dkt. 44. In March 2013—after the motions to dismiss had been fully briefed and pending for nearly five months—Lightspeed filed its notice of voluntary dismissal pursuant to Rule 41(a)(1) though Duffy. AA-32.

Appellees' effort to find support for the "concerted action" narrative in the record only amplifies the district court's error. *See* Resp. Br. 28–29. Indeed, Appellees' discussion of the removed action consists primarily of conclusory statements, such as "Duffy, Hansmeier, and Steele tenaciously and vigorously prosecuted this action...." Resp. Br. 27. These are just restatements of the conclusion Appellees would like this Court to reach. Appellee's discussion of "facts" from the state court action are, as a matter of law, irrelevant. § 1927 is inapplicable to any conduct "that occurs before the case appears on the federal court's docket." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006). Their description of roles in the state court action is also inaccurate. By way of a single example, Appellees attribute the motion to depose the president and chief executive officer of AT&T to "Duffy, Hansmeier, and Steele." Resp. Br. 27. This is a total fabrication: as a matter of record, Hansmeier had nothing to do with the motion—he had not even appeared in the case at that time—and that motion was, like the amended complaint, signed and filed by Hoerner. Dkt. 2-12, at 53–57. Finally, Appellees devote significant effort to discussing other cases. Yet, in the final analysis, Appellees cannot even cite to a single other case in which Duffy, Steele, and Hansmeier all appeared, much less acted in concert—because no such case exists. Resp. Br. 26.

## B. Appellees' "Concerted Action" Narrative Fails as a Matter of Law

After acknowledging that Duffy, Steele and Hansmeier performed different actions in the litigation, Appellees attempt to recombine these discrete actions by describing them as "mutually reinforcing as part of collective action." Resp. Br. 31. Put more directly, Appellees ask this Court to abandon its precedent. In *FM Industries, Inc. v. Citicorp Credit Services*, 614 F.3d 335, 340–41 (7th Cir. 2010), this Court overturned sanctions imposed jointly and severally against a lawyer who filed an appearance and signed five papers.[3] In its opinion, this Court reviewed what the lawyer filed, determined that the district court had not deemed any of these filings to be unreasonable or vexatious and reversed the award of sanctions against him. *Id.* Further, this Court shot down every theory advanced by the defendants to recombine the lawyer's actions with those of other counsel. *Id.*

Appellees' "mutual reinforcement" theory would relegate the "personal responsibility" aspect of § 1927 to the category of an inconvenience that can be easily evaded. After all, any attorney who makes a single filing in a case can be said to have "reinforced" the litigation. Each of the sanctioned attorneys took distinct actions, which should have been evaluated on a personalized basis.

Appellees' erroneous view of this Court's precedent is further typified by their focus on the irrelevant—and unsupported—claim that each attorney was "aware of what the others were doing." Resp. Br. 31. Whether Duffy, Steele, and Hansmeier were aware of the actions taken by each other or by Hoerner is irrelevant to the application of § 1927. *FM Indus-*

---

[3] Appellees' incredible suggestion that *FM Industries* is distinguishable because the exonerated lawyer in that case was a "specialist," and Duffy, Steele, and Hansmeier are not, hardly merits a response. Resp. Br. 31–32. The rule established by *FM Industries* is not limited to specialists and applies to any lawyer who is wrongly held "responsible for documents that bear [another's] name but not his own." *FM Industries*, 614 F.3d at 335.

*tries*, 614 F.3d at 341 (no duty to supervise or correct another lawyer). The district court's decision to avoid the task of assessing individual responsibility by blurring them into one entity was reversible error. *Id.* ("[P]ersonal responsibility remains essential …."); *Pruitt v. Mote*, 503 F.3d 647, 660 (7th Cir. 2007) (failure to undertake a necessary inquiry is an abuse of discretion).

Appellees are forced to concede that the district court effectively treated Duffy, Steele, and Hansmeier as a single entity: "[e]veryone … trying to do the same thing … operating under the *Prenda law firm*."[4] AA-20 (emphasis added); Resp. Br. 29. But Appellees seem to believe they can spin this fact in two directions at once. On one hand, Appellees cite repeatedly to "Prenda Law" as a justification for joint-and-several liability (Resp. Br. 26, 29–30), while on the other hand they dismiss *Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005), as "inapposite" because "the court did not impose sanctions against Prenda Law" (Resp. Br. 31). Appellees cannot have it both ways.

Appellees' narrow reading of *Claiborne* fails. To avoid all doubt, this Court has cited *Claiborne* as standing for the proposition that "liability is restricted to the misbehaving lawyer and may not be transferred to *his partners* or law firm," making clear that the rule applies to humans as well as other entities. *FM Industries*, 614 F.3d at 340 (emphasis added). Thus, the rule in *Claiborne* is not about whether the sanctioned party is a law firm entity, as Appellees claim. *Claiborne* prohibits the crutch of using a group association to circumvent an inquiry into personal responsibility—which is precisely what the district court did here.

---

[4] In point of fact, Appellees' "single entity" theory cannot be valid as Hansmeier, for example, did not even file his appearance through the Prenda law firm, but instead appeared through Alpha Law Firm.

## II.   The District Court's Rationale for Sanctions is Unsupported by Explanation or by the Record and Cannot Be Upheld

Appellees note that the opening brief does not specifically address the merits of the claims asserted by Lightspeed against Smith, AT&T, and Comcast in detail. Resp. Br. 41, 44. This is true only because the orders appealed from do not contain any explanation of the district court's ruling. In its initial order, the district court merely stated, without more, that "[t]he litigation smacked of bullying pretense," and in its final order it similarly declared without explanation that Lightspeed did not have "any valid claims." SA-9–10, SA-14. Absent any explanation by the district court, the task of specifically addressing the merits of Plaintiff's claims in the first instance would have consisted largely of restating Plaintiff's responses to the various motions to dismiss. *See* Dkt. 39; Dkt. 40; Dkt. 44.

Nevertheless, since Appellees have raised the issue, the merits of Lightspeed's claims will be briefly addressed here. It is not enough for § 1927 sanctions that the complaint be found "meritless"; rather, the complaint must be totally without legal or factual foundation and wholly lacking in justification. *Knorr Brake Corp. v. Harbil*, 738 F.2d 223, 226 (7th Cir. 1984). Because "a court must take care not to penalize arguments for legal evolution," this Court has stated that a court considering sanctions must not stop at the face of the complaint, but also "examine with care the arguments counsel later adduce." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987) (emphasis added); *see also In re TCI, Ltd.*, 769 F.2d 441, 447 (7th Cir. 1985) ("The amended Rule 11 sets out a standard that we think applies equally to § 1927"). For this reason, issues of first impression cannot, as a matter of law, be frivolous. *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 794–95 (7th Cir. 1983) (citing *Asai v. Castillo*, 593 F.2d 1222, 1225 (D.C. Cir. 1979)). This high standard for sanctions under § 1927 is simply not satisfied here.

As for its claims against Smith, Lightspeed alleged that Smith violated the law by hacking into its computer systems. AA-85–87. It is beyond serious question that federal and state laws provide civil remedies for computer hacking offenses. Lightspeed rebutted each of the arguments raised in Smith's motion to dismiss the amended complaint. For example, Lightspeed showed that copyright preemption was completely inapplicable to its Illinois law claims, because contrary to Smith's inaccurate portrayal, the facts underlying Lightspeed's state law claims were associated with the hacking into and compromise of its computer systems, not the violation of one of the exclusive rights protected under the Copyright Act.[5] Lightspeed also pointed out that the allegations supporting its CFAA claim were sufficient under all bases of relief listed in 18 U.S.C. § 1030(a), as well as under § 1030(b); that allegations of either loss *or* damage sufficed under the CFAA; and that in any case Plaintiff alleged both loss (in remedial expenditures and lost revenue from the interruption of Lightspeed's computer system) and damage (in the ongoing impairment of the computer system). Dkt. 37, at 5–8; Dkt. 44, at 8–12. In total, Lightspeed's case against Smith was a very ordinary computer hacking claim that—far from being totally without legal or factual foundation and wholly lack in justification—would ostensibly have survived a motion to dismiss.

As for the ISPs, Lightspeed asserted that the ISPs were derivatively liable for computer attacks being perpetrated by their subscribers. AA-80–81. Lightspeed alleged that its original suit in the case below put the ISPs on actual notice that certain, identified, subscribers were perpetrating illegal acts against it through the ISPs' networks. AA-87–91. Lightspeed further alleged that the ISPs had the ability to stop their subscribers from using the ISPs' networks to commit these acts. *Id.* Yet, as Lightspeed al-

---

[5] Dkt. 37, at 8–13; Dkt. 44, at 12–15. The rights protected by § 106 of the Copyright Act are reproduction, adaptation, publication, performance, and display. *E.g.*, *Tomey v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir.2005).

leged, instead of doing so, the ISPs made a business decision to, in effect, allow their subscribers to use the ISPs' networks to commit these misdeeds in exchange for monthly subscription payments. *Id.*

To be sure, the law on ISP derivative liability is not fully seasoned. Yet, the ISPs themselves have long recognized the potential for liability derived from their subscribers' misdeeds. *AF Holdings LLC v. Does 1– 1,058*, 286 F.R.D. 39, 47–48 (D.D.C. 2012), provides a useful background by detailing the legislative and statutory history of the Digital Copyright Millennium Act ("DCMA"), which was a product of the widespread recognition that ISPs were exposed to potential liability for "illegal … activity by their customers" on the Internet.[6] While the DCMA created a new statutory regime for copyright claims, the same kind of liability exposure remains unchanged for ISPs that allow or facilitate illegal hacking.

In any case, Plaintiff answered each of the arguments advanced by AT&T and Comcast in support of their motions to dismiss—which largely paralleled the arguments made by Smith. *See* Dkt. 27; Dkt. 28-1; Dkt. 39; Dkt. 40. Neither AT&T nor Comcast—nor the district court—identified any adverse controlling precedent sufficient to overcome the protections afforded by this Circuit to good faith arguments. *Szabo*, 823 F.2d at 1082; *Overnite*, 697 F.2d at 794–95; *see also In re TCI, Ltd.*, 769 F.2d at 447.

**A. The district court's decision to find the complaint baseless from the outset, after stating that the case may get "better with time" but before the completion of any discovery, is unprecedented and unsustainable.**

Contrary to Appellees' view, the importance of the district court's early statement that the case "may be one of those cases" that "got better with time" cannot be overstated. It underscores how unique the abrupt shift in

---

[6] Appellees are wrong to dismiss *AF Holdings* simply because it was issued after the complaint was filed (Resp. Br. 44), because whereas a Rule 11 inquiry is limited to knowledge at the time of filing, § 1927 is not. *See, e.g.*, *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1200–01 & n.6 (7th Cir. 1990).

opinion that resulted in the district court's imposition of over a quarter-million dollars in sanctions truly was. AA-55; Resp. Br. 45. Appellees fail to cite, and Appellants cannot find, *any* similar case where a court's encouraging early statement regarding the merits of the litigation was followed by § 1927 sanctions prior to any discovery. Such a turnaround usually occurs only in cases where plaintiffs fail to show a factual basis for their claims after having taken extensive discovery. *E.g.*, *Walter v. Fiorenzo*, 840 F.2d 427, 435–36 (7th Cir. 1988) (§ 1927 sanction imposed for baseless claim after four years of discovery). Here, of course, no discovery was allowed or taken from the time the case was removed to federal court to the time that Plaintiff voluntarily dismissed the action.

The normal course of § 1927 sanctions—which was not followed here—is that they are imposed only after the court gives a significant signal to counsel that it considers the litigation frivolous, but counsel proceeds to file additional motions or otherwise pursue the claims, regardless of the court's explicit warning. For example, in *The Jolly Group Ltd. v. Medline Industries, Inc.*, 435 F.3d 717 (7th Cir. 2006), although the district court dismissed the plaintiff's claims with prejudice, it only imposed sanctions under § 1927 for conduct after dismissal. A "careful § 1927 analysis" by the magistrate judge, adopted by the district court, noted that "the line between strong advocacy and vexatious conduct is not always bright." *Id.* at 719. This Court upheld and approved the "sensible and proper distinction between … advocacy before dismissal, doomed as it might have been, and [the] decision after dismissal to continue inflicting motions on his adversary and the court." *Id.* at 721. In *Jolly Group*, the turning point was the dismissal of the plaintiff's claims with prejudice; after that explicit signal from the district court, "prudence should have counseled that by filing additional motions aimed at changing facts and responding to the court's conclusions, [counsel] was pursuing a path that was unsound." *Id.*

Similarly, in *In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985), the offending attorney "filed unjustified pleadings," but the bankruptcy court awarded

costs and fees only for the second and third minimally-amended filings—
after the bankruptcy court had orally dismissed the original filing for fail-
ure to state a claim—not for the first. 769 F.2d at 442–44 ("The initial at-
tempt may well be deemed creative."). Although this Court found that the
bankruptcy court would have had the authority to award fees incurred
from the beginning of the case, the complaint in *TCI* was a "new theory—
not only in the sense that there is no precedent but also in the sense that
it *cuts against much precedent*." *Id.* at 447, 448 (emphasis added) ("The
bankruptcy court is at all events not authorized to change the law of fix-
tures or real property...."). This Court noted that the conferees on the bill
that amended § 1927 considered a requirement that judges warn counsel
and impose fees only for subsequent conduct, but a warning was ultimate-
ly not required. *Id.* at 448. However, the conferees did note that "[t]he
purpose in deterring delay would be more effectively achieved if judges
warn attorneys in anticipation of a violation of section 1927 rather than
simply waiting ...." H.R. Conf. Rep. 96-1234, 96th Cong., 2d Sess. 8
(1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 2716, 2782–83.
This Court later clarified the role of judicial warnings, stating that *TCI*
established that although "sanctions usually depend on bad intent ... an
award also is appropriate when objectively unreasonable litigation-
multiplying conduct continues despite a warning to desist." *Alexander v.
U.S.*, 121 F.3d 312, 316 (7th Cir. 1997).

This is not only a case where there was no warning to desist before the
imposition of sanctions, though that is true. Even more importantly, this
is also a case where the only statement by the district court regarding the
potential merits of the case prior to the imposition of sanctions was that
the case may "get better with time," and that the case was comparable to
others the district court adjudicated which had in fact improved. AA-55.
Duffy, Steele, and Hansmeier had no reason to expect, based on this
statement, that the district court would, prior to the completion of any
discovery, judge the suit baseless from its inception and sanction them for

their advocacy. Virtually all of the actions of Duffy, Steele, and Hansmeier in the federal-court action occurred during or after the early hearing where the district court made this optimistic statement. In the context of the district court's statement, and in the absence of any warning to desist, their actions simply do not reach the standard for § 1927 sanctions of "pressing a claim even after its emptiness became pellucid." *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 809 (7th Cir. 2003).

## B. The totality of precedent and logic show that drawing a negative inference from Plaintiff's Rule 41(a)(1) voluntary dismissal was improper.

Appellees are wrong to argue that an inference of baselessness can properly be drawn from a voluntary dismissal (Resp. Br. 45–47); precedent demands that the issue of sanctions be treated separately from a Rule 41(a)(1) voluntary dismissal and Appellees utterly fail to discredit Lightspeed's good-faith reasons for its voluntary dismissal. As a preliminary matter, Appellees cite no persuasive authority to counter the Supreme Court's authoritative statement that a plaintiff has a "right to one free dismissal" and that while a plaintiff may be sanctioned after dismissal for filing baseless papers, that is "a separate abuse … subject to separate sanction." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397–98 (1990). Instead, Appellees cite a bevy of cases which simply reiterate the unsurprising proposition that sanctions may be imposed after a Rule 41(a)(1) dismissal, on other grounds. *See* Resp. Br. 45–46.

The disingenuous nature of Appellees' argument is demonstrated by the fact that the sole opinion they were able to cite in support of the novel proposition that sanctions may be *based upon* a Rule 41(a)(1) dismissal is not even good law. *See* Resp. Br. 46 (citing *Wolters Kluwer Fin. Servs. v. Scivantage*, 525 F. Supp. 2d 448 (S.D.N.Y. 2007), *rev'd*, 564 F.3d 110 (2d Cir. 2009)). Appellees fail to disclose to this Court that this case was reversed by the Second Circuit, which held that the plaintiff "was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the

fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable." *Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009), *rev'g* 525 F. Supp. 2d 448 (S.D.N.Y. 2007). In other words, in the light of appellate review, the sole case cited by Appellees in support of the district court's decision to draw a negative inference from a Rule 41(a)(1) dismissal actually stands for the opposite proposition—that a negative inference is an abuse of discretion, regardless of the reason for the dismissal. *Id.* at 114–15. This Court should follow the Second Circuit. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008) (requiring "solid justification" before creating a circuit split).

Moreover, Appellees' support for an inference of baselessness cannot overcome the multiple good-faith reasons that Lightspeed had to dismiss the action when it did. Appellees fundamentally misunderstand the financial burdens on Lightspeed, which did not arise primarily from the expense of this litigation but from the continuing onslaught of hacking, which damaged and imposed significant costs on its business. Prior to Plaintiff's voluntary dismissal, Plaintiff's counsel consistently represented that Plaintiff's financial position was in dire straits. *See* AA-53 (stating Plaintiff's CEO "didn't make any money the last two months" and suffered a 60% decrease in gross revenue); AA-63 (warning that "the hackings continue at an epidemic level" and that hackers had committed identity theft and bank fraud against Lightspeed's CEO); AA-69 ("Lightspeed's business is at a breaking point."); Dkt. 50, at 8 (same); AA-72–73 (warning of "ongoing hacking" and "continuous injury"); AA-92 ($519,350 in lost revenue); AA-104–05 (warning of "loss of potential earnings … and at the same time, an increase in costs"). It is by no means implausible that a plaintiff in such financial distress would decide to pursue options other than litigation, especially after nearly five months had passed with no substantive action in the case since the district court stayed discovery. AA-32; Dkt. 53.

Likewise, Appellees are flatly wrong in claiming it was "inconceivable" that critical evidence was destroyed prior to Plaintiff's voluntary dismis-

sal; their response shows a fundamental misapprehension of the issues at stake. Resp. Br. 47. Appellees blithely point out that the ISP Defendants had assured the court that they were preserving the "identifying information" of Smith's co-conspirators—*i.e.*, their names, addresses, etc. *Id.* But identifying information alone, without more, represented only one necessary step toward preserving and gaining other case-critical evidence. Plaintiff's counsel has repeatedly and consistently stated that the mere identifying information of Smith's co-conspirators was not the only evidence in danger of destruction. Also in immediate danger of destruction was the digital forensic evidence present on the computers of the unidentified co-conspirators, who were never given any notice that this case existed, and therefore were not aware of any evidence-preservation obligations. App. Br. 39–40 (recounting how Plaintiff asked for, and was denied, an order requiring the ISPs to send evidence-preservation notices to the alleged co-conspirators); AA-50 ("I mean, they could be actually destroying information, spoliation of evidence, because they didn't even know about the case."); AA-60 (proposed notice to alleged co-conspirators that "Plaintiff has demanded that you take reasonable steps to … preserve all evidence"); AA-61 (declaration stating that "AT&T and Comcast have not provided notice to their subscribers"); AA-69 (warning that co-conspirators were not "put on notice of the pending litigation, and thus their evidence preservation obligations"); Dkt. 50, at 8 (same); AA-71 (warning that "evidence of computer hacking will be destroyed with the passage of time"); AA-72 (warning that alleged co-conspirators were "not aware that they have to preserve case-critical electronically stored evidence"). Plaintiff repeatedly informed the court that it regarded the digital forensic evidence on the computers of the unidentified co-conspirators as both case-critical and under an immediate and ongoing threat of destruction. AA-69 ("[A]s each day passes Lightspeed's ability to prove its case … is dramatically lessened."); Dkt. 50, at 8 (same).

This concern was wholly justified. "Computer records are extremely susceptible to tampering, hiding, or destruction, whether deliberate or inadvertent." *U.S. v. Hunter*, 13 F. Supp. 2d 574, 583 (D. Vt. 1998), *approved by U.S. v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006). For example, every time an evidence-laden computer is turned on, the startup process alone can change the computer's registry values, reset the dates on documents, wipe out temporary files, overwrite data, or otherwise destroy valuable forensic evidence. Paul H. Luehr, *Real Evidence, Virtual Crimes: The Role of Computer Forensic Evidence*, Criminal Justice, Fall 2006, at 17. Because the co-conspirators were not given any notice of the existence of the suit, let alone explicitly made aware of an evidence-preservation duty, not only was the risk of destruction high, but Plaintiff would not even have the benefit of an adverse inference. *See Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998). In fact, if Lightspeed had not dismissed the action but instead proceeded forward into discovery, it would have risked sanctions if the case-critical digital forensic evidence it sought was no longer recoverable. *See, e.g.*, *Walter v. Fiorenzo*, 840 F.2d 427, 435–36 (7th Cir. 1988) (upholding § 1927 sanction imposed where plaintiff could not find evidence to support its allegations after discovery). While Lightspeed would have had a chance to prove its case if evidence-preservation notice letters had been sent to the unidentified co-conspirators early in the litigation, it was a reasonable exercise of judgment to dismiss the litigation after more than seven months had passed since Lightspeed had requested such letters, to no avail. Lightspeed acted in good faith and was well within its rights under Rule 41(a)(1) when it voluntarily dismissed the action, and no inference from the dismissal could be proper under the circumstances.

## III. The Seven-Month Delay of Comcast and AT&T in Filing Their Fee Motions is Unreasonable and Cannot Be Sustained Under This Court's Precedent

Appellees provide no valid excuse for the ISPs' extreme delay in filing their § 1927 motions.

### A. Appellees cannot deny that a general prohibition against unreasonable delay is the rule in this and other Circuits.

Seventh Circuit case law holds that § 1927 motions must not be unreasonably delayed. *Overnite*, 697 F.2d at 793 (citing *Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980), as establishing "a general rule"). Appellees cannot deny that this general requirement exists, both in this Circuit and in its sister circuits. Resp. Br. 34–37; *see also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006). It should not be surprising that there is not directly on-point authority in this Circuit; it is extremely rare for § 1927 sanctions to be imposed after a voluntary dismissal under Rule 41(a)(1), and a situation where parties have waited more than seven months after such a dismissal to move for sanctions is doubly rare. Nevertheless, this Court's disapproval of an eight-month delay in *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 792–93 (7th Cir. 1983), is useful as providing one of the few existing examples where a litigant delayed as long as the ISPs did here. The Tenth Circuit recently narrowly avoided deciding whether an eight-month delay after dismissal before the filing of a § 1927 motion would be unreasonable. *B. Willis, CPA, Inc. v. Public Service Co. of Oklahoma*, 511 Fed. Appx. 753, 756–57 (10th Cir. 2013).

### B. Appellees utterly fail to demonstrate that the ISPs' more than seven-month delay was reasonable or justifiable.

The only defense Appellees provide for the ISPs' more than seven-month delay in filing their motions for fees is their claim that, because "AT&T and Comcast spent enormous sums" opposing Plaintiff, they wait-

ed until "the evolving circumstances revealed that the court was likely to rule favorably"—*i.e.*, until they knew which way the winds were blowing. Resp. Br. 39. This rationale should be flatly rejected.

An overview of the ISPs' expenditures—in the context of the whole— shows frugality to be an unsustainably flimsy excuse for their delay. Viewed as generously as possible, simple math shows that the attorney time required to draft and file AT&T's motion for fees amounted to only about 1% of their total fee award;[7] likewise, the attorney time for Comcast amounted to only about 4.8%.[8] This is a minimal expense, particularly compared to the ISPs' allegedly "enormous" sunk costs. It is thus inconceivable as a practical matter that the prospect of this minimal marginal expense caused the ISPs to shy away from the chance to reclaim their sunk costs from the pockets of opposing counsel.

More troublingly, this sole excuse proffered by Appellees for the ISPs' delay is universally applicable. There is no litigant that would not prefer to take a wait-and-see approach on a § 1927 motion if possible. Thus, accepting the ISPs' proposed rationale would have the unfortunate effect of encouraging every party but the first mover in multi-party litigation to delay filing § 1927 motions until the district court has already granted one such motion. Appellees' excuse, if approved as a "reasonable" rationale for a seven-month delay, would promote the undesirable never-ending collateral sanctions litigation that timeliness requirements are intended to combat.

---

[7] *Compare* Dkt. 82; Dkt. 97-1, at 24; Dkt. 97-2, at 11, *with* SA-13.
[8] *Compare* Dkt. 78; Dkt. 98-1, at 28; Dkt. 98-2, at 10–11, *with* SA-13.

**IV.  Appellees Cannot Justify Their Voluntary Failure to Serve Notice of Smith's Sanctions Motion on Steele or Hansmeier, or the Various Ways in Which the District Court Denied the Attorneys a Fair Opportunity to Respond**

Appellees fail to justify the multiple due process violations that occurred during the district court's imposition of sanctions. The failure to serve notice of Smith's sanctions motion on Steele or Hansmeier cannot be excused by a reasonable calculation under the circumstances, as Appellees claim. This was not a circumstance where actual notice was difficult or impossible, but was instead where Smith's attorneys just simply decided not to provide it. *See* AA-14 (declining opportunity to "just back up and make notice now"). Further, where the district court was contemplating sanctions aimed at attorneys who had withdrawn from their representation, in their individual capacities, the circumstances logically required more than mere service upon Duffy.

Try as they might, Appellees cannot justify the imputation of service upon Duffy to Steele and Hansmeier as a substitute for actual service. To begin, Appellees—like the district court—wholly gloss over the fact that Hansmeier noticed his appearance in the case for Alpha Law Firm, not Prenda Law. AA-38, AA-57. And just as importantly, Appellees—like the district court—violate the rule against "inflexible procedures universally applicable to every imaginable situation" by insisting that service upon one can be service upon all, even after a withdrawal from representation. *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961).

Appellees fail to cite a single case where service of a sanctions motion was imputed upon an attorney after withdrawal from representation. In one case cited by Appellees, the attorney never withdrew from representation at all, but merely went on vacation. *Bunger v. Sundstrand*, No. 86 C 20206, 1991 U.S. Dist. LEXIS 12129 (N.D. Ill. Feb. 11, 1991). In another, the district court imputed service of a sanctions motion to an attorney

through her law firm—but only where "no oral or written motion to with-draw as counsel of record was ever filed," and after finding the attorney "remains counsel of record to this day." *Harris v. Marsh*, 123 F.R.D. 204, 213 n.8 (E.D.N.C. 1988). *Harris* is obviously inapposite to a situation where, as here, it is uncontroverted that both Steele and Hansmeier withdrew from the action well before Smith filed his sanctions motion.

Appellees are wrong to suggest—citing no authority for their position—that Duffy, Steele, and Hansmeier were put "on notice that their case could be found frivolous" by the magistrate judge's decision to stay discovery. Resp. Br. 24. The magistrate's order granting a stay of discovery was issued as a simple text-entry order, accompanied by no memorandum opinion or other statement of reasoning. *See* Dkt. 53. Obviously, a summary text-entry order cannot put anyone "on notice" of anything except for the fact of the order itself, and any reasoning necessarily implied by the order. But Appellees themselves argued that there were a wide variety of independently-sufficient reasons for the district court to find good cause to stay discovery, not a single one of which would imply that that the case "could be found to be frivolous." Dkt. 47, at 4–7. Ultimately, Appellees cannot argue that anything resembling proper notice was provided here. They alone bear the responsibility for their decision not to serve Steele and Hansmeier with Smith's fee motion.

Similarly, Appellees fail to justify the various ways in which the district court denied the sanctioned attorneys a fair opportunity to respond to the allegations against them. Appellees make entirely too much of the idea that Steele and Hansmeier had an opportunity to respond to Smith's § 1927 motion, when in fact that "opportunity" only resulted in a cursory rejection of their arguments under the strict Rule 60(b) standard. SA-3–4 (applying Rule 60(b) "exceptional circumstances" standard). Incredibly, Appellees fault Duffy for not interrupting and talking over the district court at the hearing, despite the fact that the district court explicitly instructed the attorneys not to speak unless spoken to. AA-10.

The opportunity to interrupt the district court, which would expose Duffy to contempt, is not an opportunity to respond for due process purposes. And by pointing to the strictest possible interpretation of the time Duffy had under the local rules to respond to AT&T and Comcast's fee motions, Appellees wholly overlook the unfairness of the district court's confusing recharacterization of subsequent filings as supplements, which it did without explicitly clarifying the briefing schedule. This oversight is repeated in Appellees' dismissal of the lack of opportunity for any of the sanctioned attorneys to respond to the fee petitions as merely a "lack of due diligence." Resp. Br. 21. The idea that supplements to motions would not extend the briefing schedule for responses to those motions is counterintuitive. The avoidable confusion engendered by the district court's docket shuffling deprived the sanctioned attorneys of any chance to provide much-needed scrutiny to the fee itemizations.

Finally, Appellees cite absolutely no support for their suggestion that filings made *prior to* a fee motion or order to show cause (*i.e.*, the responses to motions to dismiss filed by Duffy and the response to the discovery stay motion filed by Hansmeier) can possibly suffice as an opportunity to respond. Resp. Br. 24. The single, nonprecedential case that Appellees cite points only to a motion to reconsider a fee award and a reply in support, as well as fee petition oppositions—not to anything prior to the contemplation of sanctions. *Tate v. Ancell*, Nos. 11-3252 & 12-2694, 2014 U.S. App. LEXIS 963, at *45 (7th Cir. Jan. 17, 2014). That case also does not, as Appellees claim, stand for the general proposition that the ability to make arguments on appeal can cure the denial of an opportunity below; instead, it dealt with a very specialized and inapposite scenario, where the sanctioned attorney was given opportunities to oppose the imposition of sanctions against his *client*, but not against himself. *Id.* at *44–46. In the end, Appellees provide no acceptable reason why the sanctioned attorneys should have been prevented from filing responses or speaking at the hear-

ing, or why their arguments should have been judged under the harsh Rule 60(b) standard.

## V. In Their Zealousness to Defend the Sanctions Award, Appellees Make Material Misstatements of Fact and Law

There is a deep sense of irony to the Appellees' approach to the Response. In the course of accusing Duffy, Steele and Hansmeier of serious misconduct, Appellees make several material misstatements of fact and law to this Court. An exhaustive survey of these misstatements is beyond the scope of this reply—many of the fact-based misstatements are wholly unsupported by citation to the record and for that reason alone should be disregarded by this Court. However, Duffy, Steele and Hansmeier believe that a brief discussion of certain of these misstatements will aid the Court's determination of what credibility, if any, to assign Appellees' assertions.

*First*, as described in Section III(B), *supra*, Appellees failed to disclose that a district court decision they cited for a key proposition, *Wolters Kluwer Fin. Servs. v. Scivantage*, 525 F. Supp. 2d 448 (S.D.N.Y. 2007), *rev'd*, 564 F.3d 110 (2d Cir. 2009), was overruled in relevant part by the Second Circuit.

*Second,* in an effort to suggest that the district court was just one of many courts to sanction Duffy, Steele and Hansmeier, Appellees cite to a single case, *AF Holdings v. Navasca*, No. 12-cv-2396, 2013 WL 3815677 (N.D. Cal. Jul. 22, 2013). Resp. Br. 7,. 39. Yet, in that case the magistrate judge recommended denying a motion for sanctions, and the district judge overruled objections to that recommendation. *AF Holdings v. Navasca*, No. 12-cv-2396, 2013 WL 5701104 (N.D. Cal. Oct. 16, 2013). No sanctions issued in the case whatsoever.

*Third,* as described in Section I(A), *supra*, Appellees rely heavily on false attribution. Appellees, for example, state that "Duffy, Steele, and

Hansmeier continued to dismiss cases they had filed in various jurisdictions." Resp. Br. 7. This Court can take judicial notice that neither Steele nor Hansmeier filed, appeared in or dismissed the cases cited by Appellees. Other examples abound, including Appellees' characterization of the roles of other attorneys in this case and their description of the history of Prenda Law, none of which is supported by citation to the record, has any basis in fact or is particularly relevant to the issues in this Appeal.

## CONCLUSION

The district court erred by imposing over a quarter-million dollars in sanctions against three attorneys who neither signed nor filed the offending complaint, by entertaining sanctions motions filed over seven months after dismissal without any reasonable explanation for the delay, by failing to explain its conclusions and drawing a negative inference from voluntary dismissal, and by doing so without affording the three attorneys the protections of due process. This Court should reverse the sanctions orders. This Court should also decline to entertain Appellees' unmeritorious claim for further fees.[9]

DATED: March 12, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744
*In propria persona*

/s/ Paul Duffy  (with consent)
Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136
*In propria persona*

/s/ John Steele  (with consent)
John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131
*In propria persona*

---

[9] Appellees' one-sentence request for additional fee-recovery sanctions on appeal (Resp. Br. 49) is a mere "afterthought without citation to authority" and is insufficient to properly raise the issue before this Court. *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (citing *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 888 (7th Cir. 1986)).

**Certificate of Compliance**
**With Type-Volume Limitation, Typeface**
**Requirements, And Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this reply brief contains 6,904 words, including headings, footnotes, and quotations, and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2007 with 12-point Century Schoolbook font.

DATED: March 12, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744